Exhibit F

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DEBORA M. PRECHT, LAUREN PRECHT THOMSPON, AND WILLIAM PRECHT, III** | * * * * | **CIVIL ACTION NO. 2:14-CV-00743** |
| Plaintiffs | * * | |
| V. | * * | **JUDGE PATRICIA MINALDI** |
| **GLOBAL TOWER, LLC, GTP INFRASTRUCTURE I, LLC, TELCOM RENTALS, INC., AMERICAN TOWER CORPORATION, GTP INVESTMENTS, LLC, AND HANOVER INSURANCE COMPANY** | * * * * * * * | **MAGISTRATE JUDGE KAY** |
| Defendants | * | |

*********************************************************************

## MEMORANDUM ORDER

Before the court is the Motion to Remand and for attorneys' fees, [doc. 15], filed by plaintiffs Debora M. Precht, Lauren Precht Thompson, and William Precht, III (hereafter, collectively, "plaintiffs"). Named defendants herein are Global Tower, LLC, GTP Infrastructure I, LLC, Telcom Rentals, Inc., American Tower Corporation, GTP Investments, LLC, and Hanover Insurance Company (hereafter, collectively, "defendants"). Defendant American Tower Corporation (hereafter "American Tower") filed an opposition to the motion [doc. 17], plaintiffs filed a reply brief [doc. 20], and American Tower filed a sur-reply [Doc. 23].

For the following reasons, **IT IS ORDERED** that the motion to remand is hereby **DENIED,** and the motion for attorneys' fees is likewise **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

On February 7, 2014, plaintiffs commenced a wrongful death action against defendants in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana. Doc. 1, att. 3. Plaintiffs' petition alleged that William Wayne Precht, Jr. was killed on February 15, 2013, when a crop-duster airplane he was flying collided with the guy wires of a communication tower located on defendants' property. *Id.* Plaintiffs claimed that this accident was caused by the defendants' negligent ownership, maintenance, and/or use of the communication tower, particularly the failure to properly maintain and mark the tower's guy wires. *Id.* at 4.

American Tower removed the suit to federal court on April 4, 2014, on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. American Tower argues that the Louisiana citizenship of defendant Telcom Rentals, Inc. (hereafter, "Telcom") — the only non-diverse defendant[1] — should be disregarded because Telcom was improperly joined in this lawsuit. *Id.* at 5. Specifically, American Tower contends that Telcom had no right, title, or interest in the communication tower or underlying land at the time of the alleged accident, having previously sold the tower to defendant Global Tower, LLC ("hereafter, "Global Tower") and having previously executed an assignment of its ground lease to defendant GTP Infrastructure I, LLC (hereafter, "GTP"). Doc. 1, p. 6.

Plaintiffs then moved to remand, arguing that Telcom was properly named as a defendant despite the previous sale and assignment. Doc. 15. Although plaintiffs do not dispute that the communications tower was sold to Global Tower, plaintiffs argue that Telcom's lease of the

---

[1] The citizenship of the parties is undisputed. The plaintiffs are citizens of Louisiana. Telcom is a Louisiana corporation with its principal place of business in Louisiana. American Tower is a Delaware corporation with its principal place of business in Massachusetts. Defendant Global Tower, LLC is a limited liability company which traces its citizenship to Delaware, Massachusetts, and California. Defendant GTP Infrastructure I, LLC is a limited liability company which traces its citizenship to Delaware, Massachusetts, and California. Defendant GTP Investments, LLC is a limited liability company which traces its citizenship to Delaware, Massachusetts, and California. Defendant Hanover Insurance Company is a New Hampshire company with its principal place of business in Massachusetts.

underlying ground was not validly assigned to GTP. As such, plaintiff argues that Telcom's obligations as lessee were not extinct at the time of the accident, making Telcom solidarily liable for the damage caused by the tower and its guy wires. Doc. 15, att. 1, p. 10. In support of this position, plaintiffs assert that Telcom failed to obtain the approval or consent to the assignment from Krielow Farms, Inc., (hereafter, "Krielow Farms") the landowner and lessor, and that such consent was required by the terms of the lease. *Id.*

American Tower, in its opposition, states that Krielow Farms did in fact consent in writing to the assignment and that, even if Telcom retained its contractual obligations due to an invalid assignment, the obligations would only be to pay rent and maintain the *land*, not the tower. Doc. 17. American Tower attached a document to its opposition entitled "Agreement Regarding Ground Lease," which was signed by Chris Krielow and Yvonne Krielow on behalf of Krielow Farms, as evidence that Krielow Farms agreed to the assignment on November 28, 2010.[2] Doc. 17, att. 1.

However, plaintiffs responded that Krielow Farms' purported consent to Telcom's assignment was itself invalid because Chris and Yvonne Krielow were not authorized to act on behalf of Krielow Farms. Doc. 20. Specifically, plaintiffs argue that Chris and Yvonne Krielow were not officers or agents of Krielow Farms but merely shareholders of the company who hold an agricultural lease on the property surrounding the tower site. Doc. 20, pp. 3–6. Plaintiffs further argue that GTP, who prepared the assignment, knew or should have known that Chris and Yvonne Krielow lacked such authority because: (1) Chris and Yvonne Krielow agricultural lease was recorded in the Jefferson David Parish conveyance records; and (2) an amendment to the site lease between Krielow Farms and Telcom, executed on January 5, 2005, showed that Ed Krielow was the president of Krielow Farms. *Id.* at 4. The plaintiffs also argue that the

---

[2] The actual contract of assignment was entered into on December 25, 2010. Doc. 17, att. 1, pp. 11–17.

agreement was only partially executed because GTP did not sign the document and therefore. plaintiffs claim, it is unclear as to whether both parties consented to the terms of the agreement. *Id.* at 6–7. In sum, plaintiffs argue that the invalidity of consent to the assignment renders Telcom solidarily liable to the plaintiffs because, as an unreleased lessee, Telcom retained the custody and control of the land on which the communication tower sits.

American Tower filed a sur-reply to plaintiffs reply brief. Doc. 23. American Tower argued that plaintiffs were not parties to the assignment between Telcom and GTP and therefore may not attack the validity of that assignment on the grounds of relative nullity. *Id.* at 1. American Tower maintains that Telcom was improperly joined in this matter and that complete diversity exists among the properly joined parties.

## II. LAW & ANALYSIS

The burden of proof for establishing federal jurisdiction is placed on the party seeking removal. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If removal is based on diversity of citizenship, the action is removable only if there is complete diversity and "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state

court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).  Only the latter method is relevant here as American Tower did not allege actual fraud in the pleading of jurisdictional facts.  Thus, the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.  "[T]here must be a *reasonable* possibility of recovery, not merely a *theoretical* one."  *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

The burden of persuasion on a party asserting improper joinder is a "heavy one."  *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009); *see also B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981); *Scott v. Chevron U.S.A., Inc.*, 824 F. Supp. 613, 614 (N.D. Miss. 1993); 15 *Moore's Federal Practice* § 102.21[5][a] (3d ed. 2011). All factual allegations are evaluated in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in the plaintiff's favor.  *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005).  When considering an improper-joinder claim, courts may "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995).

For the following reasons, the court finds that Telcom was improperly joined because plaintiffs have no possibility of recovery against Telcom under Louisiana law.

## A. Telcom's Alleged Duties as Custodian of the Leased Premises

Plaintiff argues that Telcom is liable based on its status as an unreleased lessee of the ground on which the tower sits.[3] Articles 2317.1 and 2322 of the Louisiana Civil Code set forth the relevant framework for determining the liability of the owner or custodian of a thing or building. Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

LA. CIV. CODE ANN. art. 2317.1. Additionally, article 2322 states:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

LA. CIV. CODE ANN. art. 2322. "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 913 (5th Cir. 1997) (citations omitted). "[W]hen injury is caused by a specific thing, that thing is considered 'the object' with respect to the issue of custody; and, the property on which the injury occurred is not considered 'the object' unless an inherent defect in the property caused the injury." *Lee v. Pearl River Basin Land & Dev. Co., LLC*, 2014 WL 2527071, at *4 (E.D. La.

---

[3] Plaintiff cites Louisiana Civil Code article 2683 for the proposition that "Telcom is obligated to use the premises as a prudent administrator." Doc. 20, p. 7. However, plaintiff does not cite any authority for the proposition that article 2683, which sets forth the contractual duties a lessee owes to a *lessor* under a contract of lease, extends the "prudent administrator" requirement to situations in which a third party is injured on the leased premises.

-6-

June 4, 2014) (*citing Doughty v. Insured Lloyds Ins. Co.,* 576 So. 2d 461, 464 (La. 1991); *Dupree v. City of New Orleans*, 765 So.2d 1002 (La. 2000)).[4]

Accordingly, in the instant case, even if Telcom remained an unreleased lessee of the underlying ground by failing to properly assign its ground lease, Telcom's status as a lessee does not end the inquiry. Rather, Telcom would only be liable if a Louisiana court were to find that Telcom had the custody or control of the property on which the communications tower sits, and that an inherent defect in the land itself caused the injury.[5] Nothing in the record indicates that Telcom exercised any custody or control over the underlying land after it transferred its interest to Global Tower and GTP in 2010. In fact, it appears that when Telcom sold the tower and allegedly assigned its ground lease, all rights, responsibilities, and benefits were transferred to GTP and its affiliate company Global Tower and that Telcom has not had any interest in the tower since then. Doc. 17, att. 2, p. 3, ¶ 10.

Additionally, the undersigned cannot reasonably predict that a Louisiana court would find that the property underneath the tower was defective in a way to cause the tower to not have the appropriate safety features needed on its guy wires, the alleged cause of the accident. Doc. 1, att. 3, p. 4. Plaintiffs do not allege that the underlying ground somehow caused the guy wires to be unsafe. Additionally, although the guy wires were anchored into the ground, the wires and anchors were owned and maintained by Global Tower, not Telcom. Accordingly, Telcom's

---

[4] In *Lee*, the plaintiff sued the State of Louisiana and the town of Pearl River after sustaining injuries when he hit his head on an unmarked and unlit bridge during a nighttime boat ride. *Lee*, 2014 WL 2527071, at *1. The town owned and operated a boat launch on the land adjacent to the bridge, but did not own the land underneath the bridge or the bridge itself. *Id.* at *4. In determining whether the town had a duty to mark or light the bridge under Louisiana Law, the court looked at several factors to determine if it had custody or *garde* over the bridge. *Id.* at *5. The court found that the town did not have a duty to light the bridge and was not liable because it did not own, operate, maintain, have custody of, or derive a benefit from the bridge. *Id.* The court stated that the town having custody of property adjacent to the object which caused the damage does not allow the plaintiffs to "bootstrap" custody to the bridge itself. *Id.*

[5] It is undisputed that Telcom did not own the tower at the time of the accident and that Krielow farms has at all relevant times been the owner of the underlying land.

alleged status as an unreleased lessee of the underlying ground is of no consequence to the ultimate determination of this case, namely, whether the guy wires were defective, negligently maintained, or improperly marked.

### B. Lease Assignment

Alternatively the court finds that the lease assignment by Telcom to Global Tower, although relatively null due to vices of form, was nonetheless valid.

Plaintiffs have argued that Chris and Yvonne Krielow lacked the proper authority to consent to the lease assignment. American Tower apparently does not dispute this assertion, instead choosing to argue that plaintiffs are improperly attempting to invoke a relative nullity of a contract to which they are not a party. Doc. 23. However, even assuming that Chris and Yvonne Krielow lacked the proper authority, the parties' conduct after the assignment took place demonstrates that the assignment was tacitly ratified.

Because it appears that Chris and Yvonne Krielow were not officers of Krielow Farms, they could only act on its behalf if they held the proper mandate authority. "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LA. CIV. CODE ANN. art. 2989. "The contract of mandate is not required to be in any particular form," unless the law demands a certain form for an act, in which case the mandate must also be in that form. LA. CIV. CODE ANN. art. 2993. With regards to a lease, the authority of a mandate must be given expressly. *See* LA. CIV. CODE ANN. art. 2996.

However, when a person gives his consent to an obligation incurred on his behalf by another without authority, either expressly or tacitly, the obligation is ratified. *See* LA. CIV. CODE ANN. art. 1843. "Tacit ratification results when a person, with knowledge of an obligation

incurred on his behalf by another, accepts the benefit of that obligation." *Id.* "The effects of confirmation and ratification are retroactive to the date of the confirmed or ratified obligation." LA. CIV. CODE ANN. art. 1844. "Ratification will occur when the principal, knowing of the contract, does not repudiate it but accepts its benefits." *Bamber Contractors, Inc. v. Morrison Eng'g & Contracting Co., Inc.*, 385 So. 2d 327, 331 (La. Ct. App. 1980) (citing *Gallioto v. Trapani*, 116 So.2d 273 (La. 1959); *(Ledoux v. Old Republic Life Insurance Company,* 233 So. 2d 731 (La. App. 3rd Cir. 1970)).

In the instant case, the purported assignment between Telcom and Global Tower took place on December 20, 2010, over two years before the alleged accident. Doc. 1, p. 6. For the time period between the assignment and accident, there is no evidence refuting that GTP had assumed Telcom's lease and was acting as the sole lessee of the ground underlying the tower. Likewise, there is no evidence that Krielow Farms opposed the assignment, wished to repudiate it, or refused to accept rental payments from GTP. Due to the lack of evidence to the contrary, it appears that Krielow Farms ratified Telcom's assignment of its lease by accepting the assignment's benefits, and that Telcom was thereby released from its obligations.

Additionally, Chris and Yvonne Krielow's lack of capacity to consent to the lease assignment only renders the contract relatively null. *See, e.g.*, *Funk v. Clement*, 925 So.2d 717, 721 (La. Ct. App. 3d 2006) (donations of corporate property made without proper authority were relative nullities). American Tower correctly points out that "[r]elative nullity may be invoked only by those persons for whose interest the ground for nullity was established . . . .."." LA. CIV. CODE ANN. art. 2031. In this case, the grounds for nullity exist for the interests of Krielow Farms, Telcom, and GTP. None of these parties have asserted that it did not consent to the agreement or otherwise desire to declare the contract null. Thus, plaintiff's assertion of relative

nullity with regards to the assignment is meritless, because plaintiff was not a party to that contract and the grounds for nullity were not established in its favor.

### III. CONCLUSION

Based on the foregoing, the court finds that plaintiff has no possibility of recovery against plaintiff under Louisiana law, and therefore Telcom was improperly joined in this matter. A concurrent Report and Recommendation will be issued herewith, recommending that Telcom be dismissed from the instant case.

The court further concludes that it has subject matter jurisdiction on the basis of diversity as the properly joined parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. Thus, plaintiff's motion to remand and concomitant request for attorney fees is **DENIED**.

THUS DONE this 21st day of July, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE