UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORA M. PRECHT, ET AL | CIVIL ACTION NO. 14-CV-0743 |
| VERSUS | JUDGE: MINALDI |
| AMERICAN TOWER CORPORATION, ET AL | MAGISTRATE JUDGE: KAY |

**MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY, IN SUPPORT OF PLAINTIFFS' MOTION TO CONTINUE**

Plaintiffs, Debora M. Precht, William Precht, III, and Lauren Precht Thompson (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to the motion for summary judgment filed by defendant, American Tower Corporation ("ATC"). ATC has not and cannot carry its burden of proving that no genuine issue of material fact exists, and its motion for summary judgment must be denied accordingly.

Alternatively, Plaintiffs respectfully request this Court grant their motion to continue ATC motion for summary judgment in order to provide additional time to obtain written discovery responses from the defendants. Defendants, Global Tower, LLC, Global Tower Partners, GTP Infrastructure I, LLC, and GTP Investments, LLC (collectively, "GTP defendants") requested and received an informal extension of time to answer written discovery. [Exhibit G]. No responses have been received from the GTP defendants to date, but the informal deadline has not passed. ATC also requested and received an informal extension of time, during which ATC elected to file this motion for summary judgment without responding to the Plaintiffs' written discovery. [Exhibit G]. Plaintiffs rescinded their informal extension of time for ATC to respond to discovery. ATC made a tepid response to the Plaintiffs' discovery requests,

but its answers are grossly deficient and nonresponsive. Plaintiffs are seeking supplemental responses from ATC through a motion to compel discovery.

## INTRODUCTION

### I. Disputed Issues of Material Facts

As an initial matter, many facts are disputed. In accordance with FED. R. CIV. P. 10(c), Plaintiffs submit and incorporate by reference the attached Statement of Disputed Facts.

### II. General Background

Otherwise, this suit was brought as a result of the untimely death of William "Billy" Precht, Jr. who died in a plane crash, on February 15, 2013, after his crop duster struck an unmarked guywire of a communication tower ("the tower") owned and operated by one or more of the defendants. Defendants allege the tower is situated on a tower site ("the site"), which owned is or was owned by Krielow Farms, Inc., but is leased by GTP Infrastructure I, LLC. However, the tower is owned by Global Towers, LLC. AMT purchased or otherwise was transferred assets of or interest in the GTP defendants. It is unknown who currently owns the tower or to whom the site lease has been assigned. However, Krielow Farms receives rent in the amount of $739.50 per month for the site lease. The rent is paid by AMT, even though GTP Infrastructure I is the alleged leaseholder.

ATC's sole argument in support of its motion for summary judgment is that it can have no liability for Mr. Prechts death because it did not own the tower, the land, or any of the GTP defendants on the date of the crash. ATC further argues that the Plaintiffs have not made a claim for alter ego or successor liability against ATC. However, ATC fails to acknowledge that Federal Courts require notice pleading as opposed to fact pleading typically required in state courts. "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99). Here, Plaintiffs have fairly put ATC on notice of their claim and the grounds therefore. Much to ATC's dismay it is not required that the Plaintiffs identify each and every theory of liability, such as alter ego or successor liability, under which they make claims against ATC. Its motion for summary judgment should be denied upon those grounds alone.

Unfortunately for ATC, many issues of material fact related to successor liability and single business enterprise liability exist. In support of its motion, ATC attached the affidavit of Michael McCormack, a vice president of ATC, who testified that ATC acquired a remote interest in the GTP defendants and it does not do business in Louisiana. Nothing could be a more blatant and intentional misrepresentation to the Court. The bank statement of Krielow Farms clearly establishes the site lease payments are made in the form of direct deposit to Krielow Farms' bank account by ATC. [Exhibit A]. Moreover, upon information and belief, through a merger and/or acquisition, ATC became a direct owner of the GTP dependents and/or their assets, and specifically GTP Investments, LLC. [Exhibit B, Article II]. In other words, ATC became the GTP defendants' successor in interest creating rights with regard to the GTP defendants' assets as well as liabilities, including tort liability. Moreover, the recent acquisition/merger between ATC and the GTP defendants creates numerous questions of fact about the nature of the business relationship between the parties and whether they are operating as a single business enterprise. Thus, ATC cannot carry its burden of proving no genuine issue of material fact exits, and its motion for summary judgment must be denied accordingly.

**STANDARD OF REVIEW**

This Court is of course highly familiar with the standard for granting summary judgments. Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*. In effect, ATC is requesting this Court subrogate the role of the jury by making a pre-trial adjudication of these factual issues. As the moving party, ATC bears the burden of establishing that there are no genuine issues of material fact. *Id*. However, ATC's arguments are conclusory and unsubstantiated by evidence. Moreover, discovery is ongoing, and not all facts have been developed. Accordingly, summary judgment is inappropriate and premature.

Since ATC, the movant, will not bear the burden of persuasion at trial, it must prove there is no genuine issue of material fact related to an essential element of the Plaintiffs' claim. *See Celotex, 477 U.S. at 325*; *see also Lavespere, 910 F.2d at 178*. This has been interpreted to mean that no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In order to determine whether to grant the motion, the Court must "view facts and inferences in the light most favorable tot eh non-moving party." *Mahaffey v. Gen. Sec. Ins. Co*., 543 F.3d 738, 740 (5th Cir. 2008). If, and only if, ATC is able to carry its burden (which it has not and cannot), Plaintiffs must present evidence to the contrary. *See Celotex, 477 U.S. at 324*. Unfortunately for ATC, this case contains a significant number of disputed material facts, which precludes summary judgment.

**LAW AND ARGUMENT**

Since this is a diversity case, Louisiana substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). ATC is liable, and thus a proper party to this suit, under multiple

theories of liability that are well established in Louisiana law. First, under the legal theory of successor liability in Louisiana, the purchaser in an asset sale succeeds to the seller's tort liability if 1) buyer explicitly or implicitly assumes the seller's liability or 2) the buyer is merely a continuation of the seller, which has been interpreted to mean the asset sale is effectively a "de facto" merger or consolidation. *See Bourque v. Lehmann Lathe, Inc., A Div. of Smith Int'l, Inc.*, 476 So.2d 1125, 1127 (La. Ct. App.1985). Second, under the single business entity doctrine, a corporate veil piercing theory, a parent company is liable for the torts of its subsidiary when the two companies operate as a single business enterprise, regardless of the number of levels of corporate structure separating the two companies. *See Brown v. ANA Ins. Grp*., 2007-2116 (La. 10/14/08, 12); 994 So.2d 1265, 1272.

**A. ATC Succeeded to the Tort Liabilities When It Purchased the GTP Defendants**

ATC claims it acquired the GTP defendants after the crash sued upon herein, and thus, bears no liability. However, Plaintiffs contend that ATC became the successor in liability for the torts committed by the GTP defendants when ATC acquired or merged with the GTP defendants.[1] First, upon information and belief based upon Plaintiffs' evidence discussed below, ATC and the GTP defendants did not explicitly exclude tort liability in the purchase agreement between the parties. Rather, ATC explicitly assumed tort liability in its purchase agreement with the GTP defendants. [Exhibit B]. ATC likely disputes this fact, but has not submitted a single shred of evidence to the contrary. Second, ATC's acquisition of the GTP defendants is likely mere continuation of the GTP defendants' business, or a *de facto* merger therewith, which gives rise to successor liability against ATC. However, ATC's attempted circumvention of discovery

[1] ATC's ownership interest in and method of acquiring the GTP defendants remains a disputed fact that has yet to be established by any party. Plaintiffs have requested through written discovery, but not yet received, information and documentation related to the acquisition and/or merger of these companies. Whether there was a particular type of acquisition or whether it was a merger will likely have a material effect on the determination of under which legal theory ATC is liable. Since it remains a disputed fact, summary judgment is inappropriate.

has debilitated the Plaintiffs from developing the material facts. Accordingly, summary judgment is simply inapplicable.

***1. ATC Assumed tort liability.***

The law is clear that "[the Supreme Court said, liability should be imposed when the successor expressly or impliedly agrees to assume the obligations of the predecessor." *Bourque v. Lehmann Lathe, Inc., A Div. of Smith Int'l, Inc.*, 476 So.2d 1125, 1127 (La. Ct. App.1985) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424 n.5 (1973)). The consideration is based upon the premise that a voluntary asset sale includes negotiations as to exactly what is being transferred. *Borque*, 476 So2d. at 1127. Further, "parties to the sale are free to bargain, and **potential liability** is certainly one of the factors that rational businessmen [and certainly sophisticated multinational corporations like ATC] include in the negotiations of such sales." *Id*. (emphasis added).

For instance, *Pichon v. Asbestos Defendants* is a case in involving the issue of successor liability in connection with a products liability claim by an injured third party. 2010-0570 (La.App. 4 Cir. 11/17/10, 5); 52 So.3d 240, 243, *writ denied*, 2010-2771 (La. 2/4/11); 57 So.3d 317. There, the purchase agreement between the seller and buyer explicitly stated "[Buyer] shall not assume or become liable for and [Seller] shall indemnify and hold [Buyer] harmless against any liabilities, obligations or commitments of [Seller] or any of its Affiliates, whether . . . known or unknown, present or future or otherwise . . . relating, directly or indirectly, to . . . product liability claims, litigation . . . ." *Id*. The court held that since the purchase agreement negotiated between the buyer and seller explicitly excluded transferring tort liability from the seller to the buyer for product liability claims, the buyer was not the successor to the seller's tort liability for that claim. *Id*.

Likewise, in *J.D. Fields & Co., Inc. v. Nottingham Const. Co., LLC*, the court held because the written purchase agreement between the buyer and seller expressly excluded liability for torts arising prior to the date of transfer, the buyer was not the successor in liability to a claim for a tort that arose before the date of transfer. 2015-0723 (La.App. 1 Cir. 11/9/15, 5); 184 So.3d 99, 102. The controlling factor for the court was the fact that the purchase agreement identified which assets and liabilities were to be transferred as well as those that were not to be transferred, and the claimed liability was expressly identified as excluded from the transfer. *Id*.

The present suit is factually different from *Pichon* and *J.D. Fields & Co, Inc*., in that ATC has failed to submit a single shred of evidence to establish tort liability was, in fact, excluded from the purchase. Yet, ATC disputes that it assumed tort liability from the GTP defendants. Since ATC is a publicly traded, multinational corporation with presumably sophisticated business managers, it is likely that ATC and the GTP defendants had a written purchase agreement to transfer assets. Plaintiffs' requested, through written discovery to ATC, any and all documents and contracts related to the transfer of the GTP defendants or their assets to ATC. However, ATC objected to the request curiously arguing that it lacks relevancy. [Exhibit C]. Through Plaintiffs' own efforts, they discovered a document filed by ATC with the United States Security and Exchange Commission titled *Securities Purchase and Merger Agreement* ("SPMA"), which is attached as Exhibit B. The SPMA purports to be the contract by which ATC acquired or merged with the one or more of the GTP defendants, but the fact remains disputed since ATC has failed to acknowledge the relevancy of the issue in order to circumvent discovery.

Since ATC has refused to adequately respond to discovery before filing their motion for summary judgment, the SPMA may not be the only document transferring rights to the GTP

defendants and/or the respective assets. Section 2.1 of the SPMA purports to set out what is being transferred. "Seller shall sell, transfer, assign, convey and deliver to Buyer . . . all of such Seller's right, title and interest in" the transferred companies, which includes one or more GTP defendants. Exhibit B, Section 2.1 (emphasis added). Furthermore, Section 2.2(a)(iii) purports to release of the managers and directors of the selling parties, including one or more GTP defendants from "**any liability**. . . ." Exhibit B (emphasis added). Plainly put, ATC explicitly assumed all liabilities of the GTP entities and released the managers and directors of the GTP defendants accordingly.

Additionally, the SPMA states the sellers warranted that no legal actions were pending at the time of transfer. [Exhibit B, Section 3.6]. The warranty that no legal actions are pending necessarily implies ATC is assuming responsibility for legal actions. Otherwise, an express exclusion would simply state ATC is not assuming responsibility or liability for legal actions arising prior to the transfer. Hence, unlike *Pichon* and *J.D. Fields & Co, Inc*., ATC's purchase agreement does not expressly exclude tort liability from the duties assumed through the transfer, nor does identify assets and liability that will be transferred versus those that will not be transferred. Rather, as the SPMA purports, all interests including tort liability were transferred to ATC. At a bare minimum, SPMA creates a genuine issue of material fact related to precisely what was transferred to ATC and whether ATC assumed liability from the GTP defendants as the document purports.

Frankly, there are far too many factual questions related to the transfer to ATC to warrant summary judgment. Precisely what of the GTP defendants or which assets were transferred to ATC remains a genuinely disputed material fact. ATC claims it acquired an indirect interest in the GTP defendants. However, it failed to produce any document, such as a purchase agreement,

to support its assertion or to identify precisely what was acquired. Without a discovery production from ATC, this Court has no confirmation of an existing document, other than the SPMA, that purports to outline the terms of ATC's acquisition of the GTP defendants and/or their assets. Moreover, ATC disputes the fact that it assumed tort liability from the GTP defendants, but has failed to produce evidence to that effect. The SPMA purports to transfer all of the GTP defendants' interests, including tort liability, but since ATC has taken a contrary position, it remains a genuinely disputed issue of material fact. Accordingly, summary judgment is precluded.

***2. Mere Continuation/de facto merger.***

ATC is also a successor in liability to the GTP defendants because its acquisition of the GTP assets constitutes a continuation, or a *de facto* merger, with the GTP defendants. ATC attempts to distinguish itself from the GTP defendants and their assets, but the evidence thus far discovered, despite ATC refusal to respond to discovery related to this issue, supports and at least raises an issue of fact related to whether ATC performed a *de facto* merger with the GTP defendants. The SPMA specifically references the merger many company assets acquired by ATC. [Exhibit B, Section 2.4]. The SPMA alone successfully creates an issue of material fact as to whether ATC effectively merged with or merely continued the business of the GTP defendants after the transfer of assets, thus rendering the mere continuation/*de facto* merger theory applicable.

Louisiana law on successor liability under this theory is well articulated in *Bourque*, *supra*, as follows:

> [The United States Supreme Court] noted that liability is generally imposed when "the purchaser is merely a continuation of the selling corporation." [*Golden State Bottling Co.*, 414 U.S.] at 182 n. 5, 94 S.Ct. at 424 n. 5. This circumstance would include the surviving corporation in most mergers. See La. Rev. Stat. 12:115(E).

> *See also* 15A W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 7122 (Perm. ed. M. Wolf 1967) (listing mergers and consolidations as separate circumstance for imposition of successor liability, and separately defining continuation doctrine as all other sales of assets in which the purchasing corporation is "mere continuation of seller.") Moreover, this rationale for liability would include some non-merger sales in which one corporation or other business entity sells all its assets to another legal entity. The key consideration is whether the successor is, in fact, a "continuation" of the predecessor. The extent to which predecessor and successor have common shareholders, directors, officers, or even employees are pertinent considerations. Further, prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public.

*Bourque*, 476 So.2d at 1127.

Here, Plaintiffs have propounded discovery intended to develop facts related to the considerations necessary in this analysis. Plaintiffs' requests specifically target contracts and purchase agreements to transfer interest in and assets of the GTP defendants to ATC. [Exhibit C]. The discovery also seeks the names of officers and directors of all parties in order to determine whether there are identity of officers and directors of ATC and the GTP defendants. [Exhibit C]. Commonality of employees is also sought, in that Plaintiffs requested ATC and the GTP entities identify the respective employees responsible for particular duties, such as regulatory compliance and financial recordkeeping. [Exhibit C]. Additionally, Plaintiffs expressly requested ATC to identify any affiliates, subsidiaries, or alter egos of ATC. [Exhibit C]. However, ATC has flatly refused to respond to discovery leaving many facts undeveloped. Accordingly, summary adjudication of this extremely fact intensive issue is premature at best.

Plaintiffs' evidence establishes, or at least raises factual issues related to whether, ATC *de facto* merged with the GTP defendants or is a mere continuation thereof. Section 2.4 of the SPMA, entitled "Merger" vests "all debts, liabilities and duties" with the surviving company. [Exhibit B]. Additionally, it comes as no surprise that Louisiana's Secretary of State records indicate ATC and the GTP defendants share the same principal business office, which is ATC's

corporate headquarters in Boston, Massachusetts. [Exhibit D and http://www.americantower.com/corporateus/contact-us/index.htm]. Additionally, a *de facto* merger or consolidation is further evidenced by written correspondence to the tower site landlord, Krielow Farms, Inc., to provide notification that ATC acquired the tower and has changed the identification number of the tower from a GTP number to a "New American Tower Number/Name." [Exhibit E]. The letter heading bears the corporate logos of both AMT and GTP, and requests the landlord to direct legal correspondence to "GTP Infrastructure I, LLC c/o American Tower Corporation" located at 116 Huntington Ave, Boston MA 02116, which is the principle business address for ATC and the GTP defendants. [Exhibit E].

Hence, despite the lack of discovery responses from ATC in connection with these material facts, Plaintiffs' self-procured evidence raises many issues related to whether ATC is a continuation of or *de facto* merger with the GTP entities. ATC is undeniably holding itself out tower site landlords and the public as one in the same with the GTP entities. It is also worth noting that ATC's website offers a search engine to find locations of its "57,000+ U.S. sites." [Exhibit F]. Simply stated, ATC is holding itself out as the owner of more than 57,000 tower sites without attempting to distinguish site ownership of its affiliates or subsidiaries. The reason is plainly obvious – ATC and its affiliates and/or subsidiaries are single business enterprise operating in concert for a single purpose, and likewise, any acquisition is effectively a continuation of or a *de facto* merger with the predecessor company. As a result, many issues of material fact related to the independent and "remote" connection between ATC and the GTP defendants are disputed and undeveloped. Thus, ATC's summary judgment is due to be denied.

**B. ATC is Liable for the Torts of its Subsidiaries and Affiliates**

Louisiana courts have developed what is now a well-established legal doctrine to impose liability on a parent company for torts arising from actions or inactions of a subsidiary. It has been recognized in every Louisiana jurisdiction and has been successfully applied to even the most well managed corporate groups. Here, ATC argues it has an indirect interest in the GTP defendants separated by an alleged nine levels of corporate structure. However, the only evidence ATC submitted in support was a self-serving affidavit from one of its vice presidents purporting to outline the levels of corporate structure. One the other hand, although ATC has refused to answer Plaintiffs' discovery directly pointed at the issue, Plaintiffs' self-procured evidence demonstrates the levels are corporate structure are sham shell companies, and ATC is a parent company acting as one business entity with its wholly controlled subsidiaries, namely the GTP defendants.

The "single business enterprise" doctrine (commonly referred to as, and herein, "SBE") is a theory of veil piercing used when a corporation is determined to be the "alter ego, agent, tool or instrumentality of another corporation." *Dishon v. Ponthie*, 2005-659 (La.App. 3 Cir. 12/30/05, 5); 918 So.2d 1132, 1135, *writ denied*, 2006-0599 (La. 5/5/06); 927 So.2d 317 (citing *Green v. Champion Insurance Co.*, 577 So.2d 249 (La. App. 1 Cir.), *writ denied*, 580 So.2d 668 (La. 1991)). The doctrine is "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 2007-2116 (La. 10/14/08, 12); 994 So.2d 1265, 1272. Unlike traditional veil piercing, indistinguishability or confusion of ownership is not an essential element of SBE. *Id*. Whether the single business enterprise doctrine applies is a question of fact. *See Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11, 94); 61 So.3d 507, 582. Once it is determined the multiple business entities compose a single business enterprise, recovery can be made from

any of the SBE entities. *See Brown*, 994 So.2d at 1272. Concisely stated, once it is determined that multiple entities operate as a single business enterprise, each entity within the enterprise is a proper party to the suit, regardless which entity is the tortfeasor or when the tort was committed. The fundamental principal is that recovery can be made from the parent company for its affiliate's torts because the entities operate as a cohesive unit for a common purpose.

In applying SBE, fact finders must examine the structure of the corporation, rather than its form, by using an illustrative list of eighteen factors:

1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2) common directors or officers;
3) unified administrative control of corporations whose business functions are similar or supplementary;
4) directors and officers of one corporation act independently in the interest of that corporation;
5) corporation financing another corporation;
6) inadequate capitalization ("thin incorporation");
7) corporation causing the incorporation of another affiliated corporation;
8) corporation paying the salaries and other expenses or losses of another corporation;
9) receiving no business other than that given to it by its affiliated corporations;
10) corporation using the property of another corporation as its own;
11) noncompliance with corporate formalities;
12) common employees;
13) services rendered by the employees of one corporation on behalf of another corporation;
14) common offices;
15) centralized accounting;
16) undocumented transfers of funds between corporations;
17) unclear allocation of profits and losses between corporations; and
18) excessive fragmentation of a single enterprise into separate corporations.

*Dishon v. Ponthie*, 2005-659 (La.App. 3 Cir. 12/30/05, 5-6); 918 So.2d 1132, 1135-36, *writ denied*, 2006-0599 (La. 5/5/06); 927 So.2d 317. No one factor is dispositive, and the totality of the circumstances should be considered. *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility*, 2003-0481 (La.App. 1 Cir. 2/23/04, 11); 872 So.2d 1147, 1156.

For example, in *Miller v. Entergy Services, Inc*., plaintiffs defeated the defendants' motion for summary judgment on an SBE issue in a suit against Entergy Corporation and its subsidiaries, for the wrongful death of Mr. Miller. 2004-1370 (La.App. 4 Cir. 7/13/05, 1); 913 So.2d 143, 145. Entergy Corporation and its subsidiaries, similar to ATC and its GTP subsidiaries, may have had separate functions, but operate for a common purpose. *Id*. at 146-47. For instance, Entergy Corporation produced electric power, then marketed and distributed that power, whereas Entergy Louisiana provided electric generation, transmission, and distribution services. *Id*. Analogously, Global Tower owns the physical tower at issue, while GTP Infrastructure I is the site leaseholder and ATC is the operator and manager that actually owns both Global Tower and GTP Infrastructure I, ATC's subsidiaries. Thus, ATC and the GTP defendants, just as the defendants in *Miller*, "represent precisely the same single interest," that is - ATC's interest. *Id.* at 148-49 (internal citations omitted).

In *Miller*, Entergy Corporation argued it was a publicly traded holding company operating in a heavily regulated environment, and as a result, it was inappropriate to impute liability. *Id*. at 148. It further argued that liability under the SBE doctrine was inappropriate because its subsidiaries were sufficiently capitalized and solvent. *Id*. However, the court dismissed those contentions and noted that when a corporation has been "fragmented into branches that are managed by a dominant or parent entity, or have interlocutory directorates, the courts have held the dominant or parent corporation is liable for the obligation of its branches

whenever justice requires protection of the rights of third persons." *Id*. The court considered the SBE factors and, since it was summary judgment (as here), considered the evidence in a light most favorable to the Millers, and held the Millers raised issues of material fact of whether Entergy Corporation and its subsidiaries are a single business enterprise. *Id*. at 150.

Here, although ATC has refused to respond to Plaintiffs' discovery related to the corporate structure and other factors considered the SBE analysis, the Plaintiffs' evidence successfully raises issues of material fact. Like Entergy Corporation, American Tower Corporation is a publicly traded company that completely controls its subsidiaries, all of which operate in a heavily regulated industry. Moreover, just as in *Miller*, it is irrelevant whether ATC's subsidiaries are sufficiently capitalized, although the defendants have not proven they are. The fundamental question is whether they represent a single interest and operate for a common purpose, which Plaintiffs' evidence proves, or at least creates issues of material fact, that they do.

Even though the Plaintiffs are not required to present evidence related to each of the eighteen SBE factors, Plaintiffs have submitted competent evidence in support of many factors and have requested (but not received) discovery related the remaining factors. The factors and corresponding evidence are below. It should be noted from the outset that discovery is ongoing, and Plaintiffs have propounded written discovery to the GTP defendants and to ATC specifically seeking information and documentation related and relevant to each of the factors below. The GTP defendants and ATC requested an extension of time to respond. Plaintiffs graciously granted an informal extension to all. [Exhibit G]. The GTP defendants have not responded, but the informal deadline has not passed. On the other hand, ATC filed this motion for summary judgment prior to responding to Plaintiffs' discovery. As a result, Plaintiffs rescinded their

informal extension of time to ATC. ATC responded to the discovery by objecting to essentially all interrogatories and requests for production, and it gave nonresponsive answers to others.

***1) Companies with substantial identity of ownership***

- Plaintiffs have propounded written discovery related to this matter.

***2) Common directors or officers***

- Plaintiffs have propounded written discovery specifically asking whether ATC and the GTP defendants share any common officer, director, manager, member, or other representative. [Exhibit C].

***3) Unified administrative control of companies whose business functions are similar or supplementary***

- ATC and GTP share a common principal business address at 116 Huntington Avenue, Boston, Massachusetts 02116, which according to its website is ATC's corporate headquarters. [http://www.americantower.com/corporateus/contact-us/index.htm and Exhibit D].

- ATC's letter to tower site landlord, Krielow Farms, Inc. indicates ATC now controls all matters related to the site and notifies of the newly assigned ATC tower site number, even though GTP Infrastructure I is the alleged leaseholder and GTP's logo accompanies ATC in the header. Likewise, the letter directs legal correspondence to be sent to "GTP Infrastructure I, LLC c/o American Tower Corporation" at ATC's corporate headquarters. Moreover, the letter is signed by ATC. [Exhibit E].

- As evidence in opposition to remand, ATC representative, Paul Bergendahl, II, previously submitted an affidavit to this Court testifying to his familiarity with the tower site lease agreement and assignments thereof. His testimony was given and the affidavit notarized in Massachusetts, presumably at ATC's corporate office. Attached as Exhibit A to the affidavit was an agreement to assign the site lease to Global Tower, LLC, but the document was prepared by Global Infrastructure I, LLC. Also attached as Exhibit B to the affidavit was an assignment of the site lease to Global Infrastructure I, LLC, but the document was prepared by Global Tower, LLC. These records belonging to the GTP defendants were obviously stored at ATC's headquarters and freely accessible to Mr. Bergendahl. There is no reason ATC would have access to the GTP defendants' legal documents in Massachusetts other than ATC has unified control over the GTP defendants. [Exhibit H].

***4) Directors and officers act independently in interest of that company***

- Discovery of his matter is ongoing.

***5) Company finances another company***

- Plaintiff propounded written discovery specifically inquiring whether ATC and any GTP defendant share a bank account or otherwise comingle funds, and bank statements and other financial data were requested to be produced. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of ATC's business operations has been identified in order to be deposed.

- Upon information and belief, ATC and the GTP defendants comingle funds as ATC holds itself out to have rights to in *garde* of the tower site as indicated in ATC's site brochure for the tower, but GTP infrastructure I is the actual site lessee. [Exhibit I].

- ATC directly and/or indirectly finances the GTP defendants, specifically GTP Infrastructure I (the tower site lessee) by paying the site landlord for the lease with ATC's funds. The attached bank statement shows that Krielow Farms (Lessor), the landlord to which lease rent is due from GTP Infrastructure I (Lessee), is paid by direct deposit from ATC. [Exhibit A].

***6) Inadequate capitalization***

- Plaintiff propounded written discovery specifically inquiring whether ATC and the GTP defendants maintain sufficient capitalization, and bank statements and other financial data was requested to be produced. [Exhibit C].

***7) Company creates an affiliated company***

- SPMA causes ATC's affiliates to merge, which is similar and establishes ATC's ultimate control over the corporate structure of it and its affiliates. [Exhibit B].

***8) Company paying expenses of other company***

- ATC pays lease expense for GTP Infrastructure I, LLC. Please response and evidence for Factor # 5 above and Exhibit A.

- Discovery of this matter is ongoing. No manager or employee with knowledge of ATC's business operations has been identified in order to be deposed about who pays for expenses such as tower maintenance, electricity, or insurance for property and premise liability.

***9) Receiving no business other than that given by affiliated companies***

- Plaintiff propounded written discovery specifically inquiring into ATC's operations, and bank statements and other financial data was requested to be produced. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations has been identified in order to be deposed about the customer base of ATC or the GTP defendants.

***10) Company using other company's property as its own***

- ATC in its memorandum in support of this motion argues Global Tower owns the tower, but Global Infrastructure I is the site leaseholder. Global Tower is using property belonging to Global Infrastructure I as its own. Discovery of this matter is ongoing

- Whether the customers using the tower pay ATC is also a discoverable fact since if the customers pay ATC for the tower service, ATC is effectively using the tower belonging to Global Tower and the site leased by GTP Infrastructure I as its own.

***11) Noncompliance with corporate formalities***

- Plaintiffs have propounded written discovery specifically seeking information related to corporate formalities. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations has been identified in order to be deposed.

***12) Common employees***

- Plaintiffs have propounded written discovery specifically seeking information related to employees common to ATC and the GTP defendants. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations has been identified in order to be deposed.

***13) Employees of one company render services for another company***

- Plaintiffs have propounded written discovery specifically seeking information related to employees of ATC and the GTP defendants. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations has been identified in order to be deposed.

***14) Common offices***

- ATC and the GTP defendants share a common office and principal business address, which is ATC's corporate headquarters. Please see responses and evidence for Factor #3 above and Exhibit D.

***15) Centralized accounting***

- Plaintiffs have propounded written discovery specifically seeking information related to accounting practices and location of financial records of ATC and the GTP defendants. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations and/or financial recordkeeping practices has been identified in order to be deposed.

***16) Undocumented transfers of funds between companies***

- Plaintiff propounded written discovery specifically inquiring into ATC's financial record keeping practices, and bank statements and other financial data was requested to be produced. [Exhibit C].

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations and financial recordkeeping has been identified in order to be deposed about the financial recordkeeping practices of ATC or the GTP defendants.

***17) Unclear allocation of profits and losses between companies***

- Discovery of this matter is ongoing. No manager or employee with knowledge of business operations and financial recordkeeping has been identified in order to be deposed about the financial recordkeeping practices of ATC or the GTP defendants.

***18) Excessive fragmentation of a single enterprise into separate companies***

- ATC admits to this in its memorandum by boasting the nine levels of corporate structure. Likewise, the affidavit attached to its memorandum it establish the levels of corporate structure confirm the excessive fragmentation. However, no explanation of or justification for the exorbitant fragmentation is given in either ATC's memorandum or the attached affidavit from its vice president. What ATC neglects to mention is the obvious truth – the excessive fragmentation is designed to avoid liability.

Therefore, Plaintiffs' probative evidence produced thus far raises many issues of material fact related to the SBE factors. Since discovery is ongoing, and ATC as refused to respond to discovery, many facts remain to be developed. However, this Court should view the evidence in a light most favorable to the Plaintiff non-movers and easily find that ATC failed to satisfy its burden of proving no genuine issues of material fact exist related SBE, which is a question of fact. Accordingly, ATC's motion for summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny ATC's motion for summary judgment, or alternatively, continue ATC's motion for summary judgment in order for discovery to be completed.

BLOCK LAW FIRM, APLC
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 Telephone
(985) 446-0422 Facsimile

/s/ Kendall J. Krielow
JERALD P. BLOCK, #3151
KENDALL J. KRIELOW, #34625

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2016 a copy of the foregoing has been electronically filed by using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

/s/ Kendall J. Krielow
KENDALL J. KRIELOW