UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORA M. PRECHT, ET AL | CIVIL ACTION NO. 14-CV-0743 |
| VERSUS | JUDGE: MINALDI |
| AMERICAN TOWER CORPORATION, ET AL | MAGISTRATE JUDGE: KAY |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Plaintiffs, Debora M. Precht, William Precht, III, and Lauren Precht Thompson (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to the motion to dismiss filed by defendant, American Tower Corporation ("ATC"). Defendants, Global Tower, LLC, Global Tower Partners, GTP Infrastructure I, LLC, and GTP Investments, LLC (collectively, "GTP defendants") have not filed a pleading in connection with this motion.

**INTRODUCTION**

ATC attempts to create a choice-of-law issue where none exists. Stripped to its essence, ATC's argument is that Delaware law applies to this suit, and that Delaware does not recognize the "single business enterprise" veil piercing theory under which Plaintiffs assert their claims. ATC further argues that Delaware law requires fraud to be alleged in order pierce the corporate veil under an "alter ego" theory and Delaware does not recognize successor liability, except for limited situations, which ATC disingenuously contends are not alleged in the complaint as amended. Contrary to ATC's unsubstantiated assertion, Delaware law does not apply to this case. ATC erroneously jumps to that conclusion based solely ATC's state of incorporation, Delaware. ATC failed to support its argument with any sort of choice-of-law analysis.

1

Rather, ATC cited a few cherry-picked cases in which courts have used choice-of-law analyses to apply laws of other states related to corporate veil piercing. ATC's reliance on these precedents is misplaced; the case law is simply inapposite to the present suit. Not a single case cited by ATC supports the proposition that the applicable law in a wrongful death suit should be the law of any other state than the state in which the injury occurred, Louisiana. ATC's cited authority pertain to veil piercing in a number of other contexts such as fiduciary duty, product liability, debt imposition, bankruptcy, etc., none of which are germane to the present wrongful death suit.

## STANDARD OF REVIEW

Without question, this Court is familiar with the standard in dismissing a claim challenged by Fed. R. Civ. P. 12(b)(6) motion. The Court must look only within the four corners of the pleading, and "construe the complaint liberally in favor of the plaintiff and must take all facts pleaded as true." *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *see also Rankin v. City of Wichita Falls, Tex.*, 762 F.2d 444, 446 (5th Cir.1985). The United States Supreme Court held, in a case with some Louisiana flavor, that a plaintiff's "complaint should not be dismissed unless it appears that appellant could prove no set of facts in support of his claim which would entitle him to relief." *Jenkins v. McKeithen*, 395 U.S. 411, 422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969) (internal quotes omitted); *see also* R*ankin*, 762 F.2d at 446.

The pleading standard articulated in Fed. R. Civ. P 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167

2

L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). To survive a Rule 12(b)(6) challenge, the plaintiff must plead facts sufficient to state a claim to relief that is plausible, not probable, on its face. *Twombly*, 550 U.S. at 555-56. "Rule 12(b)6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations; a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Id*. at 556 (internal quotations omitted). Rule 12(b)(6) motions to dismiss are a "disfavored means of disposing of a case and should be denied unless the moving party can show, beyond a doubt, that the plaintiff cannot prove a plausible set of facts in support of her claim which would entitle her to relief." *Boudreaux v. Deutz Corp*., CIV.A. 09-6759, 2010 WL 1838650 (E.D. La. May 3, 2010) (citing *Twombly*, 550 U.S. 544).

## LAW AND ARGUMENT

In *Erie R. Co. v. Tompkins*, the United States Supreme Court laid to rest any question of which law applies in a diversity case, such as the present suit. 304 U.S. 64, 78 (1938). The Court unequivocally held where matters are not governed by the United States Constitution or acts of Congress, state law is to be applied, regardless of whether it is commercial law or tort law. *Id*. Since this is a diversity case brought in the state of Louisiana involving state law claims, which are in no way governed by federal law, Louisiana substantive law applies.

ATC's motion to dismiss should fail for multiple reasons. First, Louisiana law, not Delaware law, is applicable to all aspects of this wrongful death suit. Second, Plaintiffs' petition as amended sufficiently states a claim for which relief can be granted. The single business enterprise theory, as alleged by the Plaintiffs, is a well-established veil piercing theory in Louisiana. Moreover, Louisiana does not require fraud to be pled to recover under the "alter ego" theory. Third, Plaintiffs sufficiently alleged facts entitling them to a claim for recovery under the successor liability theory.

**I.   Louisiana Law Governs Veil Piercing in This Wrongful Death Suit**

The fundamental flaw in ATC's argument that Delaware law applies to this suit is that in every case cited by ATC, a choice-of-law analysis was performed, albeit none were factually similar to the present case. ATC has failed to perform the slightest choice-of-law analysis. Rather, it merely makes a superficial suggestion that Delaware law applies without showing how Delaware would be affected by the application of Louisiana law. Unlike most of ATC's cited authority, this is not a derivative suit about fiduciary duty or veil piercing as it relates to shareholders and officers, as ATC's cited authority contemplates. Not even close. This is a wrongful death case where the injury occurred in Louisiana and was likely caused by affiliate of ATC for which ATC is responsible or by ATC, a sophisticated entity with extensive contacts to Louisiana by virtue of its business operations in the state.

Since Louisiana substantive law applies to this wrongful death tort suit sitting in diversity, *Louisiana Civil Code article 3543* is the governing authority in a choice-of-law analysis. *See Erie R. Co.*, 304 U.S. 64, 78 (1938). The first paragraph of *article 3543*, in pertinent part, provides: "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state . . . ." Revision Comment (d) of *article 3543* makes clear that "when both the tortfeasor's conduct and the victim's injury occur in the same state, the law of that state applies, regardless of the domicile of the parties or any other factors."

Here, the injury occurred at a tower site located in Jennings, Louisiana that is owned by ATC or its affiliate. Plaintiffs alleged the tortious conduct in Paragraph 21 of their original petition, which included among other claims failure to properly maintain the guy wires and anchors of the tower located in Louisiana, failure to provide adequate markings of tower guy

wires located in Louisiana, and above all "**failure to meet the requisite standard of care required in the situation**" that occurred in Louisiana. Paragraph 14 alleges Mr. Precht struck the guy wires.  Paragraph 16 alleges the guy wires were not maintained in order give sufficient warning to aircraft pilots, such as Mr. Precht.  Paragraph 22 alleges Mr. Precht prematurely perished as a result of the incident involving the tower located in Louisiana.  Simply stated, although it is undisputed, Plaintiffs have clearly alleged the injury occurred in Louisiana.  Likewise, Plaintiffs have clearly alleged the tortious conduct (i.e. failing to properly mark and maintain the guy wires and anchors) occurred in Louisiana.  ATC has declined to even attempt to argue otherwise.  Accordingly, paragraph 1 of *article 3543* requires that Louisiana law apply to all aspects of this suit.

      Nevertheless, ATC argues Delaware law applies based solely upon its place of incorporation being Delaware.  ATC erroneously contends the state of incorporation categorically applies to claims involving corporate veil piercing.  Unfortunately for ATC, its argument is clearly contrary to *article 3543*, paragraph 3 and Louisiana Supreme Court precedent; and to that end, the case law cited by ATC is inapposite since not a single case it cited involves a wrongful death tort claim.  *Article 3543* controls choice-of-law decisions related to claims such as wrongful death, and paragraph 3 provides, in pertinent part, that in cases where the "conduct that caused the injury occurred in this state and was caused by a person who was **domiciled** in, or had another significant connection with, this state. . . . [t]hese cases are governed by the law of this state." [emphasis added].  Further, the Louisiana Supreme Court has confirmed that for purposes of article 3543, a party's domicile is determined in accordance with *Louisiana Civil Code article 3548. See Arabie v. CITGO Petroleum Corp.*, 2010-2605 (La. 3/13/12, 7), 89 So.3d 307, 314.  *Article 3543* states "[f]or purposes of this Title . . . a juridical

5

person that is domiciled outside this state, but which transacts business in this state and incurs a delictual or quasi-delictual obligation arising from activity within this state, shall be treated as a domiciliary of this state."

For instance, in *Arabie v. CITGO Petroleum Corp.*, the Louisiana Supreme Court held CITGO, a Delaware corporation with its corporate headquarters in Houston, Texas was domiciled in Louisiana for purposes *article 3543* and other articles under the same Title, and thus, Louisiana law applied. 89 So.3d 307, 314. The injury in *Arabie* occurred at refinery owned and operated by CITGO in Lake Charles, Louisiana. *Id*. Since CITGO would possibly be subject to a delictual obligation for the incident that occurred at its refinery in Louisiana, CITGO was considered a Louisiana domiciliary for purposes of deciding the applicable law, which was ultimately Louisiana law. *Id*.

ATC's fate is the same as that of CITGO. Just as CITGO was incorporated in Delaware and headquartered in Texas, so too does ATC claim it was incorporated in Delaware and headquartered in Massachusetts. Analogous to the way in which an injury occurred on Louisaian property owned and operated by CITGO, the injury resulting in this litigation occurred on Louisiana property owned and operated by ATC. Plainly put, CITGO had a significant connection with Louisiana by virtue of its business operations in the state. Likewise, ATC has a "significant connection" with Louisiana, as contemplated by *article 3543*, by virtue of its extensive business transactions and property holdings in the state. *See* La. Civ. Code art. 3548. In fact, a search on ATC's site locator via its website reveals it owns 1,180 sites in Louisiana, 14 in Jefferson Davis Parish alone, including the tower subject to this litigation (ATC Asset #371725).[1] [See Exhibit A and Exhibit B].[2] Frankly, there is no connection between Delawaree

---

[1] https://onairaccess.americantower.com/OLA/faces/siteLocator.jspx#

and any aspect of this case (parties or facts), other than it is the state in which ATC chose to incorporate, presumably for tax purposes, which is not an issue here. Accordingly, in the same way CITGO was considered a Louisiana domiciliary for a choice-of-law analysis (*article 3545* in that instance), ATC must be considered a Louisiana domiciliary for this choice-of-law analysis (i.e. *article 3543*).

Therefore, whether a choice-of-law analysis is conducted under paragraph 1 or 3 of *article 3543*, Louisiana law controls this litigation, including the applicability of the various veil piercing theories alleged by the Plaintiffs. This Court must look to the pleadings to determine ATC has carried its burden of proving the Plaintiffs cannot prove facts to support a plausible claim that would entitle them to relief. *See Twombly*, 550 U.S. at 555-56. ATC cannot carry its burden because the Plaintiffs' Petition and Second Amended Petition unequivocally plead facts sufficient to satisfy the Fed. R. Civ. P. 8(a)(2) "short plain statement" requirement.

## II. Plaintiffs' Complaints Are Well-Pleaded

ATC argues the "claims" in the Plaintiffs' Second Amended Petition should be dismissed. However, the Second Amended Petition does not assert any additional claims because the "claim," or remedy, is a cause of action for wrongful death. Rather, it more clearly sets out the possible theories of recovery under which ATC may be liable to the Plaintiffs for the remedy sought. The facts and allegations in the Plaintiffs complaints are more than sufficient to satisfy the Fed. R. Civ. P 8(a)(2) requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and] give the defendant [ATC] fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

---

[2] Exhibit A, attached hereto, is a screen shot of site locations overlaid on a map yielded from a search made on ATC's website for ATC's sites located in Louisiana. Exhibit B, attached hereto, is the "Site Brochure" of the subject tower as published by ATC and posted to its website.

Although it is beyond what is required, Plaintiffs filed their Second Amended Petition to more clearly identify a number of possible theories under which ATC may be liable for the Plaintiffs wrongful death claim. A trial judge may properly exercise her discretion to deny a motion to amend where the amended complaint would be subject to motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Gutierrez v. Vergari*, S.D.N.Y.1980, 499 F.Supp. 1040. In its Memorandum Ruling whereby the Court granted the Plaintiffs' Motion for Leave to file their Second Amended Petition [Doc. 69], the Court recognized the sufficiency of the Plaintiffs' amending petition and allowed it to proceed.

In a very well-reasoned opinion, the Court unequivocally held the Second Amended Petition would be allowed because it was not futile. [Doc. 69, p.6]. The Court's expressly stated its analysis of futility was based "on the same standard of legal sufficiency at issue in a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)." [Doc. 69, p.4]. Each of the legal theories alleged, alter ego, single business enterprise, and successor liability, were examined in detail. ATC now asks this Court to judge the Plaintiffs' complaint under the exact same standard it used previously. Unfortunately for ATC, this Court has already determined the Plaintiffs Second Amended Petition is sufficient to survive a Fed. R. Civ. P. 12(b)(6) challenge.

1. *Single Business Enterprise Theory*

Louisiana courts have long recognized the legal doctrine of "single business enterprise" ("SBE"). It is used to pierce the corporate veil when a corporation is determined to be the "alter ego, agent, tool or instrumentality of another corporation." *Dishon v. Ponthie*, 2005-659 (La.App. 3 Cir. 12/30/05, 5); 918 So.2d 1132, 1135, *writ denied*, 2006-0599 (La. 5/5/06); 927 So.2d 317. Paragraph 6(d) of the Plaintiffs' complaint unequivocally alleges ATC has ultimate control over the GTP defendants rendering them "alter egos, agents, tools, or instrumentalities of

[ATC]." Particularly, the doctrine is "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 2007-2116 (La. 10/14/08, 12); 994 So.2d 1265, 1272. To that end, Paragraph 6(e) alleges ATC operates the GTP defendants "as a single cohesive unit for the common purpose of benefiting [ATC]." This Court expressly recognized these parallels in its Memorandum Ruling [Doc. 69, p.5]. Furthermore, as the Court noted, Paragraph 6(f) explicitly identifies the SBE theory and alleges ATC operates the GTP defendants as a single business enterprise. Accordingly, this Court correctly found the Plaintiffs' Second Amended Petition states a claim for which relief may be granted under the SBE theory.

### 2. *Successor Liability Theory*

The law is clear that "[tort] liability should be imposed when the successor expressly or impliedly agrees to assume the obligations of the predecessor." *Bourque v. Lehmann Lathe, Inc., A Div. of Smith Int'l, Inc.*, 476 So.2d 1125, 1127 (La. Ct. App.1985) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5, 94 S.Ct. 414, 424 n.5 (1973)). An entity may also succeed to its predecessor's liability when the acquisition is a mere continuation or *de facto* merger of the entities. As the Court pointed out in its Memorandum Ruling [Doc. 69, p.6], Paragraph 6(c) of the Plaintiffs' complaint expressly alleges ATC assumed tort liability of the GTP defendants when it acquired or merged with them. This is likely true for two reasons. First, ATC has not established that it expressly declined to assume liability from the GTP defendants as part of the acquisition/merger. Second, the acquisition was likely a *de facto* merger rendering ATC's operation a mere continuation of its predecessor's operations, which subjects ATC to successor liability. Accordingly, the Court correctly found the Plaintiffs' Second Amended Petition sufficiently states a claim for which relief may be granted under the successor liability theory.

*3. Alter Ego Theory*

Paragraph 6(b) of the Second Amended Petition [Doc. 70] alleges ATC merged with one or more of the GTP defendants. Taken as a whole, the Plaintiffs' complaint alleges ATC has not followed the corporate formalities so as to sufficiently distinguish itself from its subsidiaries or affiliates and that it consequently operates its subsidiaries and/or affiliates purely for its own benefit creating a confusion of ownership. Moreover, this Court correctly found the Plaintiffs' references to alter egos are a minor part of the allegations, which do not render the pleadings futile. [Doc. 69, p.5]. Simply stated, the Plaintiffs' alter ego allegations survive ATC's Fed. R. Civ. P. 12(b)(6) attack.

In sum, when deciding whether to allow the Plaintiffs to amend their complaint, this Court has previously scrutinized the Plaintiffs' Second Amending Petition using the same standard used to determine whether the pleadings are sufficient to survive a Fed. R. Civ. P. 12(b)(6) challenge. The Court held the Second Amended Petition was sufficient and granted leave to file the amending petition. [Doc. 69]. ATC now frustrates judicial economy by asking this Court to rehash what it has previously decided in a well-reasoned opinion. Accordingly, ATC's motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny ATC's motion to dismiss.

        BLOCK LAW FIRM, APLC
        422 East First Street
        Post Office Box 108
        Thibodaux, Louisiana 70302
        (985) 446-0418 Telephone
        (985) 446-0422 Facsimile

        /s/ Kendall J. Krielow
        JERALD P. BLOCK, #3151
        KENDALL J. KRIELOW, #34625

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016 a copy of the foregoing has been electronically filed by using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

        /s/ Kendall J. Krielow
        KENDALL J. KRIELOW