UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **PRECHT, et al.,** | § | NO. 14-CV-00743-PM-KK |
| | § | |
| VS. | § | JUDGE PATRICIA MINALDI |
| | § | |
| **GLOBAL TOWER LLC, et al.** | § | MAGISTRATE JUDGE |
| | § | KATHLEEN KAY |
| | § | |

**DEFENDANT AMERICAN TOWER CORPORATION'S**
**REPLY TO MEMORANDUM IN OPPOSITION TO MOTION TO**
**DISMISS**

Defendant American Tower Corporation ("Defendant" or "ATC") files this Reply to Plaintiffs' Memorandum in Opposition to Motion to Dismiss (Doc. 79), and states:[1]

**SUMMARY**

The Court should grant Defendant's Motion to Dismiss (Doc. 74) (the "Motion") because: (1) Louisiana Civil Code Article 3515 governs the choice-of-law analysis, and under it, Delaware law applies to the veil-piercing theories; (2) the decision of the Louisiana Supreme Court cited by Plaintiffs is inapposite; and, (3) because Plaintiffs have not alleged any fact in support of their tort claim, Louisiana choice-of-law statutes addressing torts do not apply.

Before proceeding to the argument, it is useful to briefly review the procedural history and note the shifting nature of Plaintiffs' claims against ATC. Plaintiffs' initial pleading contained a bare tort claim for wrongful death against all defendants. *See* Pet. for Damages (Doc. 1-3). ATC filed for summary judgment on that tort claim. Mot. for Summ. J. (Doc. 52).

---

[1] On August 26, 2016, Defendant filed a Motion to Dismiss (Doc. 74) and a Memorandum in Support of Motion to Dismiss (Doc. 74-1). On September 16, 2016, Plaintiffs responded with a Memorandum in Opposition to Motion to Dismiss (Doc. 79). Defendant also filed an appeal of Magistrate Judge's Award of Attorneys' Fees (Doc. 73) on August 26, 2016, to which Plaintiffs responded with a Memorandum in Opposition to Appeal of Award of Attorney Fees (Doc. 80) on September 16, 2016. Defendant's reply to that Memorandum is filed separately.

1

Subsequently, Plaintiffs moved to continue summary judgment, arguing that further discovery was needed on the tort claim. Mem. in Supp. of Plaintiffs' Mot. to Continue (Doc. 55-1) at 2. Plaintiffs sought and were granted leave to amend their complaint to add various veil-piercing theories, *see* Second Am. and Supplemental Pet. (Doc. 59-2), and moved to compel discovery focused primarily on the new veil-piercing theories. Mot. to Compel Discovery (Doc. 58).

As the procedural history shows, Plaintiffs have provided a moving target at every stage of this litigation. Rather than prosecute any tort claim—ostensibly the core of this entire proceeding—Plaintiffs have distracted and delayed ATC's summary judgment by shifting the focus to recovery theories, even though veil-piercing theories are only relevant if a bona fide tort claim exists. By the same token, Plaintiffs contend that continued discovery is needed to substantiate their tort claim, yet their discovery focuses on their veil-piercing theories. Plaintiffs' focus on anything-but-the-tort is unsurprising. They know that no amount of discovery will change the fact that ATC did not own or control the tower on the date of the accident, February 15, 2013,[2] and therefore ATC cannot be held liable for the alleged tort. The Court should decline Plaintiffs' invitation to engage in further distraction and either grant this Motion to Dismiss or hear the Motion for Summary Judgment.

## ARGUMENT

### A. Under Article 3515, Delaware Law Applies

The parties disagree as to the applicable Louisiana choice-of-law statute.[3] Defendant argues that Louisiana's general choice-of-law statute applies. LA CIV. CODE art. 3515. Plaintiffs

---

[2] This Court has correctly found that Global Tower, LLC, owned the tower on February 15, 2013, the date of the accident giving rise to Plaintiffs' allegations. *See* Mem. Order (Doc. 24), at 7, *adopted by* Order (Doc. 32).

[3] In diversity cases, the law of the forum state governs the choice-of-law inquiry. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry. *See Fortune v. Taylor Fortune Grp., LLC*, 620 F. App'x 246, 247–48 (5th Cir. 2015).

counter that the more specific choice-of-law provisions applying to tort actions control. LA CIV. CODE arts. 3543 (applying to "standards of conduct and safety"), 3548 (applying to "juridical persons"). In short, Plaintiffs argue that because they purported to plead a wrongful death action, Louisiana's specific choice-of-law rules for tort claims govern all aspects of the litigation—both the tort and the veil-piercing theories. This is not the case. If accepted as true, it would mean that any time a tort claim is merely invoked—no matter how tenuous or factually unsupportable—a party would avoid application of the general choice-of-law rule, Article 3515. Even more, it would mean that a tort claim alleged against one party (*i.e.*, Global Tower, LLC) triggers a tort-based choice-of-law analysis against a different party (*i.e.*, ATC). In the absence of any fact suggesting ATC's ownership or control of the tower, Article 3515 controls and requires the application of Delaware law to the veil-piercing theories.

Article 3515 of the Louisiana Civil Code requires a two-step analysis that focuses on relative impairment:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

LA CIV. CODE art. 3515. Importantly, Louisiana's choice-of-law statute endorses the concept of dépeçage, or the notion that different issues may be governed by the law of different jurisdictions. LA. CIV. CODE art. 3515, cmt. (d);[4] *see also Energy Coal v. CITGO Petroleum*

---

[4] As explained in the 1991 commentary, "When a conflict exists with regard to more than one issue, each issue should be analyzed separately, since each may implicate different states, or may bring into play different policies of these states. . . . One result of this analysis might be that the laws of different states

*Corp*., 15-30863, 2016 WL 4575569, at *2 (5th Cir. Sept. 1, 2016).

### B. Delaware Has a Stronger and More Pertinent Relationship to the Veil-Piercing Dispute

Starting with the first step of Article 3515, the policy interests of Delaware (ATC's place of incorporation) and Louisiana (Plaintiffs' domicile and the site of the alleged injury and misconduct) are both implicated here.  Helpfully, the Fifth Circuit has addressed this very conflicts issue, and its guidance is controlling.  *See Energy Coal*, 2016 WL 4575569, at *2.  Under Article 3515, a court will consider "not only the policies underpinning the single business enterprise theory and alter-ego theories in Louisiana and Delaware, but those states' more general policies concerning disregard of the corporate form."  *Id.*

Louisiana law on corporate formation issues is notably uncertain.  For instance, the Louisiana Supreme Court "has never adopted" the single business enterprise theory, and there exists "a hodgepodge of views about the doctrine in lower Louisiana courts."  *Id*. at 3.  In fact, some courts and commentators consider Louisiana Supreme Court precedent to be "inconsistent" with the theory.  *Id*. at *3.  Delaware, by contrast, "has more steadfast policies on whether a corporation can be liable for its affiliate's conduct" and "respects corporate formalities, absent a basis for veil-piercing, recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise."  *Id.* at *3 (*citing Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009)).

After identifying the policies at issue, courts must evaluate the "strength and pertinence" of these policies by looking at each state's relationship to the parties and the factual or legal connection to the events giving rise to the dispute.  *See Energy Coal*, 2016 WL 4575569, at *4 (citing LA. CIV. CODE art. 3515 & cmt. (c)).  While Louisiana is the state of Plaintiffs' domicile and the site of the alleged misconduct and injury, Delaware is where ATC is incorporated.  As

---

may be applied to different issues in the same dispute."  LA. CIV. CODE art. 3515 cmt. (d).

the Fifth Circuit has noted, "[t]hat single tie is an important one" and "Louisiana courts look to the state of incorporation not just when deciding issues involving piercing . . . but also when deciding more general questions of corporate structure." *Id*. at *4. Despite this authority, Plaintiffs attempt to portray Defendant's argument that Delaware law applies to veil-piercing claims as idiosyncratic, and sweepingly state, "[f]rankly, there is no connection between Delawaree [sic] and any aspect of this case (parties or facts), other than it is the state in which ATC chose to incorporate, presumably for tax purposes, which is not an issue here." Mem. in Opp'n to Mot. to Dismiss (Doc. 79) at 6–7. While tax issues are not in dispute, corporate formalities are, and Delaware incorporation law is not just relevant—it is dispositive. Defendant cited multiple cases holding Delaware law applies in its Motion.[5] It could have cited many more.[6] Given the ample precedent supporting the application of Delaware law to veil-piercing

---

[5] *See, e.g.*, *Patin v. Thoroughbred Power Boats, Inc*., 294 F.3d 640, 647 (5th Cir. 2002) ("[T]he Louisiana State Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil."); *Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 385 n.7 (5th Cir. 2009) ("Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."); *D & J Tire, Inc. v. Hercules Tire & Rubber Co*., 598 F.3d 200, 204 (5th Cir. 2010) (citing *Torch*); *In re Gulf Fleet Holdings, Inc*., 491 B.R. 747, 788 (Bankr. W.D. La. Apr. 2, 2013) ("Applying Louisiana's choice-of-law rule for veil-piercing claims, the court will look to the law of the state of incorporation."); *Energy Coal, S.p.A. v. CITGO Petroleum Corp*., 2:14-CV-03092, 2015 WL 5123867, at *3-4 (W.D. La. Aug. 31, 2015) (noting Delaware "clearly has a compelling policy interest in an attempt to sue a Delaware corporation for the acts of its corporate affiliate" and applying Delaware law to veil-piercing claims), *aff'd*, 15-30863, 2016 WL 4575569 (5th Cir. Sept. 1, 2016); *Powerup of S.E. La., Inc. v. Powerup U.S.A., Inc*., No. 94–1441, 1994 WL 543631, at *3 (E.D. La. Oct. 5, 1994) ("[Louisiana] cases suggest that the law of the state of incorporation should be applied to determine fundamental issues of corporate existence of structure."); *NorAm Drilling Co. v. E & PCo Intern., LLC*, 48,591 La. App. 2 Cir. 12/11/13, 8, 131 So. 3d 926, 930 ("Louisiana courts and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure.").

[6] *See, e.g*., *Dykes v. Maverick Motion Picture Group, LLC*, CIV.A. 08-536-JJB-CN, 2011 WL 900276, at *6 (M.D. La. Mar. 14, 2011) ("Courts applying Delaware law—as the Court must do here—'pierce the corporate veil' only where the corporation is merely an instrumentality or alter ego of its owner, such that the corporation is a 'sham and exist(s) for no other purpose than as a vehicle for fraud.'"); *In re CLK Energy Partners, LLC*, 09-50616, 2010 WL 1930065, at *6 (Bankr. W.D. La. May 12, 2010) ("In the present case, the court will look to Delaware alter ego jurisprudence because CLK is a Delaware LLC."); *Kidd v. Symbion, Inc*., CIV.A. 10-3361, 2011 WL 4020814, at *10 n.3 (E.D. La. Sept. 9, 2011) ("The Court applies the law of Delaware, as the state of incorporation for SCH, ASC, and Symbion, to

issues, this argument is hardly "unsubstantiated," and Plaintiffs' attempt to dismiss these cases as "cherry-picked" is odd, if not disingenuous, in light of the Fifth Circuit's guidance. Mem. in Opp'n to Mot. to Dismiss (Doc. 79) at 1, 2.

In a case involving a similar choice-of-law issue, a Louisiana court held that Texas law applied to determine whether a Texas plaintiff could hold a Texas company liable for its affiliate's breach of a contract to drill a methane well in Louisiana. *NorAm Drilling Co. v. E & PCo. Intern., LLC*, 131 So.3d 926, 927 (La. App. 2 Cir. 2013). Analyzing the issue under Louisiana's choice-of-law regime, the court determined "Texas law would be the most seriously impaired" if its law was not applied because Texas "has a strong interest in litigation deciding corporate structure of companies formed and existing under Texas law." *Id.* at 929–30. Likewise, in *Energy Coal*, the court held that the *NorAm* determination applied "with equal if not greater force with respect to Delaware's interest." 2016 WL 4575569, at *5. This Court should reach the same conclusion as the Louisiana court of appeals and the Fifth Circuit on this question and hold that Delaware law would be most seriously impaired were its law not applied.

**C. The Policies and Needs of the Interstate System Favor Applying Delaware Law**

The second Article 3515 factor—*i.e.*, "the policies and needs of the interstate and international systems"—also recommends the application of Delaware law. Article 3515 directs the court to specifically examine "the policies of upholding the justified expectations of the parties and of minimizing adverse consequences that might follow from subjecting a party to the law of more than one state." LA. CIV. CODE art. 3515. It defies logic that ATC could have had a justified expectation that it would be liable for a tort accident involving a tower it did not own or control. By contrast, ATC had—and has—a justified expectation that the law of its state of incorporation, Delaware, will apply to fundamental matters of corporate structure. As Louisiana
―――――――――――――――――――
determine whether the corporate veil may be pierced to impose liability upon Symbion.").

6

law provides, "[a]ll other factors being equal, the parties should not be subjected to the law of a state that they had no reason to anticipate would be applied to their case." LA. CIV. CODE art. 3515 cmt. (c).

As this Court has acknowledged, ATC "is a Delaware corporation with its principal place of business in Massachusetts." *See* Mem. in Opp'n to Mot. to Dismiss (Doc. 24) at 2 n.1.[7] Therefore, Delaware law applies, and under it, Plaintiffs' claims either fail as a matter of law (*e.g*., single business enterprise theory) or Plaintiffs have failed to allege any fact to survive a motion to dismiss (*e.g*., alter ego or successor liability).[8] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[9]

### D. *Arabie* is Inapposite to the Choice-of-Law Issue

Plaintiffs attempt to evade Article 3515 and the substantial precedent applying Delaware law by citing to a decision of the Louisiana Supreme Court, *Arabie v. CITGO Petroleum Corp*.,

---

[7] ATC has requested that the Court take judicial notice of ATC's state of incorporation, as is appropriate for motions to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[8] Delaware does not recognize single business enterprise theory. *See, e.g, In re Heritage Org., LLC*, 04-35574-BJH-11, 2008 WL 5215688, at *21 (Bankr. N.D. Tex. Dec. 12, 2008) (noting "neither the parties nor the Court have found a single Delaware case, or a non-Delaware case applying Delaware law, where the single business enterprise theory was used to impose liability on third parties for another's debts," and commenting upon the "apparent reality that Delaware has never separately recognized this legal theory for imposing liability on another"). Similarly, alter ego is a theory for piercing the corporate veil, and Delaware generally requires fraud or similarly inequitable conduct to be present in order to pierce the corporate veil. *See C.R. Bard, Inc. v. Guidant Corp*., 997 F. Supp. 556, 559 (D. Del. 1998) ("In Delaware, to reach a parent corporation under the alter ego theory, the party asserting jurisdiction must establish some fraud, injustice, or inequity in the use of the corporate form."). Finally, Delaware recognizes successor liability only in "limited situations." *Ross v. DESA Holdings Corp*., No. 05C-05-013 MMJ, 2008 WL 4899226, at *3–4 (Del. Super. Ct. Sept. 30, 2008).

[9] It is worth noting that applying Delaware law would not even necessarily deprive Plaintiffs of a remedy. Global Tower, LLC still exists, has been named as a defendant, has appeared, and is represented by counsel.

2010-2605 La. 3/13/12, 89 So. 3d 307.[10] *See* Mem. in Opp'n to Mot. to Dismiss (Doc. 79) at 6. In *Arabie*, CITGO Petroleum Company was sued for negligence when millions of gallons of oil and wastewater escaped from its storage tanks, creating a "catastrophic" oil spill contaminating over 100 miles of shoreline along the Calcasieu River and requiring several months to clean up. *Id*. at 311.[11] CITGO was sued for negligence, and the parties disputed what state's law applied: Louisiana (as the site of the enormous spill), Texas (CITGO's principal place of business), or Oklahoma (CITGO's former principal place of business). The choice-of-law question had significant implications for damages; Texas and Oklahoma permitted punitive damages, but Louisiana did not. Applying Louisiana's choice-of-law statute, the court held that Louisiana law applied and punitive damages were therefore unavailable. *Id*. at 324.

*Arabie* is of little application to this dispute. First, and most conspicuously, it did not involve veil-piercing. In fact, nowhere in the decision is veil-piercing, alter ego, or successor liability even mentioned. Additionally, the case involved a tort claim and a choice-of-law analysis directed at the same party (*i.e*., CITGO), whereas here, the tort claim and choice-of-law analysis are directed at different parties (*i.e*., Global Tower, LLC and ATC, respectively). Second, *Arabie* addressed punitive damages, which are covered by a specific statute. *See* LA CIV. CODE art. 3546. Third, the case did not involve a question of whether a tort had been committed—CITGO "admitted negligence in allowing the spill." *Arabie*, 89 So. 3d at 311. The

---

[10] Plaintiffs also attempt to distinguish this case law by arguing, "[n]ot a single case cited by ATC supports the proposition that the applicable law in a wrongful death suit should be the law of any other state than the state in which the injury occurred, Louisiana." Mem. in Opp'n to Mot. to Dismiss (Doc. 79) at 2. Yet, to paraphrase Plaintiffs, not a single case cited by Plaintiffs supports the proposition that a wrongful death action seeking to pierce the corporate veil of a Delaware corporation will be governed by Louisiana corporate law.

[11] "Over 21 million gallons of waste, including 17 million gallons of contaminated wastewater and 4.2 million gallons of slop oil, escaped from two existing wastewater storage tanks into an area around the tanks which was surrounded by levees or dikes." *Arabie v. CITGO Petroleum Corp*., 2010-2605 La. 3/13/12, 2, 89 So. 3d 307, 311.

dispute centered instead on the degree of negligence, and as a result, whether punitive damages were available. *Id*. Here, by contrast, ATC adamantly denies any liability or responsibility for the tort claim emanating from the tower accident, filed a motion for summary judgment on those claims, and maintains that Plaintiffs can produce no evidence to support any tort claim against ATC.[12] Thus, *Arabie* is of limited utility and largely inapplicable to a case, like this, involving an attempt to pierce the corporate veil to recover on a contested tort claim.

### E. Plaintiffs Have Not Alleged Any Fact Supporting their Wrongful Death Claim

Plaintiffs ask the Court to apply the tort-specific Article 3543 rather than the general rule of Article 3515, but do not allege a single fact in support of a tort claim against ATC. The lack of any factual allegation supporting their tort claim against ATC forecloses application of Article 3543, which applies only to delictual and quasi-delictual obligations. If a bare and conclusory statement that a tort was committed by one or more defendants grouped together is sufficient to trigger the specific choice-of-law provisions governing tort claims, it would mean that any time a tort claim—no matter how tenuous or facially unsupported—is bootstrapped to a veil-piercing theory, a plaintiff can evade application of the law of the state of incorporation. This is not only logically flawed, but "could lead to rampant forum shopping, something the Louisiana choice-of-law principles aim to prevent." *Energy Coal*, 2016 WL 4575569, at *5.

As ATC has maintained throughout this litigation, Plaintiffs may only recover if they establish that ATC had control or *garde* of the tower involved in the accident on the date the accident occurred, but it is incontrovertible that ATC did not have such control. This Court has correctly found that on February 15, 2013—the date of the accident giving rise to Plaintiffs'

---

[12] Indeed, Plaintiffs' own putative evidence either shows that an entity other than ATC maintained an interest in the tower on February 15, 2013 or that any interest owned by ATC post-dated the accident. *See, e.g.*, the check images (Doc. 54-1), a securities purchase and merger agreement (Doc. 54-2), a printout from the Louisiana secretary of state's website (Doc. 54-4), and the letter from ATC to Krielow Farms Inc (Doc. 54-5).

allegations—Global Tower, LLC, owned the tower.  *See* Mem. Order (Doc. 24), at 7, *adopted by* Order (Doc. 32).  The only basis Plaintiffs supplied for *garde* was the erroneous—and since corrected—discovery responses submitted by Global Tower, LLC that Plaintiffs cited to create ambiguity on this point.  Because of this fundamental temporal fact, Plaintiffs will never be able to establish that ATC maintained *garde* or control over the tower on the date of the accident, foreclosing any possibility of recovery.

If the Court would prefer, it could hear the summary judgment motion—which squarely addresses the alleged tort—before considering the Motion to Dismiss.  If nothing else, this would be more logical than Plaintiffs' cart-before-the-horse approach of focusing on veil-piercing theories rather than substantiating their underlying tort claim.  But whatever it does, the Court should not allow Plaintiffs to leverage a conclusory tort claim to distort the choice-of-law analysis on veil-piercing theories.  Doing so would effectively decide the summary judgment motion without requiring Plaintiffs to meet their burden of proof and without hearing.

## CONCLUSION

Defendant respectfully requests that this Court hold that Article 3515 governs the choice-of-law analysis and Delaware law applies to the veil-piercing theories.  Accordingly, Defendant's Motion should be granted and Plaintiffs' claims dismissed under Rule 12(b)(6).  In the alternative, Defendant asks this Court to defer ruling on the Motion to Dismiss until it hears the Motion for Summary Judgment addressing the tort claim.

Respectfully Submitted,

**LOCKE LORD LLP**

*/s/ Jason M. Cerise*
Jason M. Cerise (#28526)
  jmcerise@lockelord.com
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 558-5100
Facsimile: (504) 681-5200

*/s/ David L. Swanson*
David L. Swanson (admitted *PHV*)
  Texas Bar No. 19554625
  dswanson@lockelord.com
Andrew Buttaro (admitted *PHV*)
  Texas Bar No. 24092207
  andrew.buttaro@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*and*

**COOK YANCEY KING & GALLOWAY**

*/s/ Jason B. Nichols*
Jason Blance Nichols (#28704) (T.A)
  jason.nichols@cookyancey.com
Sidney E. Cook, Jr. (#1311)
  sidney.cook@cookyancey.com
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, Louisiana 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Defendant's *Reply to Plaintiffs' Memorandum in Opposition to Motion to Dismiss* was served on counsel via CM/ECF on September 30, 2016.

/s/    Jason B. Nichols