UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PRECHT, et al., | § | NO. 14-CV-00743-PM-KK |
| | § | |
| VS. | § | JUDGE PATRICIA MINALDI |
| | § | |
| GLOBAL TOWER LLC, et al. | § | MAGISTRATE JUDGE |
| | § | KATHLEEN KAY |
| | § | |

### DEFENDANT AMERICAN TOWER CORPORATION'S
### MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH

Defendant American Tower Corporation ("ATC") files this Memorandum in Support of its Motion for Protective Order and Motion to Quash under Rule 26(b)(2)(C) and (c), FED. R. CIV. P., and Local Rule 7.4, and states:

### Introduction

In this negligence case, Plaintiffs have noticed depositions of three of the highest-ranking ATC executives. The Court should grant a protective order staying the depositions because: (1) these executives have submitted affidavits demonstrating that they lack any unique personal knowledge of the facts relevant to Plaintiffs' claims; (2) the Court has not yet ruled on the pending motion for summary judgment and motion to dismiss, and a ruling would either remove ATC as a party or impact the scope of continued discovery; and, (3) the executives lack unique personal knowledge and Plaintiffs have not sought discovery through less intrusive means, so the depositions do not comply with Rule 26(b)(2)(C), Rule 26(c), or controlling Fifth Circuit precedent on apex depositions.

In addition to granting a protective order, the Court should quash the subpoenas issued to these putative deponents dated November 29, 2016 and requesting depositions on December 19, 20, and 21, 2016. *See* Ex. "A."

**Standard of Review**

Both the general standard of the federal rules and the specific standard pertaining to apex depositions are applicable to these deposition requests. First, to be discoverable, evidence must be non-privileged and: (1) relevant to any party's claim or defense; and, (2) proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). A "court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C). Thus, under Rule 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). More specifically, federal courts have imposed additional requirements on depositions of high-ranking executive officers. These depositions, known as "apex depositions," are not permitted unless: (1) the executive has unique personal knowledge of the facts at issue, and (2) other less burdensome avenues for obtaining the information sought have been exhausted. *Salter v. Upjohn Co.*, 593 F.2d 649, 651–52 (5th Cir. 1979).

**Argument**

**A. As the Affidavits Show, the ATC Executives Lack Relevant Knowledge**

Plaintiffs have asked to depose James D. Taiclet, Jr. (Chairman, President and Chief Executive Officer of ATC), Thomas A. Bartlett (Executive Vice President and Chief Financial Officer), and Edmund DiSanto (Executive Vice President, Chief Administrative Officer, General Counsel, and Secretary), three of the highest-ranking executive officers of ATC, a $45 billion publicly-traded entity. Plaintiffs make this request despite the fact that no party has identified, in any disclosure or discovery, that any of them has any relevant knowledge or any unique personal

knowledge that cannot be elicited in a less intrusive manner. In fact, these individuals only were identified in documents produced in discovery because Plaintiffs asked ATC to identify its executive officers. ATC did so. Plaintiffs' inquiry is the only reason these three executives were identified in any discovery.

As the attached affidavits demonstrate, none of these executives has any knowledge of any fact relevant to Plaintiffs' tort claim. Edmund DiSanto only became aware of the events that gave rise to this litigation after the lawsuit was filed, and was unaware of the accident leading to this litigation at both the time the accident occurred and at the time of the GTP transaction. DiSanto Aff. ¶ 9. And prior to having their depositions noticed, James Taiclet, Jr. and Thomas Bartlett did not even know the lawsuit existed. Taiclet Aff. ¶ 9; Bartlett Aff. ¶ 9. There is no justification for deposing these executives on a tort claim they lack any knowledge of that relates to a property that— as explained in ATC's Motion for Summary Judgment (Docs. 52 & 52-1)— ATC or its subsidiaries did not own, control, or maintain *garde* of when the accident occurred. Thus, each deposition would be "unreasonable" because "there is no occasion for the inquiry and it cannot benefit the party making it." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (3d ed.).

### B. The Depositions Should Be Stayed Pending Ruling on ATC's Dispositive Motions

Plaintiffs' purported justification for these depositions represents yet another attempt to conflate the tort and veil-piercing claims at issue in this litigation. Plaintiffs assert "the relationship between GTP and ATC . . . is directly at play," and therefore, these depositions are "crucially relevant." Ex. "E-1," Email from Kendall J. Krielow to David Swanson (Oct. 25, 2016, 10:46 a.m.). But these three executives do not have any unique, specific knowledge on any veil-piercing claim. Under a protective order, ATC has produced documents relating to its

3

business, the business of some of its indirect subsidiaries, and an October 2013 transaction involving an indirectly held ATC subsidiary, American Tower Investments LLC. American Tower Investments LLC, closed a transaction with a variety of sellers owning that privately-held real estate investment trust group of entities through which GTP Investments, LLC, GTP Infrastructure I, LLC, and Global Tower, LLC became indirectly held subsidiaries of ATC on or about October 1, 2013. To the extent Plaintiffs have any question on the terms or conditions of the transaction, the executed agreements describe those specific terms and conditions.

Plaintiffs claim they seek to depose ATC's three executive officers to substantiate their veil-piercing theories (*i.e.*, alter ego, successor liability, and single business enterprise theory). Ex. "E-1," Email from Kendall J. Krielow to David Swanson (Oct. 25, 2016, 10:46 a.m.). But as discussed more thoroughly in ATC's Motion to Dismiss and related filings (Docs. 74, 74-1 & 83), Delaware law applies to the corporate existence issues in this matter. *Energy Coal v. CITGO Petroleum Corp.*, 15-30863, 2016 WL 4575569, at *2 (5th Cir. Sept. 1, 2016). Delaware does not recognize the single business enterprise theory and requires fraud to pierce the corporate veil—which Plaintiffs have neither pled nor demonstrated. Plaintiffs have not even alleged facts that would support the limited circumstances under which Delaware law recognizes successor liability. *See* Mem. in Supp. (Doc. 74-1) at 6-7.

At the very least, the depositions should be stayed until the court rules on ATC's dispositive motions, both of which are fully briefed and ripe for a decision. The Motion for Summary Judgment (Docs. 52 & 52-1) addresses Plaintiffs' tort claim, while ATC's Motion to Dismiss (Docs. 74 & 74-1) addresses the choice-of-law issue and argues why the Court should apply Delaware law and dismiss the veil-piercing claims. If the Court were to grant both of ATC's pending motions, ATC would no longer be a party. If the Court were to grant either

motion, in whole or in part, the rulings would necessarily impact the scope of relevant and necessary discovery in any remaining dispute.

### C. Under *Salter*, Corporate Executives Must Have Unique Personal Knowledge and Less Intrusive Discovery Must Be Attempted Before They May Be Deposed

Regardless of when and how the Court rules on ATC's dispositive motions, it should still stay the depositions of these three executives because they lack unique personal knowledge and any potentially relevant information could be obtained from document requests or a narrowly-tailored Rule 30(b)(6) deposition.

"It is well-established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).  While the discovery rules are accorded a broad and liberal treatment to achieve their purpose, discovery does have "ultimate and necessary boundaries." *Herbert v. Lando*, 441 U.S. 153, 176 (1979); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  By their plain terms, the federal rules also allow a court to limit discovery so as to avoid unreasonable duplication and to impose restrictions when the discovery sought is "obtain[able] from some other source that is more convenient, less burdensome or less expensive." FED. R. CIV. P. 26(b)(2)(C).

Recognizing the potential for abuse and harassment, courts have vigilantly policed depositions of high-ranking corporate executives or government officials.  Under Rule 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." FED. R. CIV. P. 26(c).  As the Western District of Louisiana has explained, "when the party seeking discovery has had ample opportunity to obtain the information during discovery" and "the court finds that the burden or expense of the discovery sought outweighs its anticipated benefit in light of the importance of

5

the issues and the role of that discovery in resolving the issues," the court may limit further discovery. *Gilmore v. Stalder*, CIV.A. 06-1509, 2008 WL 2097162, at *2 (W.D. La. May 16, 2008) (citing Rule 26(b)(2)(C)). And under the so-called apex doctrine, depositions of high-ranking executives are not permitted unless: (1) the executive has unique personal knowledge of the facts at issue, and (2) other less burdensome avenues for obtaining the information sought have been exhausted. *Salter v. Upjohn Co.*, 593 F.2d 649, 651–652 (5th Cir. 1979).

Plaintiffs' request to depose ATC's executives should fail under the straightforward standard of Rule 26(b)(2)(C) and (c), but it also represents the prototypical, more specific apex deposition rejected by the Fifth Circuit. In *Salter*, a plaintiff in a wrongful death suit sought to depose the president of the defendant corporate drug manufacturer. The Fifth Circuit upheld the protective order issued by the trial court that barred the corporate president's deposition, noting that the trial judge's attempt to postpone or prevent the necessity of taking the president's deposition was within his discretion based on the "defendant's reasonable assertions that [the president] was extremely busy and did not have any direct knowledge of the facts," and other lower-level employees had more direct knowledge. *Salter* has been widely cited and imitated in the nearly four decades since its issuance.[1]

Plaintiffs' requested depositions are impermissible under this well-established legal standard. The accident prompting this lawsuit occurred on February 15, 2013. As of that date,

---

[1] For instance, federal courts have granted protective orders and denied motions to compel when depositions were sought of high-level executives without knowledge of the facts, there was no attempt to obtain information from lower-level executives, and the deposition was harassing. *See, e.g., Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (upholding, in employment discrimination case, denial of plaintiff's motion to compel the deposition of a high-ranking executive in a multinational corporation who worked more than 1,000 miles away); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995) (upholding a protective order in an age-discrimination case barring the deposition of the Chairman of the Board of IBM who testified via affidavit that he lacked personal knowledge of the plaintiff and was unaware of her age, performance, work evaluations, or even the fact of her employment); *Mills v. Wal-Mart Stores, Inc.*, 2007 WL 2298249, at *1 (W.D. Ark. Aug. 7, 2007); *Van Den Eng v. Coleman Co., Inc.*, 2005 WL 3776352, at *2 (D. Kan. 2005); *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 82–83 (S.D.N.Y. 2002).

none of the three ATC executives were employed by, an officer of, or in any way related to an entity that had any interest in Global Tower, LLC, GTP Infrastructure I, LLC, or GTP Investments LLC, or any of their business or holdings prior to October 1, 2013. *See* Taiclet Aff. ¶ 10; Bartlett Aff. ¶ 10; DiSanto Aff. ¶ 10. Additionally, all three executives lack specific personal knowledge regarding the operation of any of these entities or their holdings, including but not limited to their construction or maintenance of communications towers or their compliance with applicable laws and regulations. *Id*. Given these uncontroverted facts, any testimony by the executives necessarily would have to refer to documents or other people working for ATC or its subsidiaries who might have personal knowledge of any potentially relevant information. Thus, the requested depositions are impermissible under Rule 26(b)(2)(C), Rule 26(c), and *Salter*.

## Conclusion

Plaintiffs cannot demonstrate a need for any more discovery from ATC, much less the noticed depositions at issue, prior to the Court's rulings on the pending motions. No amount of discovery will change the fact that GTP Infrastructure I, LLC owned and operated the tower at issue on the date of the accident—and still does. By amending their complaint to add the putative veil-piercing claims, Plaintiffs tacitly admitted that they do not have a tort claim against ATC. No discovery is necessary on the veil-piercing claims. Indeed, whether Plaintiffs have any veil-piercing claim is the subject of the fully-briefed and pending motion to dismiss (Doc. 74). The Court can take judicial notice that discovery and depositions are expensive and time-consuming endeavors. If the discovery sought cannot lead to any relevant information, the discovery is harassing.

ATC requests that the Court stay discovery sought from ATC until it rules on ATC's

motions and, if ATC is still a party after the Court rules, limit any additional discovery to any remaining claim or defense. Additionally, ATC asks the Court to quash the noticed depositions of its executives, who have no unique personal knowledge relating to any determinative issue. Last, ATC requests the Court issue a protective order staying the depositions of James D. Taiclet, Jr., Thomas A. Bartlett, and Edmund DiSanto and quash the subpoenas issued to these putative deponents dated November 29, 2016 and requesting depositions on December 19, 20, and 21.

Respectfully Submitted,

**LOCKE LORD LLP**

*/s/ David L. Swanson*
David L. Swanson (admitted *PHV*)
  Texas Bar No. 19554625
  dswanson@lockelord.com
Andrew Buttaro (admitted *PHV*)
  Texas Bar No. 24092207
  andrew.buttaro@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*and*

**COOK YANCEY KING & GALLOWAY**

*/s/ Jason B. Nichols*
Jason Blance Nichols (#28704) (T.A)
  jason.nichols@cookyancey.com
Sidney E. Cook, Jr. (#1311)
  sidney.cook@cookyancey.com
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, Louisiana 71120-2260
Telephone: (318) 221-6277
Facsimile: (318) 227-7850

ATTORNEYS FOR DEFENDANT AMERICAN TOWER CORPORATION

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Defendant's *Memorandum in Support of its Motion for Protective Order and Motion to Quash* was served on counsel via electronic filing on December 5, 2016.

           */s/ Jason B. Nichols*
           OF COUNSEL