# EXHIBIT "E"

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **PRECHT, et al.,** | § | **NO. 14-CV-00743-PM-KK** |
| | § | |
| **vs.** | § | **JUDGE PATRICIA MINALDI** |
| | § | |
| | § | **MAGISTRATE JUDGE** |
| **GLOBAL TOWER LLC, et al.** | § | **KATHLEEN KAY** |

## AFFIDAVIT OF DAVID L. SWANSON

**BEFORE ME**, the undersigned authority, personally appeared David L. Swanson, who on his oath deposed and stated as follows:

1.      "I, David L. Swanson, am over the age of majority, submit this affidavit of my own free will, and attest to the following facts based on my personal knowledge.

2.      "I am one of the attorneys of record for Defendant American Tower Corporation in this matter.

3.      "Attached as Exhibit '1' to my affidavit is a true and correct copy of my email exchange and attachments from October 25, 2016, regarding Plaintiffs' counsel's request for depositions.

4.      "On November 8, 2016, I produced Paul J. Bergendahl for a deposition in this case in Boston, MA.  At the conclusion of his deposition, I had a conversation with Mr. Krielow where I understood him to say that he was still considering whether he would 'pull down' his request to depose Messrs. Taiclet, Bartlett, and DiSanto.

5.      "Attached as Exhibit '2,' to my affidavit is my email exchange with Plaintiffs' counsel from November 22 and 23 regarding these depositions."

1

**DAVID L. SWANSON**

SWORN TO AND SUBSCRIBED BEFORE ME
THIS _5ᵗʰ_ DAY OF DECEMBER, 2016



NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

PATRICIA PATEMAN
Notary Public
STATE OF TEXAS
ID#7965965
My Comm. Exp. Aug. 5, 2020

2

# EXHIBIT 1

**Swanson, David**

| | |
|---|---|
| **From:** | Swanson, David |
| **Sent:** | Tuesday, October 25, 2016 8:15 AM |
| **To:** | 'Kendall J. Krielow'; Jason Nichols; Unsworth,John E. |
| **Cc:** | Crystal Pitre; jpb@blocklawfirm.com |
| **Subject:** | RE: Additional ATC/GTP Depositions |
| **Attachments:** | Moore's § 26.105 Apex Deposition-c.pdf; Salter v Upjohn Co-c.pdf |

Kendall,

Sorry for the delay in responding.  On your request for apex depositions,  attached are two things I would like you to review and consider.  After you review them, please email or call me so that we can discuss your request.

I have not reviewed your revised topics, but will do so later today or tomorrow.

Thanks.

David

David L. Swanson
Locke Lord LLP
214.740.8514 (office)
214.695.7389 (cell)

---

**From:** Kendall J. Krielow [mailto:kjk@blocklawfirm.com]
**Sent:** Friday, October 21, 2016 10:32 AM
**To:** Swanson, David; Jason Nichols; Unsworth,John E.
**Cc:** Crystal Pitre; jpb@blocklawfirm.com
**Subject:** RE: Additional ATC/GTP Depositions

Guys,

Have you had an opportunity to get available deposition dates for these people?

David and Jason, where are we on the ATC 30B6 topics?

Thanks,
Kendall

**From:** Kendall J. Krielow [mailto:kjk@blocklawfirm.com]
**Sent:** Friday, October 14, 2016 10:39 AM
**To:** 'Swanson, David' <dswanson@lockelord.com>; 'Jason Nichols' <jason.nichols@cookyancey.com>; 'Unsworth,John E.' <John.Unsworth@cna.com>
**Cc:** Crystal Pitre (chpitre@blocklawfirm.com) <chpitre@blocklawfirm.com>; jpb@blocklawfirm.com
**Subject:** Additional ATC/GTP Depositions

Guys,

James D. Taiclet, Jr., Thomas A. Bartlett, and Edmund DiSanto are listed as officers of both ATC and GTP entities.  Liam Stewart is a GTP officer.  I would like to take each of their depositions.  Please provide possible dates that work for each of them and each of you. I presume the ATC officers are in Boston.  Where is Stewart?

Have a good weekend.

Thanks,
Kendall

*Kendall J. Krielow*



**422 East First Street**
**Post Office Box 108**
**Thibodaux, LA 70302**
**985-446-0418 (office)**
**985-446-0422 (fax)**
kjk@blocklawfirm.com

Confidentiality Notice: This e-mail transmission (and/or the attached electronic documents) may contain confidential information belonging to the sender, which is protected by the attorney-client, attorney-work product, or other privileges. The information is intended only for the named recipient. If you are not the named recipient in the text of the message, or it is otherwise evident that the transmission was not intended to be sent to you, you are hereby notified that any use, disclosure, copying, or distribution of the contents hereof is strictly prohibited.

2



1 of 1 DOCUMENT

Moore's Federal Practice - Civil

Copyright 2016, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

Volume 6 Analysis: Civil Rules 24-29
Chapter 26 Duty to Disclose; General Provisions Governing Discovery
D.  PROTECTIVE ORDERS

*6-26 Moore's Federal Practice - Civil § 26.105*

**AUTHOR:** by Patrick E. Higginbotham

**§ 26.105 Types of Protective Orders the Court May Issue**

**[1] Any Order That Justice Requires to Protect Against Annoyance, Embarrassment, Oppression, or Undue Burden or Expense**

**[a] Orders Listed in Rule 26(c)**

Rule 26(c) lists the following types of orders the district court may issue to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense:

(1) An order precluding the disclosure or discovery (*see* [2], *below*). n1

(2) An order specifying terms including the time and place or the allocation of expenses, for the disclosure or discovery (*see* [3], *below*). n2

(3) An order that discovery may be had only by a method other than the one selected by the party seeking discovery (*see* [4], *below*). n3

(4) An order that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters (*see* [5], *below*). n4

(5) An order designating who may be present while the discovery is conducted (*see* [6], *below*). n5

(6) An order directing that a deposition be sealed and opened only by order of the court (*see* [7], *below*). n6

(7) An order that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way (*see* [8], *below*). n7

(8) An order that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court (*see* [9], *below*). n8

This list of orders in Rule 26(c) is not intended to be all-inclusive (*see* [b], *below*).

**[b] Court Is Not Limited to Orders Specified in Rule**

A district court is not limited to the types of protective orders listed in Rule 26(c) (*see* [a], *above*). Rather, a court is authorized to make *any* order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. n9 Thus, the courts have discretion to fashion a protective order to fit the facts and circumstances of the case. n10 Examples of other types of protective orders issued by the courts include:

- In a products liability action, an order that the product not be subjected to destructive testing, changes, alterations, or modifications, without court approval. n11

- An order barring the plaintiff from contacting or communicating with the defendant's actual and prospective customers, except through the defendant's attorneys for reasonably necessary discovery. n12

- An order that a plaintiff seeking to depose the defendant's expert pay the defendant for five hours of deposition preparation time. n13

- An order permitting plaintiff to proceed in pseudonym in an action to recover disability benefits for psychiatric disorders, finding good cause for entry of the protective order because of a strong probability that plaintiff would be stigmatized in the community and would suffer irreparable harm to his professional reputation if his name was revealed. n13.1

The court will deny a protective order if the requesting party fails to establish that it is needed to protect against annoyance, embarrassment, oppression, or undue burden or expense. Examples of instances in which the court concluded a protective order was unnecessary include the following:

- The court refused to issue a protective order precluding disclosure of the plaintiff's diary in a sexual harassment action because the plaintiff had already disclosed intimate details of her sexual relationship with the professor she claimed had sexually harassed her. n14

- The court refused to issue a protective order to quash the deposition of a party who asserted that the taking of that party's statement pursuant to a claim investigation was equivalent to a deposition. n15

- The court refused to issue a protective order prohibiting the public dissemination of the mayor's videotaped deposition in plaintiff's civil rights action against the mayor and city, even though plaintiff's counsel's stated purpose in distributing the videotape was to publicly embarrass the mayor in the eyes of his constituents, because any discomfort on the part of the mayor was outweighed by the right of public access to "this important component of the litigation process." n15.1

**[2] Orders Precluding Disclosure or Discovery**

**[a] Orders That Discovery Not Be Had**

The district court is specifically authorized to issue an order that disclosure or discovery not be had. n16 Nevertheless, the courts seldom order that discovery not be taken at all. n17 Instead, discovery is expected to go forward, with the parties asserting their objections to particular matters during the course of discovery. n18

Some courts have ruled that a party seeking to quash a deposition in its entirety must show "extraordinary" or "exceptional" circumstances. n19

A party is not entitled to a protective order quashing a deposition merely because the deponent may be incompetent to testify at trial. The right to depose a witness and the right to use that testimony in court are separate and distinct, n20 and the information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. n21

On the other hand, the courts seem more willing to grant a protective order denying a deposition when the deponent can establish as a threshold matter a lack of knowledge of any pertinent facts bearing on the action. n22 A protective order that discovery not be had has also been issued when the discovery sought is likely to have a chilling effect on the litigation or other litigation based on similar claims. n22.1

Under the "apex doctrine," courts sometimes grant protective orders barring the depositions of high-level corporate officers or managers who are unlikely to have personal knowledge of the facts sought by the deposing party. If a deponent is a high-level corporate officer who certifies that he or she has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through less intrusive methods, e.g., from lower level employees who are more likely to have direct knowledge. n23 Despite the "apex doctrine," the Sixth Circuit has held that in order to be entitled to a protective order barring the deposition of a high-level corporate officer, the person seeking the protective order still must establish that the deposition will subject the deponent to annoyance, embarrassment, oppression, or undue burden or expense; in applying the doctrine, the court may not simply assume that harassment and abuse are inherent in depositions of high-level corporate officers, or that such depositions should be barred absent a showing that the individual possesses relevant evidence not readily obtainable from other sources. n23.1

Protective orders are sometimes issued to block discovery from subordinate employees when it is more appropriate to seek discovery from the employee's supervisor who had direct responsibility for the matter in question. n24 Nevertheless, a protective order barring the taking of a deposition is difficult to justify and, under ordinary circumstances, the fact that the proposed deponent is a busy person or professes lack of knowledge of matters at issue does not support a protective order. n24.1

When a corporation has several high-level executives, each asking for the protections of the apex doctrine, the court may apply the two-pronged test on a sliding scale so that the closer a proposed deponent is to the apex of some particular division in the corporate structure, and the less directly relevant that person is to the evidence proffered in support of the deposition, the more appropriate the protections of the apex doctrine become. n24.1.1

A party seeking the testimony of a highly placed government official may be required to demonstrate some extraordinary circumstance or special need for the witness's testimony. The policy behind this rule is that a government official who has greater duties and time constraints than other witnesses should be protected from the constant distraction of testifying in lawsuits. n24.2 However, this limited immunity would not shield a government official from testifying in a case alleging the official's direct involvement in matters on which the action is based. n24.3 Thus, depositions of high ranking officials may be permitted when the official has firsthand knowledge related to the claim, but even then only after a showing that other persons cannot provide the necessary information. n24.3.1

Another rationale for limiting depositions of high-ranking government officials is to protect the decision-making process of these officials. Based on this rationale, courts have extended the rule shielding high-ranking government officials from depositions to *former* government officials. n24.3.2

One of those "rare circumstances" that may preclude the taking of a deposition altogether is the medical incapacity of a witness to attend and sit through a deposition. n24.3.3

A party seeking to prevent a deposition on medical grounds has the burden of making a specific and documented factual showing that the deposition will be dangerous to the deponent's health. Even if a normal deposition might be dangerous to the deponent's health, a court will more likely impose ameliorative conditions rather than deny the right to take the deposition. For example, rather than deny the deposition of a plaintiff who suffered Post Traumatic Stress Disorder resulting from childhood sexual abuse, one court imposed the following conditions on the taking of the deposition: (1) that the deposition take place at a neutral site (the jury deliberation room); (2) that the deposition be scheduled in two-hour segments; (3) that the deposition be taken in the presence of a magistrate judge who could use discretion to determine whether the deposition should be adjourned at any time, whether the questions were abusive or oppressive, and whether counsel were conducting themselves in a temperate, dignified, and responsible manner; and (4) if further sessions were need to complete the deposition, that these sessions also be scheduled in two-hour segments. n24.4

Courts are even less likely to prohibit a deposition on medical grounds when the deponent is a party rather than a nonparty witness. In such cases, courts have instead imposed safeguards and conditions on the deposition to protect the party deponent. n24.5

As a general proposition, when the relevance of the information sought is questionable and the request is overly broad, or compliance with the request would be unduly burdensome, discovery of the requested material may be denied. n25

Although protective orders generally may be used to protect against disclosure of privileged matters, a party's intention to assert a privilege should not bar all discovery of the party by deposition. Rather, the proper procedure is for the deponent to appear for deposition and to assert the privilege in response to specific questions, as prescribed by Rule 30(d). n26

A putative or Doe defendant generally will not be granted a protective order to prevent disclosure of identifying information. Courts have concluded that any *First Amendment* right to anonymity is minimal and outweighed by the plaintiff's need for the defendant's information in order to pursue a claim. n26.1

### [b] Orders Regarding Deposition of Party's Attorney

### [i] No General Rule Prohibiting Deposition

Neither the Federal Rules of Civil Procedure or the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorneys. n27 In fact, Rule 26(b)(3) clearly contemplates discovery from attorneys as well as from the parties themselves or their agents. n28 Thus, the fact that the proposed deponent is an attorney for one of the parties is not enough, by itself, to justify the granting of a protective order that discovery not be had. n29 Some courts have pointed out that, when a party employs counsel to represent it in a case in which the attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested. n30

For further discussion of attorneys as deponents, see Ch. 30, *Depositions by Oral Examination* and Ch. 31, *Depositions by Written Questions.*

### [ii] Majority Applies Special Standard to Deposition of Opposing Counsel

Most courts have recognized that deposing opposing counsel tends to disrupt the adversarial system and add to the time and costs of litigation. It necessitates pretrial delays to resolve work-product and attorney-client objections. In addition, the practice of deposing counsel detracts from the quality of client representation because the relationship is tainted by the worry that counsel will be interrogated by the opponent. n31

Most courts are cautious, allowing opposing counsel's deposition only in limited circumstances. n32 Further, because of the potential for abuse inherent in deposing an opponent's attorney a different burden of proof applies. Generally, the burden is on the Rule 26(c) movant to establish good cause for a protective order (*see § 26.104[1]*). However, in cases involving the deposition of opposing counsel, the party seeking the deposition must demonstrate its propriety and need before the deposition may go forward. n33 Courts have reached this conclusion even when it is clear that the attorney is a witness to relevant, nonprivileged, events or conversations. n34

These courts permit a party to take the deposition of opposing counsel only if the party seeking the deposition can establish the following: n35

- No other means exists to obtain the information than to depose opposing counsel.

- The information sought is relevant and nonprivileged.

- The information is crucial to the preparation of the case.

This three-part test was first enunciated in the Eighth Circuit case of *Shelton v. American Motors Corp.* n35.1 The Eighth Circuit has subsequently restricted the application of the *Shelton* test, ruling that it does not apply to an attorney who represented a client in a completed case and then also represented that same client in a pending case in which the information known only by the attorney regarding the prior concluded case is crucial in the pending case. The court explained that the *Shelton* test was intended to protect against the ills of deposing opposing counsel in a pending case, which could potentially lead to the disclosure of the attorney's litigation strategy. Therefore, a party need not satisfy *Shelton* to depose an attorney regarding information concerning a concluded case. n35.2 Following this later Eighth Circuit case, a district court in the District of Columbia Circuit has concluded that the *Shelton* test applies to limit depositions of attorneys in only two instances: (1) when trial or litigation counsel are being deposed; and (2) when the questioning would expose litigation strategy in the pending case. The *Shelton* criteria is not intended to shield attorneys who are employees of a defendant, and who have substantial non-litigation responsibilities, including corporate, business, managerial, public relations, advertising, scientific, and research and development responsibilities. n35.3

For further discussion of attorneys as deponents, see Ch. 30, *Depositions by Oral Examination* and Ch. 31, *Depositions by Written Questions.*

### [iii] Minority Applies Good Cause Standard

A minority of courts have ruled that the standard for establishing the need for a protective order is no different in cases involving depositions of opposing counsel than in other types of cases. n36 This view has little to commend it. It fails to weigh the role of counsel and underestimates the disruptive effect of deposing opposing counsel. These courts hold that a party seeking a protective order to preclude the attorney's deposition must bear the burden under Rule 26(c) of demonstrating good cause to preclude or limit the testimony. n37 These courts also generally refuse to place restrictions on the discovery in advance of the deposition. Instead, the deposition must go forward and the party opposing the

discovery must object to particular inappropriate questions. n38

In applying the standard Rule 26(c) analysis to a request to depose a party's attorney, one district court ruled that the court must balance the need for the discovery against its potential to oppress the adverse party and to burden the adversary process. The party seeking to block its attorney's deposition concerning relevant information must establish undue burden or oppression measured by all of the following: n39

- The relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs.

- The availability of the information from other sources that are less intrusive into the adversarial process.

- The harm to the party's representational rights if its attorney is called on to give deposition testimony.

For further discussion of attorneys as deponents, see Ch. 30, *Depositions by Oral Examination* and Ch. 31, *Depositions by Written Questions.*

### [3] Orders Specifying Conditions for Discovery

### [a] Designation of Time for Discovery

A court may order that discovery be had only on specified terms, including a designation of the time and place (*see* [b], *below* (designation of place)) or the allocation of expenses (*see* [d], *below*). n40

A common restriction is to limit the number of hours or days that a deposition may last. n41

Courts have the power to issue protective orders to vary the sequence and timing of discovery. n41.1 For example, in a sexual harassment case, the court ordered the plaintiff to produce tape recordings of conversations with her supervisor prior to the supervisor's deposition, even though she noticed the deposition before the defendant requested production of the tapes. n42 On the other hand, courts have delayed discovery of prior statements by witnesses until after the witnesses who made the statements were deposed in order to preserve the impeachment value of the prior statements. n43 For further discussion of sequence and timing of discovery, which is regulated by Rule 26(d), n44 see Part E, *Timing and Sequence of Discovery.*

The sequence and timing of discovery is sometimes an issue when one party has obtained a statement or surveillance tape of a witness or another party. The party with the prior statement or tape may wish to withhold it until after the deposition of the witness or party to maintain its impeachment value. On the other hand, the witness will want to review the statement or tape to refresh his or her recollection. One magistrate judge has concluded that the determination of whether to delay production depends on whether the statement or recording constitutes mainly substantive evidence. The magistrate judge acknowledged that some courts have granted a protective order to delay production of a statement or surveillance tape until after a party's deposition in order to preserve the impeachment value. However, when the substantive value of a statement or tape predominates, this magistrate judge reasoned that the courts should not delay production until after the deposition. This would create an unfair advantage for the party who manufactured the tape or collected the statement and who would have an opportunity to prepare for the deposition, while the same opportunity would be denied to the opponent. n44.1 Another court denying a protective order to delay production of a tape-recorded

conversation reasoned that there is no basis for treating recorded statements any differently than prior written documents or other records discoverable as of right. Mere conclusory statements that a party might tailor deposition testimony to conform to previously recorded statements does not provide "good cause" for the issuance of a protective order. n44.2

Issues involving the timing of discovery will often be resolved early in the litigation without a need for a protective order. In cases not exempt from the requirements of Rule 26(f), parties must meet at least 21 days before the a scheduling conference is held or a scheduling order is due under Rule 16(b) to agree upon a discovery plan; this plan must address, among other things, when discovery should be completed and whether discovery should be conducted in phases. n45 Furthermore, courts are required to address the time limits for completion for discovery in their scheduling orders under Rule 16(b). n46 For further discussion, see Ch. 16, *Pretrial Conferences; Scheduling; Management* and Part G, *Conference of the Parties; Planning for Discovery.*

### [b] Designation of Place for Discovery

Pursuant to Rule 26(c)(1)(B), the court has broad discretion to alter the place of a noticed deposition. Nevertheless, this discretion should be exercised only when "good cause" for a protective order is shown. n46.1

There is a general presumption that a defendant's deposition will be held in the district of the defendant's residence. However, this presumption is not as strong when the plaintiff has little or no choice over where to file the litigation. n47 When the defendant is an organization, the presumption is that the depositions of its officers or agents will be taken at its principal place of business, unless justice requires otherwise. n48 Furthermore, when a deposition is noticed to be taken at a location other than the corporation's principal place of business, a presumption arises that the corporation has good cause for a protective order. Thus, the party noticing the deposition has the burden of showing that there are unusual circumstances or principles of justice that require the court to deviate from the general rule that depositions should proceed at a corporation's principal place of business. n48.1

On the other hand, a defendant is generally entitled to examine a plaintiff in the forum where the plaintiff has chosen to sue. n49 In applying the general rule, a court may consider external constraints on the plaintiff's choice of forum; if the plaintiff had no real choice of forum, the court has discretion to forego the general rule. n50 For discussion of where depositions are to be held, see Ch. 30, *Depositions by Oral Examination.*

As an alternative to a change of place for the deposition, the court may order that it be taken on written questions (*see* [4], *below*). n51 As a condition to permitting or requiring that the deposition be taken at a particular place, the court may require one of the parties to advance to the other party the expenses to be incurred in traveling to the designated place. n52

### [c] Stay of Discovery Pending Outcome of Motion or Other Determination or Parallel Criminal Proceeding

Rather than denying discovery outright (*see* [2], *above*), courts may exercise an important option by staying discovery pending the outcome of a motion or other determination. For example, courts have issued protective orders denying discovery prior to a ruling on a motion for summary judgment when the record shows that the requested discovery is not likely to produce the facts needed by the party to withstand the summary judgment motion. n53 Similarly, a district court may stay discovery during the pendency of a motion to dismiss for good cause shown. n53.01

The mere filing of a dispositive motion does not warrant the issuance of a stay of discovery. n53.02 Rather, a stay of discovery is appropriate when the motion appears to have substantial grounds or, stated another way, does not "appear to be without foundation in law." n53.03 However, a court should not stay discovery pending the outcome of a dispositive motion when discovery is needed to defend that motion. n53.04 A determination of whether to stay discovery must be made on a case-by-case basis, with the court considering such factors as: n54

6-26 Moore's Federal Practice - Civil § 26.105

- The type of motion and whether it is a challenge as a matter of law or to the sufficiency of the allegations.

- The nature and complexity of the action.

- Whether counterclaims or cross-claims have been interposed.

- Whether some or all of the defendants join in the request for the stay, the posture or stage of the litigation.

- The expected extent of discovery in light of the number of parties.

- The complexity of the issues in the case.

- Any other relevant circumstances.

Discovery should be stayed pending outcome of a summary judgment motion only if: (1) the pending motion is potentially dispositive of the entire case or at least dispositive of the issue on which discovery is sought; and (2) the pending motion can be decided without additional discovery. On the other hand, it "is particularly appropriate" to deny the protective order if a stay could preclude either party from fully preparing for the pending motion. n54.1

In actions against the government and government officials in their individual capacities, courts have recognized that because uncontrolled discovery against the government can impose an undue burden on public officials and government agencies, discovery should be stayed until the threshold immunity question is resolved. n55 The interplay of substance and procedure is important. Public officials enjoy a qualified immunity. Significantly, the doctrine of qualified immunity protects an official from discovery, as well as liability for money damages. Ordinarily, discovery will be confined to the immunity issue, or will be stayed in its entirety. The key point is that the stay of discovery is the implementing tool of the substantive doctrine.

When parallel civil and criminal cases are pending, discovery in the civil case is frequently stayed pending the outcome of the criminal proceedings. The stay is imposed to preclude a litigant from making use of the liberal civil discovery procedures to obtain information not readily available under the more restricted discovery provisions in criminal actions. n56 Factors to be considered in deciding whether to stay discovery pending the outcome of parallel criminal proceedings include: n56.1

- The interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding.

- The interests of and burdens on the defendants.

- The convenience to the court in the management of its docket and in the efficient use of judicial resources.

- The interests of other persons not parties to the civil litigation.

- The interests of the public in the pending civil and criminal actions.

Another reason for granting a stay of civil discovery pending the outcome of criminal proceedings is to protect a party's *Fifth Amendment* rights. Although it is constitutionally permissible for a defendant to have to choose between testifying in a civil matter and asserting the *Fifth Amendment* privilege, courts may grant a stay of civil proceedings in the interest of justice. In exercising its discretion, courts consider the factors listed above, as well as the extent to which the defendant's *Fifth Amendment* rights are implicated. n56.2

**[d] Allocation of Expenses**

A provision added to Rule 26(c) in 2015 expressly permits the court to issue a protective order allocating the expenses of discovery. n56.3 Although, previously, courts implicitly had the power to enter such orders, explicit recognition was intended to stave off arguments that the court had no such authority. However, recognizing the authority does not imply that cost-shifting should become a common practice. It is still the case that a responding party ordinarily bears the cost of responding. n56.4

**[4] Orders Prescribing a Discovery Method**

Rule 26(c)(1)(C) authorizes the court to order that discovery be had by a method of discovery other than that selected by the party seeking discovery. This provision of Rule 26(c) is often invoked by motions seeking to conduct depositions by written questions pursuant to Rule 31. n57 In general, depositions on written questions are less expensive than oral depositions, n58 and courts have found depositions under Rule 31 to be particularly appropriate when the expected benefit of an oral deposition was outweighed by its costs. Thus, protective orders requiring depositions on written questions have been entered when the costs of a full-blown oral deposition in a foreign country might not be necessary to elicit the information sought; n59 when the deponent stated an intention to invoke the *Fifth Amendment* and was likely to answer few substantive questions; n60 and when a party sought to depose opposing counsel (*see also §* *26.105[2][b]*). n61 In actions concerning the transmission of AIDS through blood transfusions, the depositions of nonparty blood donors have been ordered to be taken on written questions in order to protect the donor's identity (*see* Ch. 31, *Depositions by Written Questions* ). n62

When the issues to be addressed by the witnesses are narrow and straightforward, and the hardships of taking an oral deposition would be substantial, written questions may be an adequate substitute for an oral deposition. n63 However, Rule 31 depositions on written questions are not always an appropriate alternative because they do not allow for effective cross-examination. n64 For example, in *Mill-Run Tours, Inc. v. Khashoggi,* n65 the defendants in an action to recover payment for ordered airline tickets sought a protective order directing that their noticed oral depositions be taken on written questions under Rule 31. The court denied the motion, holding that oral depositions were indispensable because the plaintiff needed to explore the defendant's use of the purchased tickets and their purported agency relationship to another individual. The court noted that oral depositions should not routinely be replaced by depositions on written questions because the written format does not permit probing follow-up questions, does not allow counsel to observe the demeanor of the witness and evaluate credibility, and permits counsel to assist the witness in providing carefully tailored answers that are likely to generate additional discovery disputes. n66 While the inability to observe the demeanor of the witness can potentially be cured by videotaping the proceedings (or otherwise recording them by

audiovisual means), the other two limitations are endemic to the process. For further discussion of Rule 31, see Ch. 31, *Depositions by Written Questions.* Another relatively inexpensive alternative, which permits follow-up questions but has other limitations, is a telephonic (or other remote electronic) deposition pursuant to Rule 30(b)(7). For further discussion of Rule 30, see Ch. 30, *Depositions by Oral Examination.*

### [5] Orders Excluding Certain Matters or Limiting Discovery to Certain Matters

Rule 26(c) authorizes the court to order that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. n67 A protective order that limits the scope of discovery, like all Rule 26(c) protective orders, requires a showing of good cause. n68

Despite the broad scope of discovery (*see* § 26.81[1]) when discovery relates to irrelevant matters, the courts have begun, with more frequency, to use Rule 26(c)(4) to circumscribe the scope of discovery. n69 For example, in an enforcement proceeding, the Ninth Circuit ruled that the district court properly granted a protective order barring a party from discovering matters related to affirmative defenses that are not cognizable in an enforcement proceeding because discovery relating to those defenses is irrelevant and immaterial. n70 Thus, a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement for a protective order. n71

For further discussion of the relevancy requirement, see *§ 26.41.*

### [6] Orders Designating Who May Be Present

A court may designate the persons who may be present while discovery is conducted. n72 Courts have the power to designate who is allowed to attend a deposition when good cause is shown for restricting attendance. n73 As a general rule, any party or representative of a party, or witness with information relevant to the claims or defenses, or any investigator or expert witness may attend depositions. n73.1 On the other hand, individuals may be excluded from a deposition on a specific showing that some harm or prejudice might occur to a party or to the deponent through the disclosure of secret or sensitive information, or might be excluded on a specific showing that they might act coercively or disruptively. n73.2

Factors that might justify exclusion of nonparties from a deposition might not be sufficient to exclude parties because of the parties' more substantial interest in being present. n74 Under Rule 26(c)(5), it is generally recognized that a court may exclude a party from attending a deposition only in extraordinary circumstances. n75 Furthermore, when the person to be excluded is a party to the action, the court must also consider any constitutional due process right to be present at the deposition. n76

The courts have restricted who may be present when the deponent is likely to be intimidated by the opposing party or anxious or fearful about the deposition process. n77 Even in cases of intimidation, however, it is unlikely that a court will restrict one of the parties' attorneys from attending or conducting a deposition. For example, a district court refused to issue a protective order precluding defendant's attorney from conducting plaintiff's deposition, although plaintiff, who was suffering from Post Traumatic Stress Disorder resulting from sexual abuse, asserted that counsel's loud male voice and brusque manner would unnerve her and cause her psychological harm. The district court reasoned that an order precluding defendant's attorney from questioning plaintiff is akin to a motion to disqualify counsel. Such motions are granted only in limited circumstances, usually as a remedy for a violation of the Code of Professional Responsibility. Furthermore, even an ethical violation does not always justify removal. An attorney should be disqualified only when there is a reasonable possibility that some specifically identifiable impropriety actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his or her own choice. n77.1

Privacy interests of parties and witnesses may also call for restrictions, particularly in cases involving allegations of

sexual abuse. n78

Rule 26(c)(1)(E) is also frequently invoked when a party is imprisoned at the time a deposition is to take place. n79 Prisoners are not automatically precluded from attending depositions. Instead, the court must make a particularized finding that the safety concerns of the prison outweigh the individual prisoner's right to attend a deposition. In making this determination, the judge should consider where the deposition will take place, the security needs in transporting the prisoner, the importance of the person being deposed, and the prisoner's security history. n80

A simple assertion that the testimony of one witness may "taint" that of another is generally an insufficient reason for barring the attendance of one fact witness from the deposition of another. n80.1

If witnesses are excluded from a deposition, consideration should be given as to whether the excluded witnesses should be precluded from reading, or being otherwise informed about, the testimony given in the earlier depositions. n81 Alternatively, a court may devise ways for the excluded parties to participate in the deposition outside the presence of the deponent if exclusion is based on the deponent's fear or anxiety about testifying in the presence of those persons. n81.1

### [7] Orders Directing That Deposition Be Sealed and Opened Only on Court Order

### [a] Protective Order for Sealing Encompasses More Than "Depositions"

Rule 26(c)(1)(F) authorizes the court to order "that a deposition be sealed and opened only on court order." Although this provision only expressly mentions depositions, the courts have often placed other discovery materials under seal. n82

Rule 26(c)(1)(F) is frequently used to protect confidential business information. n83 Rule 26(c)(1)(F) has also been used to protect the privacy interests of child abuse victims. n84 In addition, it may be used to protect confidential informants. n84.1

### [b] Parties' Agreement to Seal Documents

There is a growing tendency, especially in commercial cases, for the litigants to agree to seal documents produced during discovery, as well as pleadings and exhibits filed with the courts. However, some courts have cautioned against the automatic acceptance of the parties' stipulation to seal records, insisting on a good cause determination n85 before ordering that discovery be sealed to protect the public right of access to discovery materials. Courts following this restrictive approach to sealing discovery do not leave the decision to the parties, and do not routinely enter an agreement of the parties to seal discovery documents. n86 Such courts also have taken the position that under the Federal Rules of Civil Procedure, discovery materials are presumptively open to the public unless a valid protective order directs otherwise. n87 Because discovery documents are no longer routinely filed with the courts, n87.1 courts are moving away from the presumption that discovery materials are open to the public (*see* [c], *below*).

The restrictive approach taken by these courts is problematic. The notion that a district court must hold a hearing on the issue of good cause with an uncontested motion gathers force under Rule 26 only by invocations of the "public interest"--that is, interests of persons not a party to the case or order. However, there is no common-law or constitutional right of access to discovery materials; traditionally, pretrial discovery was not considered to be a public component of a civil trial. n87.1.1 The text of the rule aside, so long as interested parties can intervene for the limited purpose of challenging the order, the restrictive approach lacks strong policy justification.

The more convincing view is that good cause must be shown if and only if the sealing of discovery is contested. While it is within a district court's discretion to insist on a showing of good cause despite a stipulation, Rule 26 does not

compel it to do so. Insisting on hearings before issuing uncontested orders to seal discovery imposes an unnecessary burden on the district courts, given the not insignificant number of routine protective orders in which no public interest is arguably implicated.

**[c] Application of Doctrine of Public Right of Access to Judicial Documents**

The courts have long recognized a common law right of public access to judicial documents. n87.2 The Second Circuit has established a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public. First, the court must determine whether the documents are indeed "judicial documents," to which the public has a presumptive right of access. Second, if the documents are judicial documents, the court must determine whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances, or whether the presumption is a low one. Third, once the weight of the presumption is determined, a court must balance competing considerations against it. n87.3

"Judicial documents" have been defined as items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process. As a general rule, unfiled documents do not qualify as judicial documents. Furthermore, the mere filing of a document with the court is insufficient to render that document a judicial document subject to the right of public access; the item must be relevant to the performance of the judicial function and useful in the judicial process as well. n87.3.1

Application of the doctrine of public right of access to most discovery documents is questionable in light of the 2000 amendment to Rule 5(d). The pre-2000 version of Rule 5(d) required parties to file discovery documents with the court. The Rule now provides that initial disclosures under Rule 26(a)(1) and (2) and discovery requests and responses (including depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission) must not be filed until they are used in the proceedings or the court orders filing. n87.4 It was the filing requirement under the pre-2000 version of Rule 5(d) that convinced many courts to treat discovery documents as other judicial documents, with a presumptive right of public access to these discovery materials. In the absence of the filing requirement, however, at least one commentator has concluded that the presumption of a public right of access to discovery materials can no longer be substantiated. n87.5 Nevertheless, after discovery documents are used in the proceedings or the court orders them to be filed as provided in Rule 5(d), the question arises whether the documents are "judicial documents" to which a public right of access exists. A district judge in the Second Circuit applied the three-part analysis to conclude that a videotaped deposition did not become a "judicial document" simply because it was brought to the court's attention in the course of a discovery motion. On the other hand, the court opined that the deposition might "acquire a different status" if it is presented at trial. n87.6

In a guide to sealing court records, the Federal Judicial Center explained the limited public right of access to discovery documents as follows: n87.6.1

> Information exchanged by the parties during discovery is not subject to a *First Amendment* or common-law public right of access. If the fruits of discovery are filed in conjunction with a dispositive motion, a qualified right of access attaches. If they are attached to a filing in conjunction with a discovery motion, however, the public right of access is substantially diminished. (*footnotes omitted*).

Most courts subscribe to this line of reasoning, concluding that information exchanged during pretrial discovery is not generally considered to be public information and can be restricted on a showing of good cause. However, parties generally cannot keep from public view discovery materials filed with the court in connection with dispositive motions. n87.6.2

**[d] Two Standards Govern Motions to Seal**

The Ninth Circuit has held that two standards govern motions to seal documents. The first is a "compelling reasons" standard, which applies to most motions to seal judicial records. Because there is a presumed common law right to inspect public records, including judicial records, a party seeking to seal judicial records must show that compelling reasons supported by specific factual findings outweigh the general public policy favoring disclosure. n87.7

The second standard applies to private materials, such as discovery documents that are not part of the judicial record. The more general Rule 26(c) standard applies to these types of records. The relevant standard under Rule 26(c) is whether "good cause" exists to protect the information from being disclosed to the public by balancing the need for discovery against the need for confidentiality. This good cause standard presents a lower burden for the party wishing to seal documents than the "compelling reasons" standard. The recognized public interest in judicial records that underlies the "compelling reasons" standard does not exist for documents produced between private litigants. n87.8

Recognizing a distinction between "judicial documents" and documents produced during discovery, courts outside the Ninth Circuit have applied this dual standard as well. If the document is not "judicial," there is no presumption of public access and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order. n87.8.1

The "good cause" standard is not limited to discovery, but also applies when a party seeks access to previously sealed discovery attached to other motions. The Ninth Circuit has sometimes used the terms "dispositive" and "nondispositive" motions when deciding what test to apply to unseal documents attached to a particular motion. n87.9 However, use of the term "dispositive" raises the issue of whether use of the "compelling reasons" test should be limited only to those cases in which the motion at issue is literally dispositive, meaning that it brings about a final determination. This would include motions to dismiss, for summary judgment, and judgment on the pleadings, but would not include other motions that go to the heart of the case, such as a motion for a preliminary injunction or a motion in limine. In other words, the court observed, "the public would not be presumed to have regular access to much (if not most) of the litigation in federal court, as that litigation rarely falls into the narrow category of 'dispositive.' " Thus, the court concluded, public access to filed motions and their attachments should not merely depend on whether the motion is technically "dispositive." Rather, public access turns on whether the motion is more than tangentially related to the merits of the case. n87.10

**[8] Orders Concerning Disclosure of Trade Secret or Other Confidential Information**

**[a] Good Cause for Protection of Confidential Information**

One of the most frequently invoked protective order provisions, Rule 26(c)(1)(G) authorizes the court to order that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way. n88 Rule 26(c)(1)(G) has been interpreted to protect from disclosure material that would harm the disclosing party by placing it at a commercial disadvantage. n89

To demonstrate good cause under this provision, the party seeking the protective order must show that the information sought is a trade secret or other confidential information, and that the harm caused by its disclosure outweighs the need of the party seeking disclosure. n90 If this showing is met, the burden shifts to the party seeking discovery to establish that disclosure of the confidential information is relevant and necessary. n91

In determining whether information warrants protection as a Rule 26(c)(1)(G) trade secret, courts have considered the following factors: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) measures taken to guard the information's secrecy; (4) the value of the information to the business or to its competitors; (5) the amount of time, money, and effort expended in development of the information; and (6) the ease or difficulty of duplicating or properly acquiring the information. n91.1

A genuine need for confidentiality must be shown under Rule 26(c)(1)(G). A risk of revelation of information that might be unpopular or might raise questions unrelated to the litigation is not sufficient to justify a protective order on ground of confidentiality. n92 The person seeking a protective order also must show that there was a reasonable expectation of confidentiality or privacy with respect to the information sought. n92.1

The Third Circuit has recognized several factors the court may consider in evaluating whether good cause exists for a protective order for confidential material: n93

- Whether disclosure will violate any privacy interests.

- Whether the information is being sought for a legitimate purpose or for an improper purpose.

- Whether disclosure of the information will embarrass a party.

- Whether confidentiality is being sought for information important to public health and safety.

- Whether sharing information among litigants will promote fairness and efficiency.

- Whether a party benefitting from the order of confidentiality is a public entity or official.

- Whether the case involves issues important to the public.

For discussion of protection for trade secrets, see *§ 26.46[16]* and Weinstein's Federal Evidence, Ch. 508, *Trade Secrets (Sup. Ct. Standard 508)* (Matthew Bender 2d ed.). For a sample protective order protecting against dissemination of confidential information, see Manual for Complex Litigation § 40.27 (4th ed. 2004).

**[b] Protective Procedures Used by Courts**

The courts have employed a number of protective procedures when fashioning a protective order to guard against the improper disclosure of trade secrets or other confidential information. n94 For example, the courts frequently order that disclosure be limited to counsel, n95 or to counsel, counsel's employees, and the parties' expert witnesses. n96

Other examples of protective procedures include the following:

- A protective order prohibiting discovery to anyone but expert witnesses and requiring the plaintiff to return the documents to the defendants at the termination of the litigation. n97

- A protective order restricting access to trial counsel who have neither represented nor will represent any other hospital for 18 months. n98

6-26 Moore's Federal Practice - Civil § 26.105

   ● A protective order barring plaintiff's in-house counsel from obtaining knowledge of defendant's trade secrets, but permitting access to information through an independent consultant. n99

   ● A protective order requiring that materials containing trade secrets and other confidential proprietary information not be made public, be returned to the disclosing party after the litigation has ended, and not be retained for use in any other case. n99.0.1

In deciding whether to permit an opposing party's in-house counsel access to confidential data, at least one magistrate judge has considered the following factors: (1) the nature of the litigation and whether the litigation presents difficult or complex issues or claims, (2) whether alternative discovery measures would assist the in-house attorney seeking access to the confidential information in the development of the litigation, and (3) whether the in-house attorney is involved in the employer-litigant's "competitive decision-making." n99.1 The crucial factor is often whether in-house counsel is involved in the employer-litigant's competitive decision-making. "Competitive decision-making" refers to in-house counsel's role, if any, in making company decisions that affect contracts, marketing, employment, pricing, product design, or similar business decisions made in light of similar or corresponding information about a competitor. n99.2

At least one court has refused to appoint an independent expert to shelter a party's confidential business data during discovery, finding that the appointment of an independent expert is cumbersome in practice. n99.3

### [9] Orders Directing Simultaneous Filing of Information Under Seal

Rule 26(c)(1)(H) n100 permits the court to order that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. The general purpose of Rule 26(c)(1)(H) is to protect the parties from fraud and to prevent one party from acquiring an unfair advantage over the other. This can sometimes be achieved by a simultaneous exchange of sensitive information so that neither party is privy to the other party's information first. n101

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Environmental LawHazardous Wastes & Toxic SubstancesCERCLA & SuperfundEnforcementCost Recovery ActionsPotentially Responsible PartiesOwners & OperatorsEvidenceTestimonyGeneral OverviewGovernmentsAgriculture & FoodProduct PromotionTortsProcedureSettlementsEnforcement

Return to Text

**FOOTNOTES:**
(n1)Footnote 1. *Fed. R. Civ. P. 26(c)(1)(A)*.

   (n2)Footnote 2. *Fed. R. Civ. P. 26(c)(1)(B)*.

   (n3)Footnote 3. *Fed. R. Civ. P. 26(c)(1)(C)*.

   (n4)Footnote 4. *Fed. R. Civ. P. 26(c)(1)(D)*.

   (n5)Footnote 5. *Fed. R. Civ. P. 26(c)(1)(E)*.

   (n6)Footnote 6. *Fed. R. Civ. P. 26(c)(1)(F)*.

(n7)Footnote 7. *Fed. R. Civ. P. 26(c)(1)(G).*

(n8)Footnote 8. *Fed. R. Civ. P. 26(c)(1)(H).*

(n9)Footnote 9. **Protection from annoyance, embarrassment, oppression, or undue burden or expense.**

*7th Circuit Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F.3d 854, 858 (7th Cir. 1994)* (court improperly entered parties' stipulated protective order).

*10th Circuit Boughton v. Cotter Corp., 65 F.3d 823, 829 (10th Cir. 1995)* (order that deposition of opposing counsel not be had).

(n10)Footnote 10. **Court's discretion.** *See Raso v. CMC Equip. Rental, Inc., 154 F.R.D. 126, 127 (E.D. Pa. 1994)* (court may use its discretion to decide what particular restrictions are necessary).

(n11)Footnote 11. **Preservation of evidence.** *See Marrocco v. General Motors Corp., 966 F.2d 220, 221 (7th Cir. 1992)* (protective order entered to ensure preservation of motor vehicle, which was subject of action).

(n12)Footnote 12. **Barring ex parte communications.**

*4th Circuit See also M&M Med. Supplies v. Pleasant Valley Hosp., 981 F.2d 160, 163 (4th Cir. 1992)* (court properly entered protective order barring plaintiff from contacting former patients of defendant hospital whose identity it had learned through discovery).

*8th Circuit See May Coating Techs., Inc. v. Illinois Tool Works, 157 F.R.D. 55, 56-57 (D. Minn. 1994)* (patent infringement action).

(n13)Footnote 13. **Costs for preparing expert.** *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 154 F.R.D. 212, 214 (E.D. Wis. 1994)* (court found that issues were complex and expert who had prepared lengthy report approximately five months prior to deposition would need considerable preparation for deposition).

(n14)Footnote 13.1. **Party proceeding under pseudonym.** *Doe v. Provident Life & Accident Ins. Co., 176 F.R.D. 464, 470 (E.D. Pa. 1997)* (also finding that defendant failed to establish that its ability to prepare case would be prejudiced by maintaining plaintiff's anonymity).

(n15)Footnote 14. **Plaintiff's diary not protected.** *Topol v. Trustees of Univ. of Pa., 160 F.R.D. 476, 477 (E.D. Pa. 1995)* (protective order concerning plaintiff's diary was not required because diary was relevant, plaintiff placed her mental state in issue, and disclosure would not result in oppression).

(n16)Footnote 15. **Second deposition.** *Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D. Kan. 1996)* (although scheduling second deposition of same person generally supports finding of annoyance and undue burden warranting issuance of protective order, party's statement in claim investigation was not equivalent to "first" deposition).

(n17)Footnote 15.1. **More than minor embarrassment required.** *Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001)* (mere fact that some level of discomfort or embarrassment might result from public dissemination of mayor's videotaped deposition was not good cause to support protective order sealing deposition).

(n18)Footnote 16. *Fed. R. Civ. P. 26(c)(1)(A).*

(n19)Footnote 17. **Prohibition of discovery is rare.**

*4th Circuit See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 84 (M.D.N.C. 1987)* (protective orders totally prohibiting deposition are rarely granted).

*5th Circuit See Campos v. Webb County Tex., 288 F.R.D. 134, 137 (S.D. Tex. 2012)* (citing **Moore's**, court observed that protective order completely prohibiting deposition is rarely granted).

*7th Circuit See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994)* (protective orders prospectively suppressing depositions are rarely granted).

*10th Circuit See Leighr v. Beverly Enters.--Kan. Inc., 164 F.R.D. 550, 551-552 (D. Kan. 1996)* (although agreement between defendant and city attorney was inadmissible, court would not grant protective order prohibiting deposition of city attorney unless information sought was wholly irrelevant to case).

*11th Circuit West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990)* (deposition of party's attorney calls for special scrutiny of general rule).

(n20)Footnote 18. **Objections during course of discovery.** *See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994)* (deponents are expected to assert objections during deposition and to allow questioning parties to develop circumstantial facts in order to explore propriety of asserted privilege, immunity, or other objection).

(n21)Footnote 19. **Extraordinary circumstances.**

*1st Circuit Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998)* (prohibiting taking of deposition is extraordinary measure for which moving party has burden of showing extraordinary circumstances based on specific facts that would justify such an order).

*4th Circuit See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 84 (M.D.N.C. 1987)* (request to take deposition of party's attorney constitutes extraordinary circumstances).

*5th Circuit See Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 92 (N.D. Tex. 1994)* (refusing to quash deposition of 15-year old victim in sexual abuse case).

*7th Circuit See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994)* (refusing to prohibit deposition of opposing counsel).

*D.C. Circuit Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001)* (magistrate judge applied rule that party seeking to quash deposition in its entirety must show extraordinary circumstances, and found that plaintiff failed to meet this standard with her conclusory affidavits that she suffered from dementia and depression); *Alexander v. FBI, 186 F.R.D. 60, 64 (D.D.C. 1998)* (complete prohibition of deposition is extraordinary measure and witness failed to demonstrate extraordinary circumstances with his bare assertion that he possessed no information pertaining to case).

(n22)Footnote 20. *See generally Fed. R. Civ. P. 32*; Ch. 32, *Using Depositions in Court Proceedings.*

(n23)Footnote 21. **Deponent's incompetency to testify.** *Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 93 (N.D. Tex. 1994)* (deponent's learning disability, long term memory problems, recantation of accusations, and fear and

anxiety were relevant to defense in sexual abuse action, and did not warrant order quashing deposition).

(n24)Footnote 22. **Deponent's lack of relevant knowledge.**

*2d Circuit See  Milione v. City Univ. of New York, 950 F. Supp. 2d 704, 714 (S.D.N.Y. 2013)* (court granted protective order to preclude deposition of university chancellor in employment discrimination action against university when plaintiff had already deposed two university representatives in superior position and chancellor did not have personal knowledge of plaintiff's employment or change in his job responsibilities).

*6th Circuit See  Lewelling v. Farmers Ins. of Columbus, Inc., 879 F.2d 212, 218 (6th Cir. 1989)* (plaintiffs were barred from deposing their employer's chief executive officer who lacked knowledge about any pertinent facts).

*10th Circuit See  Thomas v. International Bus. Machs., 48 F.3d 478, 483 (10th Cir. 1995)* (deposition of corporate officer in age discrimination action was quashed when proposed deponent submitted an affidavit swearing that he lacked personal knowledge of plaintiff and her work performance).

(n25)Footnote 22.1. **Chilling effect.** *See  Rivera v. NIBCO, Inc., 364 F.3d 1057, 1064-1065 (9th Cir. 2004)* (district court properly granted protective order precluding discovery as to plaintiffs' immigration status in plaintiffs' employment discrimination action because such discovery would have chilling effect on legitimate civil rights claims of undocumented workers).

(n26)Footnote 23. **Protective order available when "apex" deposition sought.**  *Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)* (upholding issuance of protective order requiring plaintiff to depose other employees that defendant indicated had more knowledge of facts before deposing corporate defendant's president).

*1st Circuit See  Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985)* (when then-Chrysler president Lee Iacocca signed affidavit professing ignorance to information sought by plaintiffs, court required discovery to proceed against Iacocca initially by interrogatory).

*2d Circuit See  General Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002)* (courts will often deny request to depose high-ranking corporate official when lower-ranking executives have access to same information); *Harris v. Computer Assocs. Int'l, Inc., 204 F.R.D. 44, 46 (E.D.N.Y. 2001)* (when high-level employee or officer can contribute nothing more than lower-level employee, deposition of high-level employee is considered to be duplicative, cumulative, and burdensome, and good cause is shown not to take deposition).

*4th Circuit See  Maxtena, Inc. v. Marks, 289 F.R.D. 427, 440 (D. Md. 2012)* (when executive has submitted affidavit disclaiming unique personal knowledge, it is often appropriate to defer live deposition of that executive until examining party can demonstrate otherwise).

*5th Circuit  Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)* (upholding issuance of protective order requiring plaintiff to depose other employees that defendant indicated had more knowledge of facts before deposing corporate defendant's president); *see  Baine v. General Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991)* (when plaintiffs attempted to depose corporate vice-president, court required plaintiffs to first depose lower level employees and to serve interrogatories on vice-president to determine whether he had superior knowledge of facts).

*7th Circuit  Patterson v. Avery Dennison Corp., 281 F.3d 676, 681-682 (7th Cir. 2002)* (district court properly refused to compel attendance of high-ranking corporate executive who worked more than 1,000 miles away from facility where plaintiff was employed prior to her employment discrimination action because plaintiff failed to submit interrogatories, which would have been less expensive, more convenient method of discovering whether this executive had any relevant information).

*9th Circuit  Apple Inc. v. Samsung Electronics Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012)* (judicially created "apex doctrine," which recognizes that request for deposition of high-level executive "creates a tremendous potential for abuse or harassment," permits court to limit discovery from high-level executive when discovery sought may be obtained from some other source that is more convenient, less burdensome, or less expensive).

*10th Circuit See also  Thomas v. International Bus. Machs., 48 F.3d 478, 483 (10th Cir. 1995)* (deposition of corporate officer in age discrimination action was quashed when proposed deponent submitted an affidavit swearing that he lacked personal knowledge of plaintiff and her work performance).

(n27)Footnote 23.1.  **Sixth Circuit requires establishment of one of Rule 26(c)(1)'s enumerated harms.** *Serrano v. Cintas Corp., 699 F.3d 884, 901-902 (6th Cir. 2012)* (corporate officer's "bald assertion" that being deposed would present substantial burden is insufficient).

(n28)Footnote 24.  **Blocking discovery from subordinate employees.** *Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853-854 (10th Cir. 1996)* (in suit against ski resort operator, no abuse of discretion by trial court in limiting deposition on marking of trails to manager who was responsible for marking trails).

(n29)Footnote 24.1.  **Protective order not available simply because deponent is busy person.**

*2d Circuit  General Star Indem. Co. v. Platinum Indem. Co., 210 F.R.D. 80, 83 (S.D.N.Y. 2002)* (fact that witness has busy schedule is not, by itself, basis for denying discovery from high-ranking corporate official).

*6th Circuit See  Serrano v. Cintas Corp., 699 F.3d 884, 901-902 (6th Cir. 2012)* (to justify protective order, even of high-level corporate official, one of Rule 26(c)'s enumerated harms must be established by demonstration of specific facts, and not from stereotypical and conclusory statements).

*9th Circuit See  Apple Inc. v. Samsung Electronics Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012)* (apex doctrine is in tension with otherwise broad allowance for discovery, and party seeking to avoid deposition on this basis "carries a heavy burden").

(n30)Footnote 24.1.1.  **Sliding scale for large corporations.** *Apple Inc. v. Samsung Electronics Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012)* (doctrine's common application to classic paradigm of single-hierarchy corporate structure is ill-suited to determining apex status in company of "global proportions").

(n31)Footnote 24.2.  **Limited immunity for government officials.** *See  In re United States, 985 F.2d 510, 512-513 (11th Cir. 1993)* (quashing subpoena for Commissioner of Food & Drug Administration in routine lawsuit).

*1st Circuit  Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007)* (without appropriate limitations, government officials will spend inordinate amount of time tending to pending litigation).

*2d Circuit  Lederman v. New York City Dep't of Parks & Rec., 731 F.3d 199, 203 (2d Cir. 2013)* (high-ranking government officials are generally shielded from depositions because they have greater duties and time constraints than other witnesses); *see Jones v. Hirschfeld, 219 F.R.D. 71, 75 (S.D.N.Y. 2003)* (citing **Moore's,** court acknowledged heightened standard for permitting deposition of high ranking government official, but ruled that former President Clinton was not entitled to protective order under that heightened standard because information sought from Mr. Clinton in this lawsuit seeking to enforce settlement reached in previous sexual harassment action was unrelated to Mr. Clinton's official public duties).

*3d Circuit  Buono v. City of Newark, 249 F.R.D. 469, 470-471 n.2 (D.N.J. 2008)* (noting that Third Circuit has not yet addressed issue, magistrate judge granted protective order precluding deposition of mayor as high-ranking government employee in city employee's political retaliation action because mayor had no personal knowledge of events alleged in lawsuit).

*7th Circuit See  Stagman v. Ryan, 176 F.3d 986, 994-995 (7th Cir. 1999)* (highly placed public officials should not be subject to deposition in cases arising out of performance of their official duties unless there is reason to believe that official has some personal knowledge of case).

*11th Circuit See  In re United States, 985 F.2d 510, 512-513 (11th Cir. 1993)* (quashing subpoena for Commissioner of Food & Drug Administration in routine lawsuit).

*D.C. Circuit See  Alexander v. FBI, 186 F.R.D. 1, 4 (D.D.C. 1998)* (high ranking government officials are generally not subject to deposition unless they have some personal knowledge about matter and party seeking deposition makes showing that information cannot be obtained elsewhere).

(n32)Footnote 24.3.  **No protective order for government official with direct involvement.**

*11th Circuit  Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 175 F.R.D. 347, 348 (N.D. Ga. 1997)* (district court denied protective order because mayor, who was proposed deponent, was named party in his capacity as mayor, and one of his aides was responsible for presenting ordinance that was being challenged in suit).

*D.C. Circuit  Sherrod v. Breitbart, 304 F.R.D. 73, 75-76 (D.D.C. 2014)* (Secretary of Agriculture was subject to deposition because he had personal knowledge directly relevant to claims and defenses in case, which was not available from other sources).

(n33)Footnote 24.3.1.  **Standard for deposition of high-ranking official.**

*1st Circuit  Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007)* (district judge properly issued protective order precluding mayor's deposition because plaintiffs failed to exhaust "other available avenues of discovery").

*2d Circuit  Lederman v. New York City Dep't of Parks & Rec., 731 F.3d 199, 203 (2d Cir. 2013)* (in case of first impression, Second Circuit held that, to depose high-ranking government official, party must demonstrate exceptional circumstances, for example when official has unique first-hand knowledge related to litigation, or information cannot be obtained through other less burdensome or intrusive means).

*7th Circuit See Bagley v. Blagojevich, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007)* (party seeking deposition of high-ranking official must first demonstrate reason to believe that deposition will produce or lead to admissible evidence).

*D.C. Circuit See Byrd v. District of Columbia, 259 F.R.D. 1, 8 (D.D.C. 2009)* (magistrate judge questioned whether deputy mayor and general counsel for district department were "high-ranking officials," but even if they are, depositions were ordered because both officials had personal knowledge of facts in case).

(n34)Footnote 24.3.2. **Former high-ranking official protected.** *See United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 316-317 (D.N.J. 2009)* (although Third Circuit has not yet ruled on issue, magistrate judge did not abuse his discretion in extending, to former government official, rule that high-ranking government officials should not be subject to deposition absent extraordinary circumstances).

(n35)Footnote 24.3.3. **Deposition precluded because of medical grounds.** *Dunford v. Rolly Marine Service Co., 233 F.R.D. 635, 637 (S.D. Fla. 2005)* (sole shareholder/officer of defendant corporation would not be required to undergo deposition based on opinion of treating neurologist that deponent had life-threatening acute brain condition).

(n36)Footnote 24.4. **Motion to prevent deposition on medical grounds.** *See Schorr v. Briarwood Estates Ltd. Partnership, 178 F.R.D. 488, 491 (N.D. Ohio 1998)* (court imposed conditions because plaintiff sufficiently showed that deposition was likely to be dangerous to her health if conducted without limitations).

*3d Circuit See In re Tutu Water Wells Contamination CERCLA Litig., 189 F.R.D. 153, 157 (D.V.I. 1999)* (while acknowledging that order precluding deposition is rare, court granted protective order precluding deposition of 81-year-old man who was in extremely fragile health and who had been deposed on prior occasion).

*5th Circuit Campos v. Webb County Tex., 288 F.R.D. 134, 136 (S.D. Tex. 2012)* (party seeking to prevent deposition on medical grounds must make specific, documented factual showing that deposition will be dangerous to deponent's health).

*6th Circuit See Schorr v. Briarwood Estates Ltd. Partnership, 178 F.R.D. 488, 491 (N.D. Ohio 1998)* (court imposed conditions because plaintiff sufficiently showed that deposition was likely to be dangerous to her health if conducted without limitations).

(n37)Footnote 24.5. **Higher burden on party deponent.** *Campos v. Webb County Tex., 288 F.R.D. 134, 138 (S.D. Tex. 2012)* ("It would appear that the higher burden imposed on a party who is seeking a protective order, as opposed to a witness seeking one, stems from the non-movant's legitimate interest in trial preparation and the discernable importance of the witness whose deposition is at issue").

(n38)Footnote 25. **Discovery denied.**

*6th Circuit See In re Richardson-Merrell, Inc. Bendectin Prod. Litig., 624 F. Supp. 1212, 1241 (S.D. Ohio 1985), aff'd on other grounds, 857 F.2d 290 (6th Cir. 1988)* (district court issued protective order prohibiting plaintiffs from deposing government official who had reviewed study, finding such discovery oppressive when plaintiffs possessed copy of study and were deposing person who conducted it).

*7th Circuit See In re Air Crash Disaster, 131 F.R.D. 127, 128-129 (N.D. Ill. 1990)* (district court granted protective order prohibiting plaintiffs from taking depositions of three crew members in

6-26 Moore's Federal Practice - Civil § 26.105

defendant's flight simulator because questioning them while simultaneously requiring them to operate flight simulator would be oppressive and unduly burdensome).

*11th Circuit See Moore v. Armour Pharmaceutical Co., 927 F.2d 1194, 1198 (11th Cir. 1991)* (in an action on behalf of children who were infected with HIV virus through blood transfusions, district court properly quashed deposition subpoena served on leading AIDS researcher employed by Center for Disease Control, and appellate court expressed concern that possibility of calling this expert in large number of cases would detract from his ability to conduct much needed research).

(n39)Footnote 26.  **Assertion of privilege at deposition.**  *Gatoil, Inc. v. Forest Hill State Bank, 104 F.R.D. 580, 581 (D. Md. 1985)* (in case involving assertion of privilege against self-incrimination, court ordered discovery to proceed by deposition on written questions, with deponent specifying which questions were objectionable); *see Fed. R. Civ. P. 30(d)*; Ch. 30, *Depositions by Oral Examination.*

(n40)Footnote 26.1.  **Protection of identifying information.**  *See* Cinetel Films, Inc. v. Does 1-1,052,  *853 F. Supp. 2d 545, 557 (D. Md. 2012)* (any *First Amendment* right to remain anonymous claimed by alleged illegal downloader must give way to plaintiff's right to use judicial process to pursue meritorious copyright infringement claims).

(n41)Footnote 27.  **Attorneys may be deposed.**

*1st Circuit See Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208, 209 (D.P.R. 1998)* (although Federal Rules of Civil Procedure do not explicitly prohibit deposition of opposing party's attorney, federal courts disfavor such depositions, permitting them only in limited circumstances).

*2d Circuit Lama v. Malik, 25 F. Supp. 3d 316, 319 (E.D.N.Y. 2014)* (lawyers are not automatically insulated from being deposed).

*3d Circuit Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990)* (court permitted deposition of party's attorneys regarding their involvement in meetings that took place prior to filing of lawsuit).

*7th Circuit See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 379 (S.D. Ind. 1994)* (federal rules do not specifically address depositions of party's counsel).

*8th Circuit Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (but deposition of opposing counsel should occur only in limited circumstances).

*9th Circuit American Cas. Co. of Reading, Pa. v. Krieger, 160 F.R.D. 582, 585 (S.D. Cal. 1995)* (permitting depositions of opposing counsel, subject to protective order limiting duration and scope of questioning).

*10th Circuit Ed Tobergte Assoc. Co. v. Russell Brands, LLC, 259 F.R.D. 550, 554 (D. Kan. 2009)* (although federal rules of civil procedure do not prohibit deposition of attorney for a party, courts in Tenth Circuit recognize potential for abuse, and permit such depositions only in limited circumstances; *United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 247 (D. Kan. 1995)* (Rules of Civil Procedure do not exempt attorneys from being source of discoverable facts).

*11th Circuit West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990)*

(granting protective order prohibiting deposition of county counsel).

(n42)Footnote 28.  **Discovery of work product.**  *United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 248 (D. Kan. 1995)* (when work product is sought, party seeking discovery must establish substantial need and inability to obtain substantial equivalent by other means); *see Fed. R. Civ. P. 26(b)(3)* (discovery of work product); *see also § 26.70.*

(n43)Footnote 29.  **Attorney status alone is insufficient.**  *Frazier v. Southeastern Pa. Transp. Auth., 161 F.R.D. 309, 313 (E.D. Pa. 1995)* (protective order denied).

*2d Circuit  In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003)* (fact that proposed deponent is a lawyer does not automatically insulate him or her from deposition nor automatically require prior resort to alternative discovery devices).

*3d Circuit  Frazier v. Southeastern Pa. Transp. Auth., 161 F.R.D. 309, 313 (E.D. Pa. 1995)* (protective order denied).

*10th Circuit  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 248 (D. Kan. 1995)* (attorneys are not exempt from discovery by virtue of their license to practice law or employment by party in litigation).

(n44)Footnote 30.  **Deposition appropriate if counsel participated in events.**  *United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 249 (D. Kan. 1995)* (counsel was directly involved in events preceding lawsuit and relevant to issues in dispute, and but for his status as attorney, would be considered appropriate witness).

*3d Circuit  See  Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990)* (deposition may be both necessary and appropriate if attorney is fact witness such as "actor or viewer," rather than one who was not a party to any underlying transactions giving rise to lawsuit).

*5th Circuit  See  Rainbow Investors Group, Inc. v. Fuji Trucolor Mo., Inc., 168 F.R.D. 34, 36 (W.D. La. 1996)* (attorney was acting as negotiator in sale of assets to competitor of defendants rather than as attorney in litigation and knowledge possessed in this regard is discoverable).

*8th Circuit  See  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (8th Cir. 2002)* (strict rule against deposing opposing counsel does not apply to attorneys who represented client in completed case and then represents same client in pending case in which information known only by that attorney regarding prior concluded case is crucial in pending case).

*10th Circuit  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 164 F.R.D. 245, 249 (D. Kan. 1995)* (counsel was directly involved in events preceding lawsuit and relevant to issues in dispute, and but for his status as attorney, would be considered appropriate witness).

(n45)Footnote 31.  **Disruption of litigation and attorney-client relationship.**  *Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (opposing counsel's deposition should occur only in limited circumstances).

*7th Circuit  Harriston v. Chicago Tribune Co., 134 F.R.D. 232, 233 (N.D. Ill. 1990)* (plaintiff not allowed to depose defendant's counsel (quoting *Shelton*)).

*8th Circuit  Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (opposing counsel's deposition should occur only in limited circumstances).

*9th Circuit  See  Caterpillar, Inc. v. Friedmann, 164 F.R.D. 76, 78 (D. Or. 1995)* (courts "look with disfavor on attempts to depose opposing counsel").

*10th Circuit  Boughton v. Cotter Corp., 65 F.3d 823, 829 (10th Cir. 1995)* (district court did not abuse discretion by entering protective order prohibiting plaintiff from deposing defendant's counsel (quoting and following *Shelton*)).

*11th Circuit  West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990)* (protective order prohibiting deposition of county counsel granted).

*D.C. Circuit  Guantanamera Cigar Co. v. Corporacion Habanos, S.A., 263 F.R.D. 1, 9 (D.D.C. 2009)* (these concerns apply even when lawyer to be deposed is not attorney of record, but is heavily involved in case handled by his or her law firm).

(n46)Footnote 32.  **Limited circumstances.**  *American Cas. Co. of Reading, Pa. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995)* (opinion contains analysis of several cases).

*7th Circuit  See  Harriston v. Chicago Tribune Co., 134 F.R.D. 232, 233 (N.D. Ill. 1990)* (discharged employee was not entitled to depose newspaper's counsel in racial discrimination action against newspaper).

*8th Circuit  See  Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (practice of forcing counsel to testify "has long been discouraged").

*9th Circuit  American Cas. Co. of Reading, Pa. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995)* (opinion contains analysis of several cases).

*D.C. Circuit  See  Jennings v. Family Mgmt., 201 F.R.D. 272, 279 (D.D.C. 2001)* (counsel's dual role as plaintiff's attorney and guardian made counsel "best and perhaps only source" for information regarding plaintiff's state of mind, ability to manage her daily life and financial affairs, and ability to enter into contracts).

(n47)Footnote 33.  **Burden shifts to party seeking deposition.**

*4th Circuit  Static Control Components, Inc. v. Darkprint Imaging, Inc., 201 F.R.D. 431, 434 (M.D.N.C. 2001)* (request to depose party's litigation counsel, by itself, constitutes good cause for obtaining protective order, and burden shifts to party seeking deposition).

*8th Circuit  Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (formulating test for meeting burden).

*9th Circuit  American Cas. Co. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995)* (case of first impression in Ninth Circuit).

*10th Circuit  Ed Tobergte Assocs. Co. v. Russell Brands, LLC, 259 F.R.D. 550, 554 (D. Kan. 2009)*

(party seeking to take deposition of opposing counsel bears burden of establishing that three criteria are satisfied).

*11th Circuit  West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990)* (protective order prohibiting deposition of county counsel granted).

*D.C. Circuit  Guantanamera Cigar Co. v. Corporacion Habanos, S.A., 263 F.R.D. 1, 8 (D.D.C. 2009)* ("when seeking to depose opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity").

(n48)Footnote 34. **Stricter standard applies even to attorney witness.** *American Cas. Co. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995)* (opinion contains survey of law).

*2d Circuit See  Bogan v. Northwestern Mut. Life Ins. Co., 152 F.R.D. 9, 12 (S.D.N.Y. 1993)* (taking of deposition permitted only when clear need is shown, even though attorney took part in relevant prelitigation events).

*9th Circuit  American Cas. Co. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995)* (opinion contains survey of law).

*10th Circuit See  Hay & Forage Indus. v. Ford New Holland, Inc., 132 F.R.D. 687, 689 (D. Kan. 1990)* (court required showing of need, propriety, and exhaustion of alternatives).

*11th Circuit See  West Penninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990)* (granting defendants' motion for protective order prohibiting depositions of county attorneys).

(n49)Footnote 35. **Circumstances under which opposing counsel may be deposed.** *Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (leading case).

*1st Circuit  Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208, 210 (D.P.R. 1998)* (court applied this three-part test in granting protective order precluding deposition of plaintiff's counsel).

*4th Circuit See  Static Control Components, Inc. v. Darkprint Imaging, Inc., 201 F.R.D. 431, 434 (M.D.N.C. 2001)* (party seeking deposition must demonstrate: (1) there are no persons other than attorney who can provide information; (2) other methods of discovery would not be as effective; (3) inquiry will not invade attorney-client or work product privilege; and (4) information is of such relevance that need for it outweighs disadvantages of deposing party's litigation attorney).

*7th Circuit  Harriston v. Chicago Tribune Co., 134 F.R.D. 232, 233 (N.D. Ill. 1990)* (plaintiff failed to show relevancy).

*8th Circuit  Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (leading case).

*9th Circuit  Caterpillar, Inc. v. Friedmann, 164 F.R.D. 76, 78 (D. Or. 1995)* (party seeking deposition failed to establish all three grounds); *American Cas. Co. of Reading Pa. v. Krieger, 160 F.R.D. 582, 589 (N.D. Cal. 1995)* (first case to adopt *Shelton* criteria in Ninth Circuit).

*10th Circuit  Boughton v. Cotter Corp., 65 F.3d 823, 829 (10th Cir. 1995)* (approving criteria set forth

in *Shelton v. American Motors,* but holding that court has discretion to issue protective order when any one or more of the three criteria are met).

(n50)Footnote 35.1.  **Shelton case.**  *Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)* (leading case).

(n51)Footnote 35.2.  **Deposition regarding prior cases.**  *Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730-731 (8th Cir. 2002)* (even if *Shelton* does not apply, party seeking deposition of opposing counsel still must demonstrate waiver of attorney-client and work product privileges if information sought would otherwise be protected by these privileges).

(n52)Footnote 35.3.  **Application of *Shelton*** limited.  *United States v. Phillip Morris, Inc., 209 F.R.D. 13, 16-17 (D.D.C. 2002) , stay granted,   314 F.3d 612 (D.C. Cir. 2003)* (government was entitled to depose in-house counsel of defendant tobacco companies who had held high-level executive positions with responsibilities in areas of research and development and marketing).

(n53)Footnote 36.  **Minority view.**

*2d Circuit See  In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003)* (Second Circuit adopted "flexible" approach to lawyer depositions, in which judicial officer supervising discovery takes into consideration all relevant facts and circumstances to determine whether proposed deposition would entail an inappropriate burden or hardship).

*3d Circuit See  Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990)* (defendants sought depositions of plaintiffs' lead counsel and general counsel).

*7th Circuit See  Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 381 (S.D. Ind. 1994)* (no reason to deviate from framework provided by Rule 26(c)).

*9th Circuit See  Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007)* (court noted that Ninth Circuit has not adopted majority approach articulated in  *Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)* , and found Second Circuit's reasoning in  *In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d Cir. 2003)* "to be more persuasive").

(n54)Footnote 37.  **Burden of demonstrating good cause.**

*3d Circuit See  Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990)* (court permitted deposition of party's attorneys regarding their involvement in meetings that took place prior to filing of lawsuit).

*7th Circuit See  Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 381 (S.D. Ind. 1994)* (no reason to deviate from framework provided by Fed. R. Civ. P. 26(c)).

(n55)Footnote 38.  **Party must object to particular questions.**

*3d Circuit See  Premium Payment Plan v. Shannon Cab Co., 268 F.R.D. 203, 205 (E.D. Pa. 2010)* (when, as in this case, questions arise as to whether attorney was giving legal or business advice, "better course is to allow the deposition in order to establish the character of the involvement and whether

invocation of the attorney-client privilege is supported").

*7th Circuit See, e.g.,* Qad, Inc. v. ALN Assoc., Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) (denying motion for protective order prohibiting deposition of plaintiff's lead counsel).

(n56)Footnote 39. **Balancing test.** *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352-353 (D.N.J. 1990)* (court denied protective order, finding that importance of information possessed by attorney outweighed potential negative impact on attorney-client relationship and adversary process).

(n57)Footnote 40. *Fed. R. Civ. P. 26(c)(1)(B).*

(n58)Footnote 41. **Restriction on length.**

*3d Circuit See, e.g.,* Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 356 (D.N.J. 1990) (deposition limited to six hours on one day, including normal colloquy among counsel).

*5th Circuit See, e.g.,* Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 95 (N.D. Tex. 1994) (deposition of minor victim of child abuse limited to two hours of direct examination, cross-examination not to exceed 30 minutes, and redirect examination for a period not to exceed length of cross-examination).

*8th Circuit See, e.g.,* Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 145 F.R.D. 92, 98 (S.D. Iowa 1992) (deposition limited to eight hours on one day, including colloquy among counsel).

(n59)Footnote 41.1. **Timing.** *See Williams ex rel Williams v. Greenlee, 210 F.R.D. 577, 579 (N.D. Tex. 2002)* (in action alleging that incarcerated minor was sexually assaulted by detention center officer, protective order issued to delay deposition until after minor's release because questioning him in same environment in which incident occurred could be traumatic and embarrassing).

(n60)Footnote 42. **Sequence of discovery.** *Roberts v. Americable Int'l, Inc., 883 F. Supp. 499, 505 (E.D. Cal. 1995)* (taking of deposition prior to deponent's opportunity to review tapes would be annoying and harassing).

(n61)Footnote 43. **Discovery of prior statements delayed.**

*1st Circuit* Manske v. UPS Cartage Services, Inc., 789 S. Supp. 2d 213, 217 (D. Me. 2011) ("Preserving the impeachment value of prior statements is good cause for a limited protective order").

*2d Circuit See* Hendrick v. Avis Rent A Car Sys., Inc., 916 F. Supp. 256, 260 (W.D.N.Y. 1996) (immediate disclosure would have potentially deprived plaintiff from obtaining un-refreshed recollection of depositions' subject matter).

(n62)Footnote 44. *Fed. R. Civ. P. 26(d).*

(n63)Footnote 44.1. **Discovery of substantive evidence should not be delayed.** *Pro Billiards Tour Ass'n v. R.J. Reynolds Tobacco Co., 187 F.R.D. 229, 232 (M.D.N.C. 1999)* (when party has obtained recording of another party but wants to delay production until after that other party's deposition, request to delay production should be denied when recording constitutes mainly substantive evidence).

(n64)Footnote 44.2. **Tape-recorded statements treated like other written documents.** *See Jerolimo v.*

*Physicians for Women, P.C., 238 F.R.D. 354, 356-357 (D. Conn. 2006)* (plaintiff's recording of defendants without their knowledge provided "heightened justification" for producing tape recordings in advance of depositions).

(n65)Footnote 45. *See Fed. R. Civ. P. 26(f)(3)(B).*

(n66)Footnote 46. *See Fed. R. Civ. P. 16(b)(3)(A).*

(n67)Footnote 46.1. **Court's broad discretion.** *Chris-Craft Indus. Prods., Inc. v. Kuraray Co., Ltd., 184 F.R.D. 605, 607 (N.D. Ill. 1999)* (granting protective order that employees of corporate defendant be deposed at corporate headquarters in Japan).

(n68)Footnote 47. **Defendant's residence.** *Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y. 1989)* (court considered other factors in designating place of deposition because plaintiff had no choice as to forum and defendants resided in various countries).

(n69)Footnote 48. **Principal place of business.** *Operative Plasterers' & Cement Masons' Int'l Assoc. v. Benjamin, 144 F.R.D. 87, 91 (N.D. Ind. 1992)* (union action against employer in which protective orders were both granted and denied (citing **Moore's**)).

(n70)Footnote 48.1. **Presumption in favor of protective order.** *Chris-Craft Indus. Prods., Inc. v. Kuraray Co., Ltd., 184 F.R.D. 605, 607 (N.D. Ill. 1999)* (corporation's objection to deposition being taken at place other than its principal place of business should be sustained absent unusual circumstances that justify inconvenience to corporation).

(n71)Footnote 49. **Plaintiff deposed where action is pending.**

*2d Circuit  Abdullah v. Sheridan Square Press, Inc., 154 F.R.D. 591, 592 (S.D.N.Y. 1994)* (plaintiff, who was seeking political asylum in England and could not leave while his application was pending, sought a protective order that his deposition take place in England).

*7th Circuit  Operative Plasterers' & Cement Masons' Int'l Assoc. v. Benjamin, 144 F.R.D. 87, 91 (N.D. Ind. 1992)* (plaintiff should be prepared to answer notice of deposition in district where action is filed).

(n72)Footnote 50. **When plaintiff had no choice of forum.**

*2d Circuit  Abdullah v. Sheridan Square Press, Inc., 154 F.R.D. 591, 593 (S.D.N.Y. 1994)* (court ordered plaintiff's deposition to be taken in England since plaintiff had no genuine choice of forum because defendants were locate in United States and plaintiff would lose his chance at asylum if he left England for deposition in the United States).

*11th Circuit See  Hernandez v. Hendrix Produce, Inc., 297 F.R.D. 538, 539-540 (S.D. Ga. 2014)* (although defendants are typically entitled to depose plaintiff in forum plaintiff has chosen, plaintiffs had no real choice in this case, and because plaintiffs were poor laborers residing in rural Mexico, with most lacking necessary immigration status to return to the United States, court suggested that defendants use Skype or have their attorney travel to Mexico for live depositions).

(n73)Footnote 51. **Written questions.** *See Fed. R. Civ. P. 31; DBMS Consultants Ltd. v. Computer Assoc. Int'l, 131 F.R.D. 367, 370 (D. Mass. 1990)* (court ordered deposition on written questions for witness located in Australia, finding that it would be unjust and inappropriate to permit oral deposition with attendant time, travel, and money constraints).

(n74)Footnote 52.  **Payment of travel expenses.** *See Abdullah v. Sheridan Square Press, Inc., 154 F.R.D. 591, 593 (S.D.N.Y. 1994)* (court ordered deposition of plaintiff to be taken in England and refused to advance costs to defendant, but ruled that if defendants ultimately prevailed, their reasonable costs, including travel expenses and attorney's fees for one attorney would be awarded as additional costs).

(n75)Footnote 53.  **Discovery stayed pending summary judgment motion.**

*4th Circuit See Tilley v. United States, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003)* (protective order may be granted to stay discovery pending determination of dispositive motion, but court should not stay discovery needed to gather facts in defense of motion).

*5th Circuit See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404, 436 (5th Cir. 1990)* (trial court properly granted stay of discovery pending outcome of summary judgment motion).

*10th Circuit See Nolan v. United States Dept. of Justice, 973 F.2d 843, 849 (10th Cir. 1992)* (district court properly deferred discovery pending disposition of summary judgment motion to determine whether records sought were exempted by Privacy Act).

*D.C. Circuit Sai v. Dep't of Homeland Sec., 99 F. Supp. 3d 50, 57 (D.D.C. 2015)* (court stayed Rule 26(f) conference and initiation of discovery pending resolution of defendants' motion to dismiss and plaintiff's motion for summary judgment).

(n76)Footnote 53.01.  **Stay pending motion to dismiss.** *Hollins v. United States Tennis Ass'n, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006)* ("interests of justice militate in favor of denying" stay).

(n77)Footnote 53.02.  **Mere filing of motion insufficient.** *Hollins v. United States Tennis Ass'n, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006)* (mere filing of motion to dismiss does not constitute "good cause" for issuance of stay).

(n78)Footnote 53.03.  **Motion must be well-founded.** *Johnson v. New York Univ. Sch. of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002)* (district court granted stay of discovery pending outcome of defendant's motion to dismiss).

*2d Circuit Johnson v. New York Univ. Sch. of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002)* (district court granted stay of discovery pending outcome of defendant's motion to dismiss).

*11th Circuit McCabe v. Foley, 233 F.R.D. 683, 685 (M.D. Fla. 2006)* (request to stay discovery pending resolution of motion is rarely granted unless resolution will dispose of entire case, and court must take "preliminary peek" to see if motion appears to be clearly meritorious and truly case dispositive).

(n79)Footnote 53.04.  **No stay if discovery is needed to defend motion.** *Baron Financial Corp. v. Natanzon, 240 F.R.D. 200, 202-203 (D. Md. 2006)* (court generally should not stay discovery if discovery is needed in defense of dispositive motion).

(n80)Footnote 54.  **Factors to be considered in determining whether to stay discovery.**

*2d Circuit See United States v. County of Nassau, 188 F.R.D. 187, 188 (E.D.N.Y. 1999)* (magistrate judge found stay was warranted where (1) issue raised in motion is strictly one of law and does not involve issues relating to sufficiency of allegations, (2) motion, if successful, is dispositive of entire action, (3) issue is one that in all likelihood cannot be cured by amended pleading, and (4) there is no

showing of any prejudice if court were to stay discovery).

*9th Circuit  Skellerup Indus. Ltd. v. City of Los Angeles, 163 F.R.D. 598, 601 (C.D. Cal. 1995)* (defendant sought protective order to stay all discovery pending outcome of its motion to dismiss).

*10th Circuit See  Hernandez v. Asset Acceptance, LLC, 970 F. Supp. 2d 1194, 1205 (D. Colo. 2013)* (courts in Tenth Circuit consider: (1) plaintiff's interests in proceedings expeditiously and potential prejudice to plaintiff of delay; (2) burden on defendants; (3) convenience to the court; (4) interests of persons not parties to the action; and (5) public interest).

*D.C. Circuit See  Sai v. Dep't of Homeland Sec., 99 F. Supp. 3d 50, 58 (D.D.C. 2015)* ("each case should be considered based on its unique facts and context").

(n81)Footnote 54.1.  **Stay pending summary judgment motion.**

*9th Circuit  Pacific Lumber Co. v. Nat'l Union Fire Ins. Co., 220 F.R.D. 349, 351-352 (N.D. Cal. 2003)* (both prongs of test must be met before court may issue protective order staying discovery).

*D.C. Circuit See  Sai v. Dep't of Homeland Sec., 99 F. Supp. 3d 50, 57 (D.D.C. 2015)* (although there is good reason not to enter stay when discovery is necessary for party *opposing* summary judgment, party should not be able to concurrently *move* for summary judgment and ask for discovery regarding issues addressed in motion).

(n82)Footnote 55.  **Stay pending determination of immunity.** *See  Williamson v. United States Dept. of Agriculture, 815 F.2d 368, 382 (5th Cir. 1987)* (district court properly stayed discovery pending resolution of immunity issues in tort action against government).

(n83)Footnote 56.  **Stay pending criminal proceedings.** *See  Board of Governors of Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 639 (S.D.N.Y. 1991)* (district attorney sought stay of discovery in civil matter to protect confidentiality of grand jury proceedings and proper timing of disclosure of evidence in resulting state criminal action).

(n84)Footnote 56.1.  **Factors for stay for parallel criminal proceeding.**

*2d Circuit  Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8, 11 (D. Conn. 2002)* (based on these factors, district court decided to stay discovery pending outcome of criminal proceeding).

*9th Circuit See  ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014)* (courts in Ninth Circuit consider (1) extent to which defendant's *Fifth Amendment* rights are implicated; (2) plaintiff's interests in proceeding expeditiously and potential prejudice resulting from delay; (3) judicial efficiency; (4) interests of nonparties; and (5) public's interests in pending civil and criminal litigation).

(n85)Footnote 56.2.  **Stay to protect defendant's *Fifth Amendment* rights.** *See  ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014)* (stay is extraordinary remedy and is not warranted when defendant's *Fifth Amendment* rights can be protected through less drastic means, such as asserting privilege on question-by-question basis).

(n86)Footnote 56.3.  **See** *Fed. R. Civ. P. 26(c)(1)(B).*

(n87)Footnote 56.4.  *See Fed. R. Civ. P. 26(c)* advisory committee note of 2015 (reproduced at § 26App.14[2]).

(n88)Footnote 57.  **Depositions by written questions.** *See, e.g.,  Gatoil, Inc. v. Forest Hill State Bank, 104 F.R.D. 580, 582 (D. Md. 1985)* (deposition under *Fed. R. Civ. P. 31*, rather than oral deposition, ordered to save money and time); *see also Fed. R. Civ. P. 31.*

(n89)Footnote 58.  **Less expense.**

*1st Circuit See  DBMS Consultants Ltd. v. Computer Assoc. Int'l, Inc., 131 F.R.D. 367, 370 (D. Mass. 1990)* (foreign deposition ordered taken pursuant to *Fed. R. Civ. P. 31* when costs associated with full-blown oral deposition were inappropriate).

*4th Circuit  Gatoil, Inc. v. Forest Hill State Bank, 104 F.R.D. 580, 582 (D. Md. 1985)* (deposition under *Fed. R. Civ. P. 31*, rather than oral deposition, ordered to save money and time).

(n90)Footnote 59.  **Avoidance of cost of oral deposition in foreign country.** *See  DBMS Consultants, Ltd. v. Computer Assoc. Int'l, Inc., 131 F.R.D. 367, 370 (D. Mass. 1990)* (in breach of contract action, court granted letters rogatory to take deposition on written question of former employee of defendant who had moved to Australia, citing time, travel, and money constraints of conducting oral deposition).

(n91)Footnote 60.  ***Fifth Amendment* objections likely.** *See  Gatoil, Inc. v. Forest Hill State Bank, 104 F.R.D. 580, 582 (D. Md. 1985)* (after deposition of nonparty witness in Houston was continued, witness was named as defendant in civil RICO action, and counsel stated that it would be pointless to resume deposition because witness would refuse to answer questions on *Fifth Amendment* grounds, so court ordered that deposition be continued on written questions and that deponent specify which questions were objectionable).

(n92)Footnote 61.  **Deposition of opposing counsel.**

*3d Circuit See  In re Arthur Treacher's Franchisee Litig., 92 F.R.D. 429, 439 (E.D. Pa. 1981)* (district court refused to issue protective order preventing deposition of defendant's attorney, but, in view of potential privilege problems, ordered that deposition be taken on written questions).

*4th Circuit Cf.  LeBlanc v. Broyhill, 123 F.R.D. 527, 532 (W.D.N.C. 1988)* (district court granted plaintiff's motion to compel oral deposition of defendant's attorney in fraud action, rejecting defendant's alternative suggestion of *Fed. R. Civ. P. 31*).

(n93)Footnote 62.  **Protection of nonparty witnesses.**

*2d Circuit See  Borzillieri v. American Nat'l Red Cross, 139 F.R.D. 284, 289 (W.D.N.Y. 1991)* (in action on behalf of decedent who allegedly contracted AIDS from blood transfusion, court permitted discovery from blood donor concerning defendant's screening procedures, but ordered that discovery be conducted by deposition on written question to protect donor's identity).

*5th Circuit See  Boutte v. Blood Systems, Inc., 127 F.R.D. 122, 126 (W.D. La. 1989)* (court found that deposition by written questions would adequately protect donor's identity and allow plaintiff to obtain necessary information).

(n94)Footnote 63.  **Written questions adequate in narrow circumstances.** *See  Mill-Run Tours, Inc. v.*

6-26 Moore's Federal Practice - Civil § 26.105

*Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989)* (court found written questions to be inadequate).

(n95)Footnote 64. **Rule 31 depositions may be inadequate.** *See* United States v. Local Union 1804-1, *Int'l Longshoremen's Union, 753 F. Supp. 1158, 1163-1164 (S.D.N.Y. 1990)* (depositions of union members who were allegedly victims of extortion, and whose identities were known only to FBI agent, could not be taken on written questions because defendants needed to cross-examine witnesses to assess credibility).

(n96)Footnote 65. **Mill-Run case.** *Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989)* .

(n97)Footnote 66. **Written questions should not replace oral depositions.** *Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 549 (S.D.N.Y. 1989)* (court found written questions to be inadequate).

(n98)Footnote 67. **Limitation on scope of discovery.** *Fed. R. Civ. P. 26(c)(1)(D)*; *Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (in civil rights action, court precluded inquiry into subsequent investigations of officers accused of arresting plaintiff without probable cause).

*2d Circuit See  Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993)* (in action brought on guaranty, court limited discovery to documents containing information relating to defendant's general business affairs, and specified company and property, and excluded inquiries regarding other litigation and business and personal interests).

*5th Circuit See, e.g.,  Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 95 (N.D. Tex. 1994)* (in case alleging sexual abuse of minor, court restricted subject matter of victim's deposition to information directly related to liability and damages, and ordered counsel to refrain from tactics calculated to confuse, annoy, harass, or imply doubt as to victim's veracity).

*7th Circuit But see  Builders Ass'n of Greater Chicago v. Chicago, 170 F.R.D. 435, 437 (N.D.Ill. 1996)* (court declined to limit scope of discovery to issue of standing pending outcome of motion to dismiss for lack of standing because limitation was likely to slow pace of litigation).

*8th Circuit  Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (in civil rights action, court precluded inquiry into subsequent investigations of officers accused of arresting plaintiff without probable cause).

*10th Circuit See* Bennett by and through  *Bennett v. Fieser, 152 F.R.D. 641, 644 (D. Kan. 1994)* (ordering that hospital provide emergency room records of burn patient with name and identifying information redacted, and that parties and counsel make no effort to learn identity of, or contact, patient).

*11th Circuit See  Johnson v. Mortham, 164 F.R.D. 571, 572 (N.D. Fla. 1996)* (protective order may be used to limit scope of discovery to just those issues that are left to be decided in case).

(n99)Footnote 68. **Good cause for limiting scope of discovery.** *Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (protective order issued in civil rights action).

(n100)Footnote 69. **Irrelevant matters.**

*3d Circuit See  Hall v. Harleysville Ins. Co., 164 F.R.D. 172, 173 (E.D. Pa. 1995)* (although contents of consumer credit reports were relevant to action, names and other identifying information were not and were subject to redaction).

*8th Circuit  Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (protective order issued in civil case (citing **Moore's**)).

*10th Circuit See  Caldwell v. Life Ins. Co. of N. Am., 165 F.R.D. 633, 637 (D. Kan. 1996)* (in ERISA case only record or completeness of record before plan administrator was relevant to district court's review).

*11th Circuit See  Liese v. Indian River County Hosp. Dist., 701 F.3d 334, 355 (11th Cir. 2012)* (court has authority to confine discovery to claims and defenses asserted in pleadings, and parties have no entitlement to discovery to develop new claims or defenses not already identified in pleadings).

(n101)Footnote 70. **Barring discovery of noncognizable defenses.** *Naval Orange Admin. Comm. v. Exeter Orange Co., 722 F.2d 449, 454 (9th Cir. 1983)* (not error for trial court to grant protective order barring defendants from discovering matters related to affirmative defenses).

(n102)Footnote 71. **Irrelevancy satisfies good cause requirement.** *Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994)* (granting protective order on ground that actions taken by arresting officers in subsequent investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of his civil rights).

(n103)Footnote 72. *Fed. R. Civ. P. 26(c)(1)(E).* Note that *Rule 615 of the Federal Rules of Evidence*, which allows a party to request that witnesses be excluded from hearing testimony, does not apply to discovery. *See Fed. R. Evid. 615; Fed. R. Civ. P. 30(c)* advisory committee's note (1993). For discussion of Rule 615, see  Weinstein's Federal Evidence, Ch. 615, *Excluding Witnesses*  (Matthew Bender 2d ed.).

(n104)Footnote 73. **Court's power to designate attendees.** *See, e.g.,  James v. Roberts, 163 F.R.D. 260, 261 (S.D. Ohio 1995)* (prison sought protective order prohibiting prisoner's attendance at depositions); *see also  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32-33, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984)* ("pretrial depositions and interrogatories are not public components of a civil trial").

(n105)Footnote 73.1. **Who may attend.** *See  Estate of Bell v. Board of Educ., 225 F.R.D. 186, 196 (S.D. W. Va. 2004)* (on basis of this general rule, court permitted attorneys for deponents to read deposition of another witness prior to deponents' depositions).

(n106)Footnote 73.2. **General reasons for exclusion.** *Estate of Bell v. Board of Educ., 225 F.R.D. 186, 196 (S.D. W. Va. 2004)* (specific showing of harm required).

*4th Circuit  Estate of Bell v. Board of Educ., 225 F.R.D. 186, 196 (S.D. W. Va. 2004)* (specific showing of harm required).

*D.C. Circuit See  Tolbert-Smith v. Bodman, 253 F.R.D. 2, 4 (D.D.C. 2008)* (plaintiff's former supervisors were not permitted to attend plaintiff's deposition in employment discrimination action after plaintiff's psychiatrist testified that their presence would cause plaintiff severe depressive stress possibly resulting in suicide, even though independent examiner testified that plaintiff did not have rational reason to fear supervisors).

(n107)Footnote 74. **Parties have more substantial interest than nonparties.** *Hines v. Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995)* (refusing to grant protective order excluding plaintiff who was incarcerated from attending depositions).

(n108)Footnote 75.  **Extraordinary circumstances required.**

*6th Circuit  Hines v. Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995)* (court refused to prohibit attendance of prisoner at depositions of prison officials in prisoner's civil rights action against prison).

*11th Circuit  BCI Communications Sys., Inc. v. Bell Atlanticom Sys., Inc., 112 F.R.D. 154, 157 (N.D. Ala. 1986)* (there must be proper showing to exclude party from deposition and this should be rare event); *Skidmore v. Northwest Eng'g Co., 90 F.R.D. 75, 76-77 (S.D. Fla. 1981)* (court refused to exclude plaintiff's expert from depositions of defendant's employees).

(n109)Footnote 76.  **Constitutional right to be present.** *See  Hines v. Wilkinson, 163 F.R.D. 262, 265-266 (S.D. Ohio 1995)* (involuntary exclusion of party is justified only under particularized circumstances that comport with due process).

(n110)Footnote 77.  **Anxious or fearful deponent.** *See, e.g.,  Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 95 (N.D. Tex. 1994)* (in sexual abuse action by minor child, court ordered that only child's mother, attorney, and therapist be present in room during victim's deposition, that defendants not be present, and that defense counsel conduct questioning from another room over closed circuit television).

(n111)Footnote 77.1.  **Exclusion of party's counsel is not permitted.** *Schorr v. Briarwood Estates Ltd. Partnership, 178 F.R.D. 488, 492-493 (N.D. Ohio 1998)* (plaintiff's alleged fragile medical condition was insufficient ground to preclude defendant's counsel from conducting deposition).

(n112)Footnote 78.  **Privacy interests.** *Gottlieb v. County of Orange, 151 F.R.D. 258, 260 (S.D.N.Y. 1993)* (in Section 1983 action based on suspicion of child abuse at medical facility, court imposed attendance restrictions at depositions by nurse witnesses).

(n113)Footnote 79.  **Attendance of prisoner.** *See, e.g.,  Hines v. Wilkinson, 163 F.R.D. 262, 265-266 (S.D. Ohio 1995)* (prison sought protective order precluding attendance of prisoner at depositions of prison officials in prisoner's civil rights action against prison).

(n114)Footnote 80.  **Court's determination.** *James v. Roberts, 163 F.R.D. 260, 262 (S.D. Ohio 1995)* (court denied order prohibiting prisoner's attendance at depositions because defendants failed to show prisoner posed security risk).

(n115)Footnote 80.1.  **Fact witnesses.**

*4th Circuit  Jones v. Circle K Stores, Inc., 185 F.R.D. 223, 224 (M.D.N.C. 1999)* (court refused to grant protective order excluding two fact witnesses from each other's deposition because plaintiff failed to demonstrate any specific harm and merely relied on "boilerplate good cause facts" that witnesses would likely be influenced by each other's testimony).

*5th Circuit See  In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998)* (plaintiff's conclusory assertions that fact witnesses, most of whom were employees of defendant, might feel sense of camaraderie or pressure from defendant employer that might taint their testimony did not constitute "good cause" for issuance of protective order prohibiting all fact witnesses from attending depositions of other fact witnesses).

*7th Circuit See  Tuszkiewicz v. Allen Bradley Co., Inc., 170 F.R.D. 15, 16-17 (E.D. Wis. 1996)* (simple assertion that allowing fact witness to listen to testimony of another witness would prejudice plaintiff

was insufficient cause for issuance of protective order prohibiting witnesses from attending each other's depositions).

   *10th Circuit See  Lee v. Denver Sheriff's Dep't, 181 F.R.D. 651, 653 (D. Colo. 1998)* (denying plaintiff's motion to exclude defendants from attending each other's depositions in case in which prisoner alleged he was beaten by defendant employees of sheriff's department, because there was no evidence that defendants would alter their testimony after hearing co-defendants' depositions).

   (n116)Footnote 81.  *Fed. R. Civ. P. 30(c)* advisory committee's note (1993).

   (n117)Footnote 81.1.  **Excluded party's participation outside deposition room.** *See, e.g.,  Tolbert-Smith v. Bodman, 253 F.R.D. 2, 4 (D.D.C. 2008)* (although defendant's representatives were excluded from deposition room because of plaintiff's likely severe stress reaction, defendant's counsel was permitted to take 10-minute recess after every hour of deposition to consult with these representatives, as long as there was no physical contact or other interaction between plaintiff and representatives).

   (n118)Footnote 82.  **Any discovery materials may be sealed.** *Fed. R. Civ. P. 26(c)(1)(F).*

   *3d Circuit See  Century Indem.Co. v. Certain Underwriters at Lloyd's London, 592 F. Supp. 2d 825, 828 (E.D. Pa. 2009)* (court granted Rule 26(c)(1)(F) motion to seal arbitration award pursuant to terms of confidentiality agreement).

   *4th Circuit See, e.g.,  Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 251 (4th Cir. 1988)* (documents produced during discovery placed under seal).

   *9th Circuit See, e.g.,  Empire Blue Cross & Blue Shield v. Janet Greeson's a Place For Us, Inc., 62 F.3d 1217, 1218 (9th Cir. 1995)* (as part of settlement, court issued protective order sealing all discovery in case).

   (n119)Footnote 83.  **Confidential business information.** *See, e.g.,  Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, 62 F.3d 1217, 1218 (9th Cir. 1995)* (sealing all discovery in case).

   (n120)Footnote 84.  **Privacy interest of abuse victims.** *See, e.g.,  Gottlieb v. County of Orange, 151 F.R.D. 258, 260 (S.D.N.Y. 1993)* (court permitted nursing personnel having information relevant to child abuse allegations to be deposed, but ordered deposition transcripts sealed and not opened except pursuant to further court order).

   (n121)Footnote 84.1.  **Identity of confidential informants.** *See  Goff v. Graves, 362 F.3d 543, 550 (8th Cir. 2004)* (preservation of institutional security and protection of confidential informants were compelling interests supporting issuance of protective order to seal portions of depositions from confidential prison informants).

   (n122)Footnote 85.  *Cf. Fed. R. Civ. P. 26(c)* (requiring showing of good cause for issuance of protective order).

   (n123)Footnote 86.  **Parties cannot seal records.** *See  Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir. 1996)* (district court cannot abdicate responsibility for supervising discovery process).

   (n124)Footnote 87.  **Public right of access to discovery.**

   *1st Circuit See  Nault's Auto. Sales v. American Honda Motor Co., 148 F.R.D. 25, 43-46 (D.N.H. 1993)* (quashing parties' stipulated protective order sealing pleadings and discovery because court did not make good cause determination for issuance of order).

*9th Circuit See  Hawley v. Hall, 131 F.R.D. 578, 581-585 (D. Nev. 1990)* (defendants failed to sustain burden of showing good cause for protective order to seal depositions and other discovery).

(n125)Footnote 87.1.  *See Fed. R. Civ. P. 5(d)(1).*

(n126)Footnote 87.1.1.  *See* Reagan, *Sealing Court Records and Proceedings: A Pocket Guide*, p. 11, "Discovery" (Fed. Judicial Ctr. 2010), *reproduced verbatim at § 26App.102* ("Information exchanged by the parties during discovery is not subject to a *First Amendment* or common-law public right of access").

(n127)Footnote 87.2.  **Public right of access to judicial documents.**

*2d Circuit  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006)* (presumption of access is based on need for courts to have measure of accountability and for public to have confidence in administration of justice).

*3d Circuit See  Century Indem.Co. v. Certain Underwriters at Lloyd's London, 592 F. Supp. 2d 825, 827 (E.D. Pa. 2009)* (strong common law presumption of public access to judicial documents must be balanced against need for secrecy; party seeking to have record sealed must show that material is the kind of information courts protect and disclosure will result in clearly defined and serious injury).

*9th Circuit  Ctr. for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1096 (9th Cir. 2016)* (Ninth Circuit applies strong presumption in favor of public access to court records).

*11th Circuit  Emess Capital, LLC v. Rothstein, 841 F. Supp. 2d 1251, 1254 (S.D. Fla. 2012)* ("All court filings are presumptively a matter of public record and cannot be sealed absent specific legal authority or court order").

(n128)Footnote 87.3.  **Three-factor test.**  *United States v. Amodeo, 71 F.3d 1044, 1049-1050 (2d Cir. 1995)* (countervailing factors include, among others, danger of impairing judicial efficiency and privacy interests of those resisting disclosure).

(n129)Footnote 87.3.1.  **"Judicial document" defined.**  *Dorsett v. County of Nassau, 762 F. Supp. 2d 500, 516 (E.D.N.Y. 2011)* (many documents generated in federal litigation have little or no bearing on exercise of judicial power and "[u]nlimited access to every item turned up in the course of litigation would be unthinkable").

(n130)Footnote 87.4.  *Fed. R. Civ. P. 5(d)(1).*

(n131)Footnote 87.5.  Gregory P. Joseph, *A Preliminary Analysis of the 2000 Amendments to the Federal Rules of Civil Procedure and Evidence*, The Practical Litigator, January 2001, at 64.

(n132)Footnote 87.6.  **Videotape of deposition not judicial document.**  *Stern v. Cosby, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007)* (if and when deposition is presented at trial, "it may acquire a different status").

(n133)Footnote 87.6.1.  *See* Reagan, *Sealing Court Records and Proceedings: A Pocket Guide*, p. 11-12, "Discovery" (Fed. Judicial Ctr. 2010), *reproduced verbatim at § 26App.102.*

(n134)Footnote 87.6.2.  **Discovery documents do not become "public" information until filed with dispositive motion.**

*3d Circuit Constand v. Cosby, 112 F. Supp. 3d 308, 312 (E.D. Pa. 2015)* (although there is a presumptive common-law right of public access to materials filed in connection with non-discovery pretrial motions, there is no such presumptive right to discovery motions and their supporting documents).

*9th Circuit See In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig. v. Allianz Life Ins. Co. of N. Am., 686 F.3d 1115, 1119-1120 (9th Cir. 2012)* (although records were filed under seal attached to non-dispositive motion, they were nevertheless filed in connection to pending summary judgment motion and therefore did not fall under exception to presumption of public access).

*11th Circuit See, e.g., Emess Capital, LLC v. Rothstein, 841 F. Supp. 2d 1251, 1254 (S.D. Fla. 2012)* ("A district court may in its discretion enter a protective order shielding discovery materials from public disclosure upon a showing of good cause and when the balance of interests favor entering the order").

(n135)Footnote 87.7.  **"Compelling reasons" standard applies to judicial records.** *Pintos v. Pacific Creditors Ass'n, 565 F. 3d 1106, 1115 (9th Cir. 2009)* (this standard derives from common law right to inspect and copy public records).

(n136)Footnote 87.8.  **Rule 26(c)'s "good cause standard" applies to most discovery material.** *Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006)* (holding that different interests are at stake with the right of access than with Rule 26(c)).

(n137)Footnote 87.8.1.  **Dual standard recognized by other courts.** *See Dorsett v. County of Nassau, 762 F. Supp. 2d 500, 516 (E.D.N.Y. 2011)* (court must first determine whether document at issue is "judicial document").

(n138)Footnote 87.9.  **Distinction between dispositive and nondispositive motions.** *See, e.g., Phillips v. GMC, 307 F.3d 1206, 1213 (9th Cir. 2002)* (when party attaches sealed discovery document to nondispositive motion, usual presumption of public's right of access is rebutted).

(n139)Footnote 87.10.  **Ninth Circuit rejects simple dispositive/nondispositive approach.** *Ctr. for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1097-1101 (9th Cir. 2016)* (court found motion for preliminary injunction "more than tangentially related to merits of case," and required defendant to demonstrate compelling reasons to keep documents attached to motion for preliminary injunction sealed).

(n140)Footnote 88.  *Fed. R. Civ. P. 26(c)(1)(G).*

(n141)Footnote 89.  **Commercial disadvantage.** *Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 129 F.R.D. 483, 484 (D.N.J. 1990)* (party failed to show commercial disadvantage when it sought an order protecting as confidential documents already produced, and fact that some documents were 30 years old undercut need for protection).

(n142)Footnote 90.  **Good cause showing.**

*2d Circuit Bank of New York v. Meridien Biao Bank Tanz. Ltd., 171 F.R.D. 135, 143 (S.D.N.Y. 1997)* (moving party must establish that information is confidential and that disclosure will result in clearly defined and serious injury to its business); *In re NASDAQ Market-Makers Antitrust Litig., 164 F.R.D. 346, 354-357 (S.D.N.Y. 1996)* (in class action alleging improper manipulation of spreads on stock exchange, good cause shown for protection of audiotapes containing confidential commercial information such as trading strategies).

*3d Circuit Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994)* (court found that party met burden

and issued protective order for material marked confidential by parties).

*4th Circuit See  Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 415 (M.D.N.C. 1991)* (party must show material is treated confidentially, and harm that will occur without protective order).

*5th Circuit  Morton v. Cooper Tire & Rubber Co., 288 F.R.D. 126, 128 (N.D. Miss. 2012)* (party seeking protective order must establish "identifiable, significant harm").

*10th Circuit  Digital Equip. Corp. v. Micro Tech., Inc., 142 F.R.D. 488, 491 (D. Colo. 1992)* (lists what requesting party must show to obtain protective order and to shift burden).

(n143)Footnote 91.  **Burden shifts to party seeking discovery.**

*2d Circuit  Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 110 (S.D.N.Y. 1997)* (after party seeking protective order has established good cause, burden shifts to party requesting discovery to demonstrate relevance and need).

*4th Circuit See  Brittain v. Stroh Brewery Co., 136 F.R.D. 408, 415 (M.D.N.C. 1991)* (court granted protective order restricting access to specified documents to certain persons, restricting use of documents for this litigation only, and requiring return of documents at end of litigation).

*7th Circuit  Standard Process, Inc. v. Total Health Discount, Inc., 559 F. Supp. 2d 932, 943 (E.D. Wis. 2008)* (assertion that confidential information sought might affect moving party's claims was not sufficient to justify requiring disclosure of opposing party's account list).

*10th Circuit  Digital Equip. Corp. v. Micro Tech., Inc., 142 F.R.D. 488, 491 (D. Colo. 1992)* (lists what requesting party must show to obtain protective order and to shift burden).

(n144)Footnote 91.1.  **What constitutes trade secret.** *See  Andrew Corp. v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998)* (party seeking protective order failed to establish that information sought was trade secret).

*2d Circuit See  Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 110 (S.D.N.Y. 1997)* (listing first four factors).

*7th Circuit See  Andrew Corp. v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998)* (party seeking protective order failed to establish that information sought was trade secret).

(n145)Footnote 92.  **Unpopularity of information is insufficient.** *Chambers v. Capital Cities/ABC, 157 F.R.D. 3, 4 (S.D.N.Y. 1994)* (nevertheless upholding protective order, which, as condition for expedited production of documents, temporarily barred counsel from showing documents to anyone, even client).

(n146)Footnote 92.1.  **Expectation of confidentiality.** *See  Exum v. United States Olympic Comm., 209 F.R.D. 201, 207 (D. Colo. 2002)* (Olympic Committee failed to demonstrate good cause for protective order to restrict plaintiff's ability to disclose drug testing records of Olympic athletes because athletes did not have reasonable expectation of privacy when drug testing form stated that information provided is "not considered a confidential medical record," and athletes were not informed that test results would be kept confidential).

(n147)Footnote 93.  **Factors for evaluating existence of good cause.** *Glenmede Trust Co. v. Thompson, 56 F.3d*

*476, 483 (3d Cir. 1995)* (these factors are neither mandatory nor exhaustive).

*3rd Circuit  Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)* (these factors are neither mandatory nor exhaustive); *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994)* (in civil rights suit, court discusses factors to be considered in determining whether to grant protective orders); *Damiano v. Sony Music Entertainment, Inc., 168 F.R.D. 485, 488-493 (D.N.J. 1996)* (Third Circuit factors applied to modification of confidentiality order).

*9th Circuit See  Stormans, Inc. v. Selecky, 251 F.R.D. 573, 577 (W.D. Wash 2008)* (Third Circuit factors applied in granting protective order limiting access to names and addresses of plaintiffs' current employers in action by pharmacists against state officials, seeking to enjoin enforcement of regulations making it sanctionable for pharmacy to refuse to fill lawful prescriptions for "morning after" contraceptive because of religious or moral objections).

(n148)Footnote 94.  **Protective techniques.**  *ITT Electro-Optical Prod. v. Electronic Tech. Corp., 161 F.R.D. 228, 232 (D. Mass. 1995)* (court ordered that supplier, who was not party to action, was required to provide schematics pursuant to subpoena, but could remove all supplier part numbers).

(n149)Footnote 95.  **Disclosure limited to counsel.**

*1st Circuit See  GTE Prod. Corp. v. Gee, 112 F.R.D. 169, 172 (D. Mass. 1986)* (information regarding prices, customers, and sales could be disclosed to counsel, but not to opposing party who was in direct competition with disclosing party).

*2d Circuit See  In re City of New York, 607 F.3d 923, 935-936 (2d Cir. 2010)* ("The purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information").

*8th Circuit See  Gillespie v. Charter Commc'ns, 133 F. Supp. 3d 1195, 1201-1202 (E.D. Mo. 2015)* ("attorneys' eyes only" designation should be reserved for only those rare instances in which there is no effective alternative because it prevents counsel from reviewing documents with parties and experts, and is generally only appropriate in cases involving trade secrets, patents, or other intellectual property).

*10th Circuit See  Paycom Payroll, LLC v. Richison, 758 F.3d 1198, 1202 (10th Cir. 2014)* (disclosure of confidential information on "attorneys' eyes only" basis is "routine" feature of civil litigation involving trade secrets).

(n150)Footnote 96.  **Disclosure to counsel and experts.**

*1st Circuit See  Poliquin v. Garden Way, Inc., 154 F.R.D. 29, 31 (D. Me. 1994)* (attorney later sanctioned for providing materials to attorney in another case in violation of protective order).

*2d Circuit See  Dynamic Microprocessor Assocs. v. EKD Computer Sales., 919 F. Supp. 101, 106 (E.D.N.Y. 1996)* (computer source program was trade secret that could be disclosed only to designated experts and defendant's attorneys).

(n151)Footnote 97.  **Return of confidential documents.**  *Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994)* (plaintiff in race discrimination action sought documents from employer's labor-reporting system showing

number of hours actually worked on task by employees).

(n152)Footnote 98.  **Counsel's representation restricted.** *See  Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc., 784 F.2d 1325, 1345-1346 (7th Cir. 1986)* (court rejected counsel's argument that order improperly restricted their ability to undertake representation and noted that hospitals could retain separate law firm to inspect and use data).

(n153)Footnote 99.  **Use of independent consultant.**  *Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1471 (9th Cir. 1992)* .

(n154)Footnote 99.0.1.  **Use restricted to present litigation.** *See  Takata v. Hartford Comprehensive Employee Benefit Serv. Co., 283 F.R.D. 617, 622 (E.D. Wash. 2012)* (when crafting protective order, court should consider limiting use of information to particular lawsuit and limiting persons who may view documents).

(n155)Footnote 99.1.  **Factors to consider in permitting access to in-house counsel.**  *Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D. 240, 242 (E.D. Va. 1999)* (based on in-house counsel's unrebutted and sworn assertions that she has no role in employer's competitive business decisions, magistrate judge refused to deny her access to confidential information).

(n156)Footnote 99.2.  **Competitive decision-making.**  *Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D. 240, 242 (E.D. Va. 1999)* (magistrate judge refused to deny in-house counsel access to confidential information).

(n157)Footnote 99.3.  **Appointment of independent expert not favored.**  *Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 111 (S.D.N.Y. 1997)* (finding the information would be sufficiently protected by protective order restricting disclosure of materials to counsel).

(n158)Footnote 100.  *Fed. R. Civ. P. 26(c)(1)(H).*

(n159)Footnote 101.  **Purpose of Rule 26(c)(1)(H).**  *Friction Div. Prod. v. E.I. DuPont de Nemours, 658 F. Supp. 998, 1003 (D. Del. 1987)* , *aff'd on other grounds,   883 F.2d 1027 (1989)* (court denied motion for simultaneous exchange of information in patent case because party filed to show good cause when it was already under order to supply intervention dates and parties had been exchanging prior art for two years).

Salter v. Upjohn Co., 593 F.2d 649 (1979)
27 Fed.R.Serv.2d 822

KeyCite Yellow Flag - Negative Treatment
Distinguished by United States v. Malik, D.Kan., June 1, 2016

593 F.2d 649
United States Court of Appeals,
Fifth Circuit.

Susie J. SALTER, As Executrix of the Estate of
Salter, Rufus, Deceased, Plaintiff-Appellant,
v.
The UPJOHN COMPANY, a
corporation, Defendant-Appellee.

No. 77-1283.
|
April 23, 1979.

Executrix of decedent's estate brought wrongful death action against corporate drug manufacturer. The United States District Court for the Middle District of Alabama, Robert E. Varner, J., entered judgment for defendant, and plaintiff appealed. The Court of Appeals, Thornberry, Circuit Judge, held that: (1) trial court did not err in issuing protective order vacating plaintiff's first notice to take deposition of corporate defendant's president, since such order merely required plaintiff to depose other employees that defendant had indicated had more knowledge of facts before deposing corporate president; (2) trial court did not err in denying plaintiff's motion to compel defendant's president to appear in Montgomery, Alabama, for a deposition, since corporate defendant's place of business and corporate president's residence were in Kalamazoo, Michigan, and plaintiff did not establish any peculiar circumstances that would justify her request to depose corporate president in Montgomery, and (3) trial court did not abuse its discretion in denying a motion filed by plaintiff on October 21, 1976 to take corporate defendant's president's deposition, since parties had agreed that all discovery would be completed on or before October 1, 1976.

Affirmed.

West Headnotes (5)

[1] **Federal Civil Procedure**
⬩ Depositions of Parties and Others
Pending Action

It is very unusual for trial court to prohibit the taking of a deposition altogether, and absent extraordinary circumstances, such order would likely be in error.

95 Cases that cite this headnote

[2] **Federal Civil Procedure**
⬩ Motions for protective orders and
proceedings thereon

In wrongful death action brought against corporate drug manufacturer, trial court did not err in issuing protective order vacating plaintiff's first notice to take deposition of corporate defendant's president, since such protective order merely required plaintiff to depose other employees that defendant had indicated had more knowledge of facts before deposing corporate president; trial court's attempt to postpone or prevent necessity of taking corporate president's deposition was within its discretion, in view of defendant's reasonable assertions that corporate president was extremely busy and did not have any direct knowledge of facts in dispute.

85 Cases that cite this headnote

[3] **Federal Civil Procedure**
⬩ Time and place of examination

The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when corporation is the defendant.

69 Cases that cite this headnote

[4] **Federal Civil Procedure**
⬩ Time and place of examination

In wrongful death action brought against corporate drug manufacturer, trial court did not err in denying plaintiff's motion to compel defendant's president to appear in Montgomery, Alabama for a deposition, since corporate defendant's place of business and corporate president's residence were in

Salter v. Upjohn Co., 593 F.2d 649 (1979)

27 Fed.R.Serv.2d 822

Kalamazoo, Michigan, and plaintiff did not establish any peculiar circumstances that would justify her request to depose the corporate president in Montgomery.

38 Cases that cite this headnote

**[5]    Federal Civil Procedure**
     Time and place of examination

In wrongful death action brought against corporate drug manufacturer, in which parties agreed that all discovery in case would be completed on or before October 1, 1976, trial court did not abuse its discretion in denying a motion filed by plaintiff on October 21, 1976 to take corporate defendant's president's deposition.

19 Cases that cite this headnote

**Attorneys and Law Firms**

*650  James W. Garrett, Sr., Thomas H. Keene, Montgomery, Ala., for plaintiff-appellant.

Wm. Harold Albritton, Andalusia, Ala., John R. Matthews, Jr., Montgomery, Ala., for defendant-appellee.

Appeal from the United States District Court for the Middle District of Alabama.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

**Opinion**

THORNBERRY, Circuit Judge:

Plaintiff Susie J. Salter, as executrix of the estate of Rufus Salter, alleged in the trial court that defendant Upjohn failed adequately to test and label its prescription drug Cleocin and that as a result of this failure, Rufus Salter received the drug and died. In a general verdict, the jury found for defendant and the trial judge rendered judgment accordingly. Plaintiff appeals, alleging the trial judge committed a great variety of errors. We have read the briefs and the record and conclude that the majority of plaintiff's allegations are clearly without merit. One of the issues, however, requires a more protracted discussion.

Plaintiff requested three times that the trial judge allow her to take the deposition of Upjohn's president, Dr. William Hubbard. Each time the judge denied her request. Plaintiff first notified defendant that she intended to take Dr. Hubbard's deposition in January of 1976. Plaintiff had previously notified Upjohn that she intended to take the depositions of those employees of the corporation who were most familiar with the manufacture, approval and marketing of the drug Cleocin. The notice of Dr. Hubbard's deposition indicated that plaintiff would take his deposition at the same time as those of the other employees. Plaintiff also had a copy of the prepared statement Dr. Hubbard had given to a committee of the United States Senate *651 concerning the testing, marketing and use of the drug in question. Upjohn sought an order protecting Dr. Hubbard from the deposition. The trial judge granted defendant's motion.

**[1]    [2]**    It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error. See 4 J.Moore & J.Lucas, Moore's Federal Practice P 26.69 (3d ed. 1976); 8 C.Wright & A.Miller, Federal Practice & Procedure s 2037 (1970). We do not believe that this first order of the trial judge was such a complete prohibition, however. Although the court's order vacated plaintiff's notice to take the deposition of Dr. Hubbard, it is clear that the order merely required plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts before deposing Dr. Hubbard. The trial judge had indicated that if the testimony of the other employees was unsatisfactory, he would allow plaintiff to take Dr. Hubbard's deposition. [1] We do not interpret this ruling as totally prohibiting plaintiff from taking Dr. Hubbard's deposition. Rather, the trial judge was merely exercising the broad discretion that this court has long recognized he has in controlling the timing of discovery. Scroggins v. Air Cargo, Inc., 534 F.2d 1124 (5 Cir. 1976). At the time the judge made this ruling, plaintiff had the testimony Dr. Hubbard had given to the Senate Committee, which contained substantially the same information plaintiff wished to obtain from Dr. Hubbard in the deposition. Plaintiff was also scheduled to take the depositions of those employees who Upjohn indicated had the most direct knowledge of the relevant facts. It was therefore very likely that, after taking the other employees' depositions, plaintiff would be satisfied and abandon her requests to depose Dr. Hubbard, unless, as the trial judge noted, those other employees did not

Salter v. Upjohn Co., 593 F.2d 649 (1979)

27 Fed.R.Serv.2d 822

"have more personal knowledge" of the facts or their testimony was inconsistent with the Senate testimony of Dr. Hubbard. The judge's attempt to postpone or prevent the necessity of taking Dr. Hubbard's deposition was within his discretion in light of defendant's reasonable assertions that Dr. Hubbard was extremely busy and did not have any direct knowledge of the facts. Thus, the judge's issuance of the protective order vacating plaintiff's first notice to take Dr. Hubbard's deposition was not error.

[3]   [4]   Of course, if after taking the other depositions, plaintiff was not satisfied and again properly gave notice of or requested taking Dr. Hubbard's deposition, the judge probably should have allowed the deposition. After the first protective order, however, plaintiff never again properly raised the issue in the trial court. In May 1976, plaintiff moved for the court to compel Dr. Hubbard to appear in Montgomery, Alabama for a deposition. Upjohn's principal place of business and Dr. Hubbard's residence was Kalamazoo, Michigan. It is well settled that "(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business," especially when, as in this case, the corporation is the defendant. 8 C.Wright & A.Miller, Federal Practice & Procedure s 2112 at 410 (1970); See also 4 J.Moore & J.Lucas, Moore's Federal Practice P 26.70(1. 4) (3d ed. 1976). Before neither *652 the trial court nor this court has plaintiff argued any peculiar circumstances that would justify her request to depose Dr. Hubbard in Montgomery. Therefore, the trial judge correctly denied plaintiff's motion to depose Dr. Hubbard in Alabama.

At oral argument plaintiff's attorneys asserted that when they made this second motion they were willing to go to Kalamazoo to take the deposition if necessary. Even if we accept this assertion as true, it is irrelevant. Plaintiff did not express her willingness to defendant or the trial judge. In fact, the motion demands specifically that "the Court order the Defendant to produce in Montgomery at a convenient time for testifying, Dr. Hubbard . . . ." Plaintiff's lately expressed alacrity to alter the motion cannot be the grounds for reversal of the trial court's decision.

[5]   In October 1976 plaintiff moved for a third time to take Dr. Hubbard's deposition. This motion stated: "plaintiff requests that this Court either order the defendant to produce Dr. Hubbard in Montgomery, Alabama, for his testimony or to pay to plaintiff's attorney a reasonable charge for the time involved and also to pay his expenses to and from Kalamazoo, Michigan, to take this deposition of Dr. Hubbard." This motion was properly denied for several reasons. First, as noted above, the court did not abuse its discretion in refusing to compel Dr. Hubbard to appear in Montgomery. Second, the same policies validate the court's refusal to require defendant to pay plaintiff's expenses of taking the deposition in Kalamazoo. Plaintiff has never asserted any extraordinary circumstances that would have justified the unusual order she requested and we do not believe the trial judge's refusal to issue the order was an abuse of discretion. Third, on September 20, 1976, the court had entered a pretrial order, with the agreement of the parties, that "all discovery in this case be completed on or before October 1, 1976." On October 21, 1976, plaintiff made her third request to take Dr. Hubbard's deposition. Plaintiff has failed to even acknowledge that she made this request after the date by which the district court had ordered the parties to complete discovery. Therefore, she has of course not argued how the trial judge abused his discretion in imposing this limitation. It is widely recognized that the district court "may require discovery to be completed by a specified time in order to prevent delay of the trial by last minute resort to the discovery processes." 8 C.Wright & A.Miller, Supra, s 2038 at 278 (1970). When the parties have agreed to the limitations, as in this case, we can perceive no abuse of discretion in enforcing those restraints.

Because the judge was justified in postponing Dr. Hubbard's deposition the first time plaintiff requested it, and because plaintiff did not properly reassert the request, the district judge did not abuse his discretion by preventing the deposition any of the three times plaintiff sought to take it. The judgment of the district court is therefore AFFIRMED.

**All Citations**

593 F.2d 649, 27 Fed.R.Serv.2d 822

Footnotes

**Salter v. Upjohn Co., 593 F.2d 649 (1979)**

27 Fed.R.Serv.2d 822

1      According to Upjohn's attorney at the hearing on plaintiff's second request to depose Dr. Hubbard:

Your Honor, you ruled on our motion for protective order (with respect to plaintiff's first notice to take the deposition of Dr. Hubbard) that we were entitled not to have him deposed because (plaintiff's attorney) already had the testimony that was presented at the Senate hearing, and Your Honor ruled that since (plaintiff's attorney) was deposing about eight or ten people of the company up there who actually had the more personal knowledge of the matter than the president of the company, that if any of their testimony was different from what the president of the company said then you would let him be questioned on that, but otherwise he should get it from these other people.

Plaintiff refers to the above statement in her brief to this court and apparently agrees that it is a proper characterization of the judge's ruling on her first notice to take Dr. Hubbard's deposition. Therefore, we will assume it is correct.

End of Document      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

**Swanson, David**

| | |
|---|---|
| **From:** | Kendall J. Krielow <kjk@blocklawfirm.com> |
| **Sent:** | Wednesday, November 23, 2016 4:33 PM |
| **To:** | Swanson, David |
| **Cc:** | Jason Nichols; Crystal Pitre; jpb@blocklawfirm.com |
| **Subject:** | RE: Precht motion for protective order |

David and Jason:

I originally asked for dates to depose these ATC officers on October 14.  It was not until October 25, that I received your response with the information on deposing corporate executives. At that time, I explained my reasons for why these depositions are necessary.  David indicated to me that, within a week or so of my response on October 25, he would file ATC's motion for protective order using my email request for dates in lieu of subpoenas and notices of deposition.  Later, while in Boston, I was told circumstances had developed, but you would file the motion for protective order soon thereafter.  On November 16, more than a month after I requested deposition dates, I indicated I would subpoena the witnesses if no motion for protective order was filed.  At Jason's request on November 18, I once again agreed to prolong noticing the depositions in order for ATC to file its motion for protective order by yesterday, November 22.

I have been more than patient and accommodating in trying to work with you guys on giving you time to file your motion for protective order.  Considering ATC has two firms representing it and the resources available to your firms, there is simply no reason ATC's motion could not have been filed by this point.  I have explained that I think these depositions are crucial to the issues being litigated and that the timing of these depositions is a material matter considering ATC's pending motion for summary judgment.  I will send the subpoenas and notices in a separate email.

Thanks,
Kendall

**From:** Swanson, David [mailto:dswanson@lockelord.com]
**Sent:** Tuesday, November 22, 2016 3:14 PM
**To:** Kendall J. Krielow <kjk@blocklawfirm.com> (kjk@blocklawfirm.com) <kjk@blocklawfirm.com>
**Cc:** Jason Nichols (jason.nichols@cookyancey.com) <jason.nichols@cookyancey.com>
**Subject:** Precht motion for protective order

Kendall,

I believe that Jason and you discussed our filing a motion for protective order by the end of the day today.  Due to other matters on my docket, the fact that Jason is on vacation this week, and the upcoming holiday, we will not file our motion today.  It will be filed a soon as possible after the holiday.  If for any reason there is a deadline or any particular urgency to filing this motion before next week, please let me know so we can discuss possible cost-effective solutions to allay any concern you have or to address any deadline.  You can reach me by email or on my cell phone over the holiday.  Have a happy Thanksgiving.

Thanks.

David

David L. Swanson
Locke Lord LLP

214.740.8514 (office)
214.695.7389 (cell)