UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORA M. PRECHT, ET AL | CIVIL ACTION NO. 14-CV-0743 |
| VERSUS | JUDGE MINALDI |
| AMERICAN TOWER CORPORATION, ET AL | MAGISTRATE JUDGE KAY |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

    NOW come Defendants GLOBAL TOWER, LLC (hereinafter "Global Tower"); GTP INFRASTRUCTURE I, LLC; and GTP INVESTMENTS, LLC (hereinafter collectively "GTP"), through undersigned counsel, and submit the following Memorandum in Support of their Motion for Summary Judgment:

## TABLE OF CONTENTS

**Table of Authorities** ...........................................................................................................3

**I.**      **Factual Background** ...........................................................................................5

**II.**     **Legal Argument** ..................................................................................................6

        A.  Summary Judgment is appropriate where plaintiffs cannot prove
            an essential element of their claim........................................................................6

        B.  Plaintiffs cannot meet their burden of proof under La. Civ. Code
            Art. 2317.1 or La. Civ. Code art. 2322 .............................................................7

**III.**    **Conclusion** ........................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999) .............................................. 13

*Air Evac. EMS, Inc. v. Robinson*, 486 F. Supp.2d 713 (M.D. Tenn. 2007) ................................ 15

*Big Stone Broadcasting v. Lindbloom*, 161 F.Supp.2d 1009 (D.S.D. 2001) ......................... 12, 13

*Breaux v. Fresh Start Properties, L.L.C.*, 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849 ....................... 7

*Burns v. CLK Invs. V, L.L.C.*, 45 So. 3d 1152 (La. Ct. App. 2010) ........................................... 8,9

*Casborn v. Jefferson Hosp. Dist. No. 1*, 11-1020 (La. App. 5 Cir. 5/22/12), 96 So.3d 540 ....................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 6

*City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973) ........................................ 11

*Dennis v. The Finish Line, Inc.*, 99-1413, p. 5 n. 8 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, *writ denied*, 01-0214 (La.3/16/01), 787 So.2d 319; 12 ...................................................................... 6

*Dixon v. Iannuzzi,* 12-30069 (5th Cir. 10/18/12 *(Per Curiam)* ....................................................... 8

*Dufrene v. Gautreau Family, LLC,* (La. App. 5 Cir. 2/22/08), 980 So.2d 68, 80, *writs denied*, 08-629 (La. 5/9/08), 980 So.2d 694 and 08-628 (La. 5/9/08), 980 So.2d 698 ............................................................ 16

*Eisenhardt v. Snook*, 8 So.3d 541 (La. 2009) ................................................................................. 9

*Henry v. O'Charley's Inc.*, 2013 WL 786417 at *2 (W.D. La. 2013) ............................................. 6

*Joseph v. Jetblue Airways Corp.*, 2012 WL 1204070 (N.D.N.Y. 2012) ...................................... 14

*McMahon Helicopter Servs., Inc. v. U.S,* 2006 WL 2130625 ...................................................... 14

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ................................................................ 11

*Smolinski v. Taulli*, 276 So. 2d 286 (La. 1973) .............................................................................. 8

*U.S. Airways v. O'Donnell,* 627 F.3d 1318 (10th Cir. 2010) ....................................................... 14

*Witty v. Delta Airlines*, 366F.3d 380 (5th Cir. 2004) ................................................................... 11

**Statutes**

49 U.S.C. §§ 44701 ................................................................................................................... 10

49 USC § 40103 ................................................................................................................. 10, 11

49 USC § 44718 ....................................................................................................................... 11

La. Civ. Code art. 2317.1 ......................................................................................................... 13

La.Civ. Code art. 2317.1 ....................................................................................................... 5, 6

La.Civ. Code art. 2322 .......................................................................................................... 5, 6

**Other Authorities**

47 C.F.R. § 17.2 ....................................................................................................................... 14

FED. R. CIV. P. 56 ....................................................................................................................... 5

Louisiana Civil Law Treatise: Tort Law §§ 1:18 ........................................................................ 5

I.     FACTUAL BACKGROUND

William Wayne Precht, Jr. was killed on February 15, 2013, when a crop-duster aircraft he was flying struck the guy wires of a communication tower located in a rice field he was spraying.  On February 7, 2014, Plaintiffs commenced a wrongful death action against Defendants in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana.  According to Plaintiffs' petition, Mr. Precht was making a spray pass at an altitude of 30 feet near the tower when the wing of his aircraft struck the tower's guy wires.

Plaintiffs claim that this accident was caused by Defendants' negligent ownership, maintenance, and/or use of the communication tower, particularly the failure to properly maintain and mark the tower's guy wires.  Plaintiffs contend that the tower was defective because its cables were not marked with "wire markers" in accordance with Jefferson Davis Parish Ordinance 5.5-107.

The tower at issue was known as "LA-5136."   Presently and at the time of the accident, LA-5136 was owned by GTP Infrastructure I, LLC. (Deposition of Michael McCormack, Exhibit C, p. 118).  At the time of the accident the tower was illuminated by med-dual intensity (red/white) lights.  LA-5136 was marked in accordance with all applicable Federal Aviation Adminstration (FAA) and Federal Communications Commission (FCC) standards for aviation obstructions. (See Affidavit of Ben Doyle, attached as "Exhibit A").  At the time of the accident (and today) there exists no federal requirement or recommendation to install marker balls on guy wires for antenna towers. *Id*.

## II. LEGAL ARGUMENT

### A. Summary Judgment is appropriate where plaintiffs cannot prove an essential element of their claim.

"The court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "If the dispositive issue is one that the nonmoving party bears the burden of proof at trial, the moving party may satisfy its burden by merely identifying evidence in the record that negates an essential element of the nonmoving party's claim." *Henry v. O'Charley's Inc.*, 2013 WL 786417 at *2 (W.D. La. 2013) (Minaldi, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 335 (1986)).

In the instant case, Plaintiffs have the burden of proving their claim under La.Civ. Code art. 2317.1 and/or La.Civ. Code art. 2322. These articles provide the bases for liability against the owners of "things" or buildings." Art. 2317.1 currently provides, in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Art. 2322 currently provides in pertinent part:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

The 1996 legislation enacting Art. 2317.1 and amending Art. 2322, abolished the concept of strict liability. *See Dennis v. The Finish Line, Inc.*, 99-1413, 99-1414, p. 5 n. 8 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, *writ denied*, 01-0214 (La.3/16/01), 787 So.2d 319; 12

6

William E. Crawford <u>Louisiana Civil Law Treatise: Tort Law</u> §§ 1:18. One of the principal changes was a shift in the burden of proof: in addition to proving a "defect," plaintiffs now must prove actual or constructive knowledge of the defect on the part of the premises owner.

A plaintiff alleging negligence or strict liability of a building owner must prove: (1) the property presented an unreasonable risk of harm; (2) the defendant knew or should have known of the vice or defect; and (3) the damage could have been prevented by the exercise of reasonable care and the defendant failed to exercise such reasonable care. If the plaintiff fails to prove any one of these elements, his claim fails. *Breaux v. Fresh Start Properties, L.L.C*., 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852. In the instant case, Plaintiffs are unable to prove any of the three requirements set forth above.

**B.	Plaintiffs cannot meet their burden of proof under La.Civ. Code art. 2317.1 or La.Civ. Code art. 2322.**

**1.	Tower LA-5136 was free from defects, and did not present an unreasonable risk of harm.**

There is no evidence that the tower was broken or structurally defective in any way that contributed to the accident. There is no assertion that the tower presented any special risk of harm other than it was a tall, fixed structure into which aircraft might fly. Plaintiffs' claims are based upon failure to mark the tower and its guy wires as aviation obstructions. The linchpin of Plaintiffs' case is Jefferson Davis Parish's Ordinance 5.5-107, which addresses communications towers above 15 feet tall in Jefferson Davis Parish:

> Sec. 5½-107. - Lighting.
>
> (a) "Light" will mean an electric device equivalent to a beacon or similar apparatus to provide sufficient illumination, from dusk to dawn, for aircraft pilots to identify the location and height of such structures.
>
> (b)	When tower lighting is not required by the Federal Aviation Administration or other federal or state authority for a particular tower,

>continuously illuminated red beacons shall be installed on towers greater than or equal to one hundred (100) feet in height.
>
>(c) Federal restrictions shall supersede these requirements as may be required by law.
>
>(d) When lighting is required and is permitted by the Federal Aviation Administration or other federal or state authority, dual lighting shall be employed. For the purposes of this article, and to minimize intrusion into other areas, dual lighting shall be considered as strobe lighting during the daylight hours (if necessary) and red lighting at night. In no case shall lighting shine downward during nighttime hours, such lights shall be focuses upward if necessary.
>
>(e) Any guy wires used for support of any tower shall include tana wire markers that enable aircraft pilots to identify the location of such guy wires.
>
>(f) All towers required to be illuminated or lighted under this section shall be equipped with a generator or other additional power supply sufficient to maintain illumination and/or lighting during periods of electrical or power outage.
>
>(g) On existing structures, owners, developers, contractors, and/or businesses must comply with said lighting requirements within a period not to exceed six (6) months from the effective date of this article.

Although violations of the Jefferson Davis Parish Building Code may serve as guidelines for establishing standards of liability, they are not alone dispositive and do not relieve the plaintiffs of the need to prove that the condition was unreasonably dangerous to Mr. Precht. *See Burns*, *v. CLK Invs. V, L.L.C*., 45 So. 3d 1152, 1158 (La. Ct. App. 2010) ("[I]t is clear that even when the violation of a statute is proved, such is not a substitute for proving the existence of 'an unreasonable risk of harm.'"); *see also Smolinski v. Taulli*, 276 So. 2d 286, 289 (La. 1973). In *Dixon v. Iannuzzi*, the U.S. Fifth Circuit summarized the basic test for whether a defect presents an "unreasonable risk" of harm:

>An unreasonable risk of harm will be found in a defect that "is a dangerous condition reasonably expected to cause injury to a prudent

8

>person using ordinary care under the circumstances . . . , a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use." *Burns v. CLK Invs. V, L.L.C.*, 45 So. 3d 1152, 1162 (La. Ct. App. 2010) (internal quotation marks and citation omitted). Because not every premises defect will be considered to be unreasonably dangerous, the inquiry is dependent upon the circumstances of each case. See *Eisenhardt v. Snook*, 8 So.3d 541, 545 (La. 2009).

12-30069 (5th. Cir. 10/18/12) (*Per Curiam*).

Under the specific circumstances of this case, LA-5136 did not present an unreasonable risk of harm. The deposition testimony adduced in this matter demonstrated that LA-5136 was well-known to Mr. Precht. According to the deposition of Riceland Aviation, Inc., Mr. Precht sprayed the field in which LA-5136 was located several times previously, and he was familiar with it. (Exhibit B, pp. 99-100). When spraying herbicide, Mr. Precht would fly over the field at as low as 30 feet. (Exhibit B, p. 100). Mr. Precht had made numerous passes on the field immediately prior to the accident, and at the time of the accident, Mr. Precht was "dressing" the edge of the field closest to the tower. (Exhibit B, p. 108).

As reflected in the affidavit of Ben Doyle, GTP's expert in aviation obstruction marking, tower LA-5136 was marked for conspicuity in accord with all applicable FAA and FCC regulations. (See Affidavit of Ben Doyle, "Exhibit A"). FAA Advisory Circular 70/7460-1K (Chg 2) "Obstruction Marking and Lighting" was effective 2/1/2007 until 10/7/2016 and "sets forth standards for marking and lighting obstructions." The FAA mandates compliance with the standards set forth in Advisory Circular 70/7460-1K when it issues Determinations of No Hazard or Marking & Lighting Recommendations. FAA Advisory Circular 70/7460-1K is attached to Exhibit A.

With specific regard to LA-5136, the FAA issued a "Marking and Lighting Recommendation" on 3/10/2011 recommending that the tower be lighted with dual-medium

intensity red and white lights. This recommendation was echoed by the FCC in its Antenna Structure Registration issued on the following day. The new lighting configuration was installed by Millerco., Inc. on 5/12/2011 in full compliance with the FAA Advisory Circular at the time. The documents showing the FAA approval and installation are attached to Mr. Doyle's affidavit. There was no, and is no, federal requirement or recommendation to install spherical marker balls on guy wires for antenna towers. (See Exhibit A, Paragraphs 9 & 10).

LA-5136 was a typical guyed communications tower. It had no apparent defects, and it was marked and illuminated both in daytime and nighttime as required by the FAA. LA-5136 was designated on the relevant aviation charts for the Jennings area, and it was actually well-known to Mr. Precht. LA-5136 was not a structure that was "unreasonably dangerous in normal use." The tower was only struck because Mr. Precht miscalculated while he was attempting to fly very close to the tower at extremely low altitude. Mr. Precht was not "a prudent person using ordinary care" under the circumstances. Mr. Precht was engaged in a generally hazardous activity, and he was specifically making a daring low-altitude aircraft pass on a rigid structure. Under the particular circumstances of this case, LA-5136 did not pose an unreasonable risk of harm.

    **2.**    **The Federal Aviation Act preempts Jefferson Davis Parish Ordinance 5.5-107 regarding marking airspace obstructions.**

LA-5136's alleged noncompliance with the extra requirements of Jefferson Davis Parish Police Jury Ordinance Section 5.5-107 does not constitute a defect. As noted in Section 5.5-107(c) of that ordinance, "federal restrictions shall supersede" the Jefferson Davis Parish requirements as required by law. Further, and as explained below, the Federal Aviation Act preempts the Parish's local ordinance with respect to marking of airspace obstructions, and Plaintiffs cannot meet their burden of proof as a matter of law.[1]

The Federal Aviation Act broadly regulates the area of aviation safety. 49 U.S.C. §§ 44701–44735. Although there is no language in the Act indicating express preemption, "[t]he United States Government has <u>exclusive sovereignty</u> of the airspace of the United States." 49 USC § 40103(a)(1) (emphasis added). *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633 (1973). State law may be impliedly preempted under the doctrine of field preemption where the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or the federal legislation "may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (internal citations omitted).[2]

It is difficult to imagine a field which the federal interest dominates more than aviation safety. The majority of circuit courts, including the Fifth Circuit, hold that federal law preempts

---

[1] Field preemption "[is] generally [a] purely legal question, where the matter can be resolved solely on the basis of the state and federal statutes at issue. *Wis. Cent., Ltd. V. Shannon*, 539 F.3d 751, 759-60 (7th Cir. 2008)(citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983); *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 325 F.3d 879, 882 (7th Cir. 2003)).

[2] Generally the implied preemption analysis begins with a presumption that state law is not superseded. *Id*. "The presumption has not generally been applied when a local government regulates in an area 'where there has been a history of significant federal presence,'" as is the case with aviation regulation. *N.Y. SMSA Ltd. Partnership v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010)(quoting *United States v. Lockes*, 529 U.S. 89, 108 (2000)). *Cf. Morris v. Cessna Aircraft Co.*, 833 F. Supp.2d 622, 630 (N.D. Tex. 2006)(presumption against finding preemption applied to well settled area of products liability).

state and local law in the field of aviation safety. *See Witty v. Delta Airlines*, 366F.3d 380, 385 (5th Cir. 2004).[3] More specifically, with regard to obstructions to navigable airspace, federal law provides that the administrator of the FAA "shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of airspace necessary to ensure the safety of aircraft and the efficient use of airspace." 49 USC § 40103(b)(1). The FAA has created comprehensive regulatory rules and procedures for the construction, marking, mapping, modification, and regulation of obstructions. *See e.g.* 14 C.F.R. 77 (Part 77). Defendants' expert, Ben Doyle, has an entire company of people devoted to assisting their clients in complying with this federal regime.

With regard to communications towers such as LA-5136, the Federal Aviation Act requires notice to the FAA of the construction, alteration, establishment, or expansion of a structure when the notice will promote air safety and the efficient use and preservation of navigable airspace. See 49 USC § 44718(a)(1). The FAA is required to determine whether a construction project poses a threat to air safety, and may require its identification on maps and Notice to Airmen (NOTAM) advisories. The FAA has also promulgated uniform regulations for the marking and illumination of airspace obstructions like LA-5136. *See e.g.* 14 C.F.R. 77 (Part 77); and FAA Advisory Circular 70/7460-1K.

In a case involving the construction of a radio broadcast tower in South Dakota, a federal district court held that the Federal Aviation Act and the rules promulgated by the FAA regarding airspace obstructions preempted a state regulatory determination that a proposed radio tower was

---

[3] *See also Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses*, 634 F.3d 206 (2nd Cir. 2011); *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010); *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007); *Greene v. B.F. Goodrich Sys., Inc.*, 409 F.3d 784 (6th Cir. 2005); *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999). The range of issues considered under the FAA makes clear the issue of field preemption under the FAA must be examined on a case by case basis.

a hazard to air safety. In *Big Stone Broadcasting v. Lindbloom*, the plaintiff (a broadcasting company) proposed to construct an 875-foot radio broadcast tower approximately 900 feet south of a South Dakota highway frequently used as a VFR guide for aircraft. 161 F.Supp.2d 1009 (D.S.D. 2001).   The broadcast tower was approved by the FAA, but rejected by the South Dakota Aeronautics Commission (SDAC).  In a lengthy and instructive opinion, the district court explored the interplay between federal law and aviation safety before concluding:

> In this case, two federal agencies have been delegated the authority to jointly confront the problem that tall radio broadcast towers can pose to air traffic and safety. Both agencies, in response to their congressional charge, have promulgated detailed regulations ensuring cooperation and pursuing safety and efficiency in the management of America's air space. Permitting the states to diffuse that power and interfere with that cooperation would frustrate Congress's intent and erode the effectiveness of the FAA and FCC to jointly control the construction of tall and perhaps threatening radio broadcast towers. Just as the Supreme Court in *City of Burbank* was hesitant to let the state encroach on the cooperative authority Congress had granted to the FAA and EPA in the control of airport noise, this court will likewise not permit SDAC to inject itself, especially after-the-fact, into the process of determining the dangerousness of a proposed radio broadcast tower.  To do so would give the state a veto over both the FAA and FCC, render void the extensive cooperation between the FAA and FCC, and dilute their authority to determine hazards to air traffic and safety.

*Big Stone Broadcasting, supra* at 1019.

The federal law requirements and standards establish the exclusive standard of care for marking obstructions to navigable airspace. State laws and parish ordinances cannot supplement or conflict with these federal standards. "The FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation…not subject to supplementation by, or variation among, jurisdictions…[It is] error to rely upon territorial safety standards in determining [the defendants'] liability…" *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 365 (3d Cir. 1999). *See also Witty*, 366 F.3d at 385 ("[F]ederal

regulatory requirements…preempts all state standards and requirements…warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law." *Id*. The court refrained deciding whether the entire state-law claim at issue was preempted, limiting the holding to the standard of care. *Id*.); *Joseph v. Jetblue Airways Corp.*, 2012 WL 1204070 (N.D.N.Y. 2012)(various state-law claims were preempted by the FAA).

In *McMahon Helicopter Servs., Inc. v. U.S.*, Judge Bandstra held a state-law claim for common law negligence was preempted by the Federal Aviation Act. 2006 WL 2130625 at *4, *7 (E.D. Mich. 2006). In *McMahon*, the plaintiff alleged that an airport breached its duty of reasonable care by permitting a light pole – that was unmarked and did not light up – to stand without warning incoming pilots. The plaintiff crashed into the light pole in a helicopter. The court held the plaintiff's state-law claim was preempted, reasoning that the defendant-airport was in full compliance with FAA regulations. The court held that the light pole was not an impermissible obstruction such that the defendant-airport breached the standard of care for common law negligence. *See id*. at *8. The court found that the FAA preempted the plaintiff's state-law claim despite having applied a presumption against preemption in its analysis. *See id*. at *7.

Just like the plaintiff in *McMahon*, the plaintiffs in this case cannot show the defendants breached their duty under La. Civ. Code art. 2317.1 or 2322. Here, the Jefferson Davis Parish Tower Ordinance clearly impacts airspace obstructions and it is expressly superseded by the FAA regulations intended to aid in aviation safety. The Jefferson Davis Ordinance's specific incorporation of and deference to FAA safety regulations weighs in favor of preemption.

Furthermore, marking and lighting of structures that might interfere with aviation safety must be consistent nationwide, so as not to create confusion among pilots.

While Plainitffs will surely argue that the requirement of cable markers is "additional safety" that does not conflict with the federal regime, such supplemental requirements are also preempted. The Tenth Circuit in *U.S. Airways v. O'Donnell*, invalidated a New Mexico statute that imposed additional requirements on airlines serving alcoholic beverages. *See* 627 F.3d 1318, 1328 (10th Cir. 2010). The *O'Donnell* court first defined the legislative field that the New Mexico statute purported to regulate; the district court was mistaken by limiting the definition to alcoholic beverage service. The *O'Donnell* court found the state law necessarily implicated the field of airline safety because it extended to training and certification requirements for attendants serving alcohol, noting the FAA regulations incorporated similar objectives. *Id*. at 1325. Because the court found Congress intended to occupy the *entire* field of aviation safety to the exclusion of state law, it held the New Mexico statute was impliedly preempted, and thus invalid. *Id*. at 1327-28.

Even if the legislative field occupied by the Jefferson Davis Parish Tower Ordinance is construed narrowly, as lighting and marking required for communication towers, it implicates a field in which Congress has imposed regulations so pervasive as to exclude the states. The FAA delineates <u>uniform</u> standards for marking and lighting for obstructions, including communications towers. Here, as in *O'Donnell*, the Jefferson Davis Parish Tower Ordinance is substantive in nature; it regulates standards for communications towers, including setting standards for lighting and marking. *Id*. at 1326. The Ordinance incorporates FAA requirements and the policy concern for aviation safety implicated by 47 C.F.R. § 17.21 and FAA Advisory Circular 70/7460-1K. Like the ordinance in *O'Donnell*, the Jefferson Davis Parish ordinance

invades a field of standards and requirements that are exclusively controlled and governed by the FAA. *See id*. at 1325. *See also Air Evac. EMS, Inc. v. Robinson*, 486 F. Supp.2d 713 (M.D. Tenn. 2007) (additional safety requirements imposed at state law are irrelevant to field preemption, and thus invalid where local law is preempted by federal law).

### 3. Plaintiffs have not adduced any evidence to prove that Defendants had knowledge of any defect in LA-5136.

With regard to the element of knowledge, a plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde. *Dufrene v. Gautreau Family, LLC,* (La. App. 5 Cir. 2/22/08), 980 So.2d 68, 80, *writs denied*, 08-629 (La. 5/9/08), 980 So.2d 694 and 08-628 (La. 5/9/08), 980 So.2d 698. Constructive knowledge can be found if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. *Casborn v. Jefferson Hosp. Dist. No. 1*, 11-1020 (La. App. 5 Cir. 5/22/12), 96 So.3d 540, 543. The determination of constructive knowledge is made by the judge based upon the particular facts and circumstances of each case.

Here, the alleged defect was not the result of damage to the tower, or a deviation of the tower from its plans and design specifications. No person could look at the tower and discern any defect. As demonstrated above, the FAA issued a "Marking and Lighting Recommendation," dated 03/10/2011, which directed Defendants to install med-dual intensity lighting. Such lighting was installed in May 2011. The NTSB factual report did not mention any problems with the tower's lighting or markings which contributed to the incident.

The sole defect alleged by Plaintiffs is the tower's nonconformance with a Jefferson Davis Parish Ordinance. Nevertheless, there has been no evidence adduced in this matter that GTP had any notice or knowledge of this ordinance prior to the accident in February, 2013. There has been no evidence of any citation issued to Defendants, or any indication that GTP was ever informed of the ordinance's enactment.

### III. CONCLUSION

Mr. Precht purposefully flew his aircraft at low altitude and as close as he could get to GTP's fixed communications tower. The tower was marked as required by the FAA, and did not present an unreasonable risk of harm to a prudent person using ordinary care. Plaintiffs' claims are based solely upon a Jefferson Davis Parish ordinance that addresses a field that is utterly preempted by federal law and regulation. Because Plaintiffs are unable to prove the existence of a defect, or knowledge of such a defect by Defendants, summary judgment should be granted dismissing Plaintiffs' claims.

WHEREFORE, Defendants GLOBAL TOWER, LLC; GTP INFRASTRUCTURE I, LLC; and GTP INVESTMENTS, LLC pray that this Honorable Court grant their Motion for Summary Judgment be granted for the reasons set forth above.

Respectfully submitted,

/s/ Isaac H. Ryan
Robert E. Kerrigan, Jr. (#07350)
Isaac H. Ryan (#23925)
Raymond C. Lewis (#31236)
Karuna Davé (#37091)
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
Telephone: 504 581 5141

        rek@deutschkerrigan.com
        iryan@deutschkerrigan.com
        rlewis@deutschkerrigan.com
        kdave@deutschkerrigan.com
        **Attorneys for Global Tower, LLC, GTP Infrastructure I, LLC and GTP Investments, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record this 20th day of December, 2016, by electronic transmission.


        /s/ Isaac H. Ryan
        Isaac H. Ryan