RECEIVED
IN LAKE CHARLES, LA.
DEC 22 2016
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DEBORA M. PRECHT, ET AL.** | * CIVIL ACTION NO. 2:14-CV-00743 |
| v. | * JUDGE MINALDI |
| **GLOBAL TOWER LLC, ETAL.** | * MAGISTRATE JUDGE KAY |

*************************************************************************

## MEMORANDUM RULING

Before the court is a Motion to Dismiss Plaintiffs' Second Amending and Supplemental Petition (Rec. Doc. 74) filed by the defendant American Tower Corporation (ATC), a Response (Rec. Doc. 79) filed by the plaintiffs, and a reply (Rec. Doc. 83) filed by ATC. For the following reasons, ATC's Motion to Dismiss (Rec. Doc. 74) is **GRANTED IN PART** and **DENIED IN PART**.

## FACTS & PROCEDURAL HISTORY

William Wayne Precht, Jr., was killed when the wing of his crop duster collided with the guy wires on a communication tower. Mr. Precht's family filed suit against ATC; Global Tower, LLC; GTP Infrastructure I, LLC; Telcom Rentals, Inc.; GTP Investments, LLC; and Hanover Insurance Co., alleging that the defendants' failure to properly design, construct, maintain, and mark the guy wires caused the crash. The plaintiffs then amended their petition to clarify the relationship of the defendants.[1] The amended complaint also alleged that the defendants, without specifying which defendants and excluding only Hanover Insurance Co., owned, operated,

---
[1] Amended Compl. (Rec. Doc. 1-4).

1

maintained, and controlled the tower.[2] The defendants subsequently removed the case to this court.

After the case was removed, the plaintiffs again amended their complaint with approval from the Magistrate Judge.[3] In the amended complaint, the plaintiffs allege that at least one of the GTP entities[4] operated as an alter ego of ATC when the entity was merged with or acquired by ATC;[5] that ATC assumed tort liability of the GTP entities when it merged with or acquired them;[6] that ATC has complete control over the GTP entities;[7] and that ATC operates the GTP entities as a "single cohesive unit for the common purpose of benefiting [ATC]."[8] The plaintiffs argue that these allegations support a veil piercing theory, so that ATC can be held liable for the negligent actions of the GTP entities. When the Motion to Amend was before the Magistrate Judge, ATC argued that the amendments were futile because they did not support a veil piercing theory under Louisiana law.[9] The Magistrate Judge disagreed with ATC.[10] After the Motion to Amend was granted, ATC then moved to dismiss (Rec. Doc. 74) the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[11]

ATC now argues that under Louisiana law, the court should apply the law of the state of incorporation to determine whether veil piercing is appropriate, and that plaintiffs' allegations in the second amended complaint are inadequate to support a veil piercing theory under Delaware law, ATC's state of incorporation. The plaintiffs maintain that Louisiana veil piercing law applies and that the reasoning of the Magistrate Judge should be followed.

---

[2] Amended Compl. (Rec. Doc. 1-4), ¶ 6.
[3] Memo. Ruling (Rec. Doc. 69).
[4] GTP entities include Global Tower, LLC; GTP Infrastructure I, LLC; and GTP Investments, LLC.
[5] Second Amending and Supp. Petition (Rec. Doc. 70), ¶ 6(b).
[6] Second Amending and Supp. Petition (Rec. Doc. 70), ¶ 6(c).
[7] Second Amending and Supp. Petition (Rec. Doc. 70), ¶ 6(d).
[8] Second Amending and Supp. Petition (Rec. Doc. 70), ¶ 6(e).
[9] Response to Motion to Amend (Rec. Doc. 65).
[10] Memo. Ruling (Rec. Doc. 69).
[11] Motion to Dismiss (Rec. Doc. 74).

## **LAW & ANALYSIS**

### I. Motion to Dismiss Standard

An action can be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the claimant fails "to state a claim upon which relief can be granted." Motions to dismiss are generally "viewed with disfavor and [should be] rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "[The] Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Id.* (quoting *Gregson*, 322 F.3d at 885).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," making the right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the allegations in the complaint, even if taken as true, do not entitle the plaintiff to relief, the complaint should be dismissed. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 558).

### II. Choice of Law

"Choice-of-law decisions can be resolved at the motion to dismiss stage." *Energy Coal v. CITGO Petroleum Corp.*, -- F.3d ---, No. 15-30863, 2016 WL 4575569, at *2 (5th Cir. Sept. 1, 2016) (citing *Fortune v. Taylor Fortune Grp., LLC*, 620 F. App'x 246, 247–48 (5th Cir. 2015). "In diversity cases, the law of the forum state governs that inquiry." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Louisiana is the forum state in this dispute. The parties and the court agree the current case is governed by Louisiana law.

3

Under Louisiana's choice-of-law provisions, "[e]xcept as otherwise provided …, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. In making this determination, the court should determine the choice of law on an issue-by-issue basis, and "the laws of different states may be applied to different issues in the same dispute." *Id.* cmt. d. However, courts should avoid unnecessarily splitting the case, "especially when it results in distorting the policies of the involved states." *Id.* The plaintiffs' action against ATC raises two main issues: (1) the defendants' tort liability for not properly designing, constructing, maintaining, and marking the guy wires that caused the plane crash, and (2) ATC's corporate structure and liability for the GTP entities.

First, regarding the defendants' potential tort liability, the Louisiana Civil Code provides a specific choice-of-law selection rule for "[i]ssues pertaining to standards of conduct and safety." La. Civ. Code art. 3543. Those issues "are governed by the law of the state in which the conduct that caused the injury occurred." *Id.* Furthermore, if "both the conduct and the injury occur [in the same state, that state] has the best, if not the exclusive, claim for applying its law." *Id.* cmt d. Because the injury and the alleged negligent conduct both occurred in Louisiana, the defendants' tort liability is governed by Louisiana tort law.

The second issue raised in the plaintiffs' complaint, ATC's corporate structure and liability for the GTP entities, is not governed by a specific Louisiana Code article, and therefore, the general rule laid out in article 3515 applies. In determining which state's policies would be most seriously impacted, the court should first identify "the various state policies that might be implicated in the conflict." La. Civ. Code art. 3515 cmt. c. Second, the court should "evaluate the 'strength and pertinence' of these policies in light of the 'the relationship of each state to the

4

parties and the dispute', and in light of the 'the policies and needs of the interstate and international systems'." *Id.* Finally, "[a]ll other factors being equal," the court should uphold "the justified expectations of the parties." *Id.*

Using these factors, "Louisiana courts and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure." *NorAm Drilling Co. v. E & PCo Int'l, LLC*, 48,591 (La. App. 2 Cir. 12/11/13), 131 So. 3d 926, 930 (citing *Quickick, Inc. v. Quickick Int'l*, 304 So. 2d 402, 406 (La. App. 1st Cir.1974)); *see also Energy Coal*, -- F.3d ---, 2016 WL 4575569, at *5 (affirming that the correct choice of law to determine whether the defendant could be held liable for an affiliate's action was the defendant's state of incorporation); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 647 (5th Cir. 2002) ("[T]he Louisiana State Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil."); *Univ. Rehab. Hosp., Inc. v. Int'l Co-op. Consultants, Inc.*, No. CIV.A. 05-1827, 2007 WL 2228381, at *3 (W.D. La. Aug. 1, 2007) (applying the substantive law of the defendants' state of incorporation to analyze the veil piercing claim); *San Francisco Estates v. Westfeldt Bros.*, No. 97–1102, 1998 WL 12243, at *4 (E.D. La. Jan.13, 1998) (holding that the substantive law of a company's state of incorporation should be used to determine the viability of its corporate structure).

This court sees no reason to hold otherwise, even though the underlying tort action is more closely tied to Louisiana than the underlying liability actions in other cases. *See, e.g., Energy Coal*, -- F.3d ---, 2016 WL 4575569, at *4 (finding the ties to Louisiana particularly weak when the contract that was the basis of liability was governed by Venezuelan law). The underlying tort liability of the GTP entities for which the plaintiffs seek to hold ATC liable is governed by Louisiana law. Yet applying Louisiana law to the issue of ATC's corporate

5

structure and liability for its affiliates would "undermine the high bar Delaware sets for disregarding corporate separateness." *Id.* Therefore, in accordance with the principles governing Louisiana's choice-of-law provisions, the court will apply Delaware law to determine ATC's liability for the GTP entities.

### III. Defendants' Tort Liability

The plaintiffs' first theory of ATC's liability is that ATC is directly liable based on its own actions, and this theory is governed by Louisiana law. ATC conclusively argues that the plaintiffs' complaint does not "provide any fact that could plausibly support tort damages against ATC" because the plaintiffs have not shown that ATC owned the communication tower on the date of the accident.[12] ATC asks the court to take judicial notice that it did not own the communication tower on the date of the accident because the Magistrate Judge noted that Global Tower owned the tower on the date of the accident in her order denying the plaintiffs' Motion to Remand.[13] However, in a subsequent order issued by the Magistrate Judge, she notes "ATC has admitted that ownership of the tower is a fact in dispute."[14] Because the Magistrate Judge has not affirmatively determined that ATC did not own the tower on the date of the accident, the court declines to take judicial notice of this. Further, because this is a motion to dismiss and ATC has attached no evidence to its motion, the court must take all facts pleaded in the complaint as true, including that ATC "owned, operated, maintained, and controlled the tower."[15] Therefore, the court will **DENY** the Motion to Dismiss the direct liability claims against ATC.

---

[12] Memo. in Support (Rec. Doc. 74-1), p. 2.
[13] Memo. Order (Rec. Doc. 24), *adopted by* Order (Rec. Doc. 32).
[14] Memo. Ruling (Rec. Doc. 69), p. 8.
[15] Amended Compl. (Rec. Doc. 1-4), ¶ 6.

### IV. ATC's liability for the GTP entities

The plaintiffs' second amended complaint creates three additional theories of liability based on the actions of the GTP entities: a single business enterprise theory, an alter ego theory, and a successor liability theory. As previously discussed, the court in accordance with Louisiana law, will apply Delaware law to these theories because they deal with ATC's corporate structure. ATC contends that the plaintiff failed to adequately plead facts to support any of the theories under Delaware law.

#### a. Single Business Enterprise Theory

First, Delaware has not adopted a single business enterprise theory as a means to pierce the corporate veil. *See Energy Coal*, -- F.3d ---, 2016 WL 4575569, at *3; *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 788 (Bankr. W.D. La. 2013); *In re GGW Brands, LLC*, No. 2:13-BK-15130-SK, 2013 WL 6906375, at *20 (Bankr. C.D. Cal. Nov. 15, 2013); *In re Heritage Org.*, LLC, No. 04-35574-BJH-11, 2008 WL 5215688, at *21 (Bankr. N.D. Tex. Dec. 12, 2008). Therefore, the court will **GRANT** ATC's Motion to Dismiss any claims that base liability on a single business enterprise theory and those claims will be **DISMISSED WITHOUT PREJUDICE**.

#### b. Alter Ego Theory

> Delaware does, however, recognize the traditional alter ego doctrine as grounds to pierce the corporate veil in cases involving the members of a corporate group. To state an alter ego claim under Delaware law, the [plaintiff] must plead (1) that [the] defendants "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness" is present. *See In re Moll Industries, Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (quoting *In re Broadstripe, LLC*, 444 B.R. 51, 101 (Bankr. D. Del. 2010)). The factors relevant to whether one or more companies constitute a "single economic entity" include: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the

> corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Broadstripe*, 444 B.R. at 102. With respect to the second prong of the alter ego doctrine—the presence of injustice or unfairness-while proof of actual fraud is not required, courts have held that "something like fraud must be proven" and that a party seeking to pierce the corporate veil must prove "reasonable reliance and intent to deceive." *In re Moll Industries, Inc.*, 454 B.R. at 591 (citing *In re Foxmeyer*, 290 B.R. 229, 236 (Bankr. D. Del. 2003)).

*In re Gulf Fleet Holdings, Inc.*, 491 B.R. at 788. When determining whether the plaintiffs' second amended complaint would be futile, the Magistrate Judge concluded that the plaintiffs' alter ego allegations were legal conclusions without supporting facts.[16] This court agrees. The plaintiffs have not pleaded facts that show how GTP entities and ATC "operated as a single economic entity," or that show an "overall element of injustice or unfairness." *Id.* (quoting *In re Moll Industries, Inc.*, 454 B.R. at 587). Therefore, ATC's Motion to Dismiss the plaintiffs' claims based on an alter ego theory will be **GRANTED** and those claims will be **DISMISSED WITHOUT PREJUDICE**.

### c. Successor Liability Theory

Finally, under Delaware law, "[a]bsent unusual circumstances a successor corporation is liable only for liabilities it expressly assumes." *Mason v. Network of Wilmington, Inc.*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *5 (Del. Ch. July 1, 2005) (internal quotations and citation omitted). However, a successor may be liable even without expressly assuming liabilities if avoidance would be unjust. *Id.* Here, the plaintiffs plead that ATC expressly assumed tort liability for the GTP entities that it purchased.[17] At this stage of the proceedings, the court must accept all facts pleaded as true, and if ATC did assume tort liabilities for the GTP entities it could be held liable under a successor liability theory. Therefore, ATC's Motion to Dismiss any claims based on a successor liability theory will be **DENIED**.

---

[16] Memo. Ruling (Rec. Doc. 69), p. 5.
[17] Second Amended Compl. (Rec. Doc. 70), ¶ 6(c).

8

## CONCLUSION

As a diversity case, the plaintiffs' claims are governed by Louisiana law. Under Louisiana choice-of-law provisions, the direct liability tort claims against ATC are analyzed under Louisiana law. However, ATC's potential liability for its subsidiaries' actions is analyzed under Delaware law because such liability hinges on ATC's corporate structure, and Delaware, as ATC's state of incorporation, has the strongest policy interest in having its law applied. Applying the state laws to their respective issues, the plaintiffs' claims based on direct liability and successor liability survive the Motion to Dismiss because the plaintiffs adequately pleaded facts to support these claims. However, the plaintiffs have failed to state a claim for relief under Delaware law for claims based on a single business enterprise theory or an alter ego theory. Therefore, ATC's motion to dismiss claims based on direct liability and successor liability will be **DENIED**. ATC's Motion to Dismiss claims based on a single business enterprise theory and an alter ego theory will be **GRANTED,** and those claims will be **DISMISSED WITHOUT PREJUDICE.**

Lake Charles, Louisiana, this 5 day of Dec , 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE